Westlaw.

Page 1

178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.)))**


This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007.  See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Jerry TRULL, Individually and as representative of a class of all persons similarly situated; Floyd Sutton, Individually and as representative of a class of all persons similarly situated; Earl Johnson, Individually and as representative of a class of all persons similarly situated; Joyce Riggs, Individually and as representative of a class of all persons similarly situated; Don Henson, Individually and as representative of a class of all persons similarly situated; Roderick Rogers, Individually and as representative of a class of all persons similarly situated, Plaintiffs-Appellees,
v.
DAYCO PRODUCTS, LLC; Mark IV Industries, Incorporated; Dayco Products, Incorporated Group Medical Plan; Mark IV Industries, Incorporated and Subsidiaries Group Welfare Benefit Program, Defendants-Appellants.

No. 04-2109, 05-1591.
Argued: March 16, 2006.
Decided: April 28, 2006.

**Background:** Retirees brought class action against former employer and related entities under Employee Retirement Income Security Act (ERISA) and Labor Management Relations Act (LMRA) to enforce vested rights to lifetime medical insurance created by series of collective bargaining agreements. The United States District Court for the Western District of North Carolina, Lacy H. Thornburg, J., entered injunctions barring defendants efforts at collecting health insurance premiums from members of plaintiff class. Defendants appealed.

**Holdings:** The Court of Appeals held that:

**(1)** transferee court had to use statute of limitations of transferor forum;
**(2)** jury had to decide whether parties intended to create vested, lifetime, medical benefits through series of collective bargaining agreements;
**(3)** district court could issue injunction under All Writs Act to safeguard sanctity of previous orders, decisions, preliminary judgment, and jury verdict; and
**(4)** district court had inherent authority to supply itself with special master to fashion appropriate post-verdict relief.

Affirmed.

West Headnotes

**[1] Federal Courts 170B** 146

170B Federal Courts
    170BII Venue
        170BII(B) Change of Venue
            170BII(B)4 Proceedings and Effect of Change
                170Bk146 k. Proceedings by Transferee Court; Improper Change. Most Cited Cases

Transferee court had to use statute of limitations of transferor forum, for purpose of retirees claims against employer under LMRA and ERISA that did not contain express limitations period, where transfer was made for convenience of parties and witnesses. 28 U.S.C.A. § 1404(a); Labor-Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185; Employee Retirement Income Security Act of 1974, § 502(a)(1, 3), 29 U.S.C.A. § 1132(a)(1, 3).

**[2] Labor and Employment 231H** 2003

231H Labor and Employment
    231HXII Labor Relations
        231HXII(K) Civil Liabilities
            231Hk1994 Actions Against Employers or Employers' Organizations in General
                231Hk2003 k. Trial. Most Cited Cases

Jury had to decide whether parties intended to create vested, lifetime, medical benefits through series

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.)))**

of collective bargaining agreements, in retirees' lawsuit against employer under LMRA, where various agreements were susceptible to competing interpretations as to whether benefits vested. Labor-Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185.

**[3]** Federal Courts 170B ⚷10.1

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk10 Issuance of Writs
                170Bk10.1 k. In General. Most Cited Cases

    District court could issue injunction under All Writs Act to safeguard sanctity of previous orders, decisions, preliminary judgment, and jury verdict over concern that employer's efforts might frustrate retirees' entitlement to vested, lifetime medical benefits under LMRA and in acknowledgement that sums that employer sought to collect might be offset by recovery on retirees' still-pending, non-jury ERISA count. 28 U.S.C.A. § 1651(a); Fed.Rules Civ.Proc.Rule 65, 28 U.S.C.A.; Labor-Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185; Employee Retirement Income Security Act of 1974, § 502(a)(1, 3), 29 U.S.C.A. § 1132(a)(1, 3).

**[4]** Federal Civil Procedure 170A ⚷1881

170A Federal Civil Procedure
    170AXIII Reference
        170Ak1877 Particular Proceedings and Issues
            170Ak1881 k. Damages and Relief Obtainable. Most Cited Cases

    Federal district court had inherent authority to supply itself with special master to fashion appropriate post-verdict relief, in lawsuit under LMRA and ERISA, even without parties consent. Fed.Rules Civ.Proc.Rule 53, 28 U.S.C.A.; Labor-Management Relations Act, 1947, § 301, 29 U.S.C.A. § 185; Employee Retirement Income Security Act of 1974, § 502(a)(1, 3), 29 U.S.C.A. § 1132(a)(1, 3).

**\*248** Appeals from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (CA-02-243-1).**ARGUED**: Joseph J. Vogan, Varnum, Riddering, Schmidt & Howlett, L.L.P., Grand Rapids, Michigan, for Appellants. Julia Penny Clark, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Appellees. **\*249 ON BRIEF**: John W. Allen, Anthony R. Comden, Elizabeth Wells Skaggs, Varnum, Riddering, Schmidt & Howlett, L.L.P., Grand Rapids, Michigan, for Appellants. Robert Alexander, Maryann Parker, Bredhoff & Kaiser, P.L.L.C., Washington, D.C., for Appellees.

Before WIDENER and TRAXLER, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished PER CURIAM opinion. Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).
PER CURIAM:
    **\*\*1** In these consolidated appeals, the defendants challenge two injunctions barring their efforts at collecting health insurance premiums from members of the plaintiff class. The plaintiffs are retirees who worked at defendant Dayco Products, LLC's ("Dayco") now-closed plant in Waynesville, North Carolina. They brought this class action under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C.A. § 185 (West 1998), and section 502(a)(1) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1132(a)(1), (3) (West 1999), against Dayco and related entities (collectively, "Defendants") to enforce vested rights to lifetime medical insurance created by a series of collective bargaining agreements. Finding no reversible error, we affirm.

I.
    The first injunction barred Defendants from seeking payment of insurance premiums from a subclass of plaintiffs known as Subclass A, generally consisting of employees who retired under agreements prior to 1995 (the "Subclass A Injunction"). The district court entered the Subclass A Injunction based on a jury's determination that the Subclass A plaintiffs were entitled to vested, lifetime medical benefits at no cost for health insurance premiums and at the level of benefits in existence at the dates of retirement.

    **[1]** We reject Defendants' argument that the injunction was improper because the plaintiffs' claims are time-barred. Because the LMRA and ERISA do not contain an express statute of limitations governing

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.)))**

plaintiffs' claims, we apply the most analogous limitations period of the forum state's law. *See Dameron v. Sinai Hosp. of Baltimore, Inc.,* 815 F.2d 975, 981 (4th Cir.1987). The plaintiffs commenced their action in the Southern District of Ohio, where Dayco maintained its headquarters, making the Ohio statute of limitations for breach of contract the most analogous statute of limitations under Ohio law. *See* Ohio Rev.Code Ann. § 2305.06; *see also Meade v. Pension Appeals & Review Comm.,* 966 F.2d 190, 194-95 (6th Cir.1992). The transfer to the Western District of North Carolina "[f]or the convenience of parties and witnesses," pursuant to 28 U.S.C.A. § 1404(a) (West 1993), is irrelevant to this analysis, since the goal of § 1404(a) is to "accomplish [ ] 'but a change of courtrooms.'" *See Eckstein v. Balcor Film Investors,* 8 F.3d 1121, 1127 (7th Cir.1993) (concluding that "[w]hen the law of the United States is geographically non-uniform, a transferee court should use the rule of the transferor forum") (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

[2] We also disagree with Defendants' contention that there was insufficient evidence to support the jury's conclusion that the Subclass A plaintiffs had a vested entitlement to lifetime benefits. In **\*250***Keffer v. H.K. Porter Co.,* 872 F.2d 60 (4th Cir.1989), a case involving claims under the LMRA and ERISA, we explained:

> In determining whether an employer's obligation to provide benefits to its retirees or their surviving spouses continues beyond the expiration of the collective bargaining agreement, we look to the parties' intent as expressed in their agreement. While the question therefore is primarily one of contract interpretation, collective bargaining agreements are not interpreted under traditional rules of contract but under a federal common law of labor policy. Therefore, in order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. Of course, as with any contract interpretation, we begin by looking at the language of the agreement for any clear manifestation of the parties' intent. The intended meaning of even the most explicit language can, of course, only be understood in light of the context which gave rise to its inclusion.

**\*\*2** *Id.* at 62 (citations, alteration, and internal quotation marks omitted).

Applying this framework, we find no reversible error in the district court's decision that, because the agreements were ambiguous, a jury should decide whether the parties intended to create vested, lifetime medical benefits. The various agreements are susceptible to competing interpretations as to whether benefits vested. In fact, in the agreement implemented in connection with the closing of the Waynesville plant, the union and employees made one exception to their waiver of claims against the company:

> The only exception to this provision shall be the company's *failure to honor ... any applicable benefit plan that continues past the contract termination. ...* [N]othing in this agreement is intended to waive, modify or limit *any retiree's right to* a pension *or medical insurance,* nor is it intended to waive, modify or limit such rights for any employee who is eligible to retire pursuant to the terms of the amended agreement.

J.A. 984 (No. 04-2109) (emphasis added). This exception strongly suggests that the parties contemplated continuing medical benefits.

Defendants' reliance on *Gable v. Sweetheart Cup Co.,* 35 F.3d 851 (4th Cir.1994), is misplaced. *Gable* involved a claim arising only under ERISA for benefits the employer unilaterally provided to its employees, where we explained that an employer's waiver of "its statutory right to modify or terminate benefits ... by voluntarily undertaking an obligation to provide vested, unalterable benefits" should be "clear and express." *Id.* at 855 (internal quotation marks, alteration, and citations omitted). *Gable* does not apply, because the district court entered the Subclass A Injunction based on a breach of the LMRA, not ERISA, and Defendants offered the benefits in the context of collectively bargained agreements, not as a "voluntar[y] undertaking." *Id.*

Having determined that the issue was properly sent to the jury and having considered the evidence in the record, we conclude that there is sufficient evidence to support the jury's decision that the parties intended to create vested, lifetime benefits.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.)))**

II.

[3] The second injunction relates to a subclass of plaintiffs known as Subclass B, generally consisting of employees who retired under a 1995 agreement (the "Subclass B Injunction"). The jury found that **\*251** the Subclass B plaintiffs were entitled to vested, lifetime medical benefits at the level of benefits in existence at the dates of retirement, but that they must pay any amounts exceeding certain "annual insurance premium caps" to maintain their coverage. By agreement of the parties, the Subclass B plaintiffs deferred payments of the amounts exceeding the caps during the pendency of the litigation.

The district court entered the Subclass B Injunction to prevent Defendants from seeking repayment of the deferred amounts until a special master worked out reasonable repayment schedules for the plaintiffs. The district court entered the Subclass B Injunction under the authority of the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1994), which permits federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

**\*\*3** Defendants argue that the district court inappropriately used the All Writs Act to circumvent the requirements for preliminary injunctions contained in Rule 65 of the Federal Rules of Civil Procedure. We disagree. The district court was quite clear that there was "nothing preliminary" about its injunction and that it was acting to "safeguard the sanctity of previous orders, decisions, the preliminary judgment and the jury verdict." J.A. 326 (No. 05-1591) (internal quotation marks and citation omitted).

The district court was concerned that Defendants' efforts might frustrate plaintiffs' entitlement to vested, lifetime medical benefits. The district court also acknowledged that the sums Defendants sought to collect might be offset by a recovery on plaintiffs' still-pending, non-jury ERISA count. J.A. 342 (No. 05-1591) ("It is, therefore, well within the Court's prerogative to forestall collection now of sums which may only have to be reimbursed."). We conclude that the district court acted well within its authority and complied with the relevant portions of Rule 65. *See* In re American Honda Motor Co., Inc. Dealerships Relations Litig., 315 F.3d 417, 437 (4th Cir.2003); Scardelletti v. Debarr, 265 F.3d 195, 211-13 (4th Cir.2001), rev'd on other grounds, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).

[4] Likewise, we reject Defendants' assertion that the district court could not appoint a special master without their consent. Defendants' reliance on Rule 53 of the Federal Rules of Civil Procedure is misguided, as the district court appointed the special master based on its inherent authority to fashion appropriate post-verdict relief. *See, e.g.,* Cronin v. Browner, 90 F.Supp.2d 364, 377 (S.D.N.Y.2000) ("[T]here is considerable room for appointing special masters when the purpose of the master is to enforce a judicial decree."); United States v. Connecticut, 931 F.Supp. 974, 984 (D.Conn.1996) (noting, in the context of a consent decree, that "beyond the provisions of [Rule 53] ..., a federal district court has the inherent power to supply itself with [a special master] for the administration of justice when deemed by it essential") (second alteration in original; citations and internal quotation marks omitted).

Even had Rule 53 applied, the district court would not have needed the parties' consent to appoint a master. *See* Fed.R.Civ.P. 53(a)(1)(C) (allowing for special master without consent of parties to handle post-trial matters that cannot be addressed effectively and timely by an available district judge).

III.

For the foregoing reasons, we affirm the decision of the district court in No. 04-**\*252** 2109 and No. 05-1591. We note that the case is still pending in district court and express no opinion on the merits of any remaining issues.

*AFFIRMED*

C.A.4 (N.C.),2006.
Trull v. Dayco Products, LLC
178 Fed.Appx. 247, 2006 WL 1130926 (C.A.4 (N.C.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.