```
 1                    IN THE DISTRICT COURT OF THE UNITED STATES
                            DISTRICT OF SOUTH CAROLINA
 2                              CHARLESTON DIVISION

 3     IN RE:  MI WINDOWS AND        )
       DOORS, INC. PRODUCTS          )
 4     LIABILITY LITIGATION          )        2:12-MN-00001
                                     )
 5     MI WINDOWS AND DOORS, INC.    )        Charleston,
                                     )        South Carolina
 6                                            July 12, 2012


 7                            TRANSCRIPT OF HEARING
 8               BEFORE THE HONORABLE DAVID C. NORTON,
                        UNITED STATES DISTRICT JUDGE
 9
       APPEARANCES:
10
       For the Plaintiffs        MR. JUSTIN LUCEY, ESQ.
11                               MS. HARPER TODD, ESQ.
                                 Justin O'Toole Lucey Law Firm
12                               P.O. Box 806
                                 Mount Pleasant, SC 29465
13
                                 MR. DANIEL BRYSON, ESQ.
14                               Whitfield, Bryson & Mason, LLP
                                 900 W. Morgan Street
15                               Raleigh, NC 27603

16                               MR. RICHARD ARSENAULT, ESQ.
                                 MR. SRIVATSA GUPTA, ESQ.
17                               2220 Bonaventure Court
                                 P.O. Box 1190
18                               Alexandria, Louisiana 71301

19                               MR. SCOTT GEORGE, ESQ.

20                               MS. ALYSON OLIVER, ESQ.
                                 Oliver Law Group, PC
21                               950 W. University Drive
                                 Suite 200
22                               Rochester, MI 48307

23                               MR. JORDAN CHAIKIN, ESQ.
                                 Parker Waichman Alonso LLP
24                               6 Harbor Drive
                                 Port Washington, NY 11050

25
```

```
 1                           MR. JOHN A. PECA, ESQ.
 2                           Climaco Lefkowitz Peca
                             Wilcox & Garofoli
 3                           55 Public Square
                             Suite 1950
 4                           Cleveland, OH 44113

 5                           MR. JAMES SHAH, ESQ.
                             MS. NATALIE FINKELMAN BENNETT, ESQ.
 6                           Shepherd Finkelman
                             Miller & Shah LLC
 7                           35 E State Street
                             Media, PA 19063
 8
                             MR. BLAIR HAHN, ESQ.
 9                           MR. CHRISTIAAN MARCUM, ESQ.
                             MS. CATHERINE MCELVEEN, ESQ.
10                           Richardson, Patrick
                             Westbrook & Brickman, LLC
11                           P.O. Box 1007
                             Mount Pleasant, SC 29465
12

13
        For the Defendants:   MR. RICHARD FARRIER, ESQ.
14                           Nelson Mullins
                             134 Meeting Street
15                           Charleston, SC 29401

16                           MS. CAROL LUMPKIN, ESQ.
                             MS. ANNIE ZAFFUTO, ESQ.
17                           K&L Gates LLP
                             Southeast Financial Center
18                           Suite 3900
                             200 South Biscayne Boulevard
19                           Miami, FL 33131

20                           MR. STEVE OUZTS, ESQ.
                             MR. THOMAS KENNADAY, ESQ.
21                           Turner Padget Graham and Laney
                             P.O. Box 1473
22                           Columbia, SC 29202

23                           MR. JASON DAIGLE, ESQ.
                             Maybank Law Firm
24                           P.O. Box 12579
                             Charleston, SC 29422
25
```

1
2                                    MR. PATRICK PERRONE, ESQ.
                                     Kirkpatrick & Lockhart
                                     One Newark Center
3                                    10th Floor
                                     Newark, NJ 07102
4
                                     MR. STEPHEN FREEZE, ESQ.
5                                    Freund Freeze & Arnold
                                     One Dayton Centre
6                                    1 S Main Street
                                     Suite 1800
7                                    Dayton, OH 45402

8                                    MR. CURTIS SHIPLEY, ESQ.
                                     Ellis & Winters, LLP
9                                    333 North Greene Street
                                     Suite 200
10                                   Greensboro, NC 27401

11                                   MR. JAMES REILAND, ESQ.
                                     K&L Gates LLP
12                                   70 W Madison Street
                                     Suite 3100
13                                   Chicago, IL 60602

14                                   MR. PAUL GARY, ESQ.

15

16

17

18

19

20

21

22

23    Court Reporter:        Amy C. Diaz, RPR, CRR
                             P.O. Box 835
24                           Charleston, SC 29402

25            Proceedings recorded by mechanical shorthand,
      Transcript produced by computer-aided transcription.

1          THE COURT:  I will sign anything the lawyers agree

2     to except for a check.

3          So who wants to go first?  Mr. Lucey?

4          MR. LUCEY:   Yes, Your Honor, and we did submit an

5     agenda to the Court about a month ago as the Court had set

6     forth in one of its orders.

7          THE COURT:  Okay.

8          MR. LUCEY:   But perhaps our agenda missed one of

9     the more important items, Your Honor, which would be simply

10    an introduction of the attorneys involved on the plaintiffs'

11    side.  So I would like to introduce first Dan Bryson sitting

12    next to me.  Mr. Bryson is from North Carolina.  I'll ask him

13    to introduce himself in a second in more detail.  And to

14    introduce the rest of the plaintiff's counsel.

15         THE COURT:  Okay.

16         MR. LUCEY:   And the reason I introduced Mr. Bryson

17    first is that the homeowners plaintiffs group has nominated

18    Mr. Bryson to be our lead counsel.

19         THE COURT:  Okay. Welcome, Mr. Bryson.

20         MR. BRYSON:   Thank you, Your Honor.

21         The only thing I would like to state, at least for

22    the Court's consideration, for my consideration of counsel on

23    the homeowners group, I have been involved in

24    construction-related litigation for about 24 years.  I have

25    been involved in numerous defective construction product

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

1    cases through the years, starting with synthetic stucco and

2    many others.  Many of the attorneys on the defendants' side,

3    we've crossed paths through the years and are well

4    acquainted.

5            Most recently, I have been involved with before the

6    Honorable Judge Fallon down in New Orleans on that plaintiff

7    committee for Chinese Drywall, and was the chair of the

8    Science and Expert Committee, and was very involved with

9    that, the plaintiffs' steering committee.  I take my

10   involvement to a case very seriously and am very committed to

11   this case and would be honored if the Court enters the order

12   as recommended by the plaintiffs homeowners.

13           The defendants have also seen our proposed CMO's,

14   and to my understanding have no objection, as well both

15   Mr. Hahn with his group and within MI Windows.  We have

16   counsel here from various other states that have also filed

17   their claims.  And if the Court would like, they can each

18   introduce themselves to the Court.

19           THE COURT:  Sure.  That's fine.

20           MR. ARSENAULT:  Good afternoon, Your Honor, Richard

21   Arsenault, I practice in Louisiana, I have been practicing

22   for about 30 years, been involved in about 25 MDL's and look

23   forward to being involved in this one.

24           THE COURT:  You beat Mr. Becnel up here.

25           MR. ARSENAULT:  I'm aware of Mr. Becnel.

1          MR. CHAIKIN:  Good afternoon, Your Honor.  Jordan

2     Chaikin from Parker Waichman in Florida.  I am also involved

3     in this case and several other construction defect cases, and

4     I'm certainly happy to be here.

5          THE COURT:  Welcome.

6          MR. GEORGE:  Good afternoon, Your Honor.  Scott Alan

7     George from Seeger Weiss.  I work out of Philadelphia, and I

8     work with Mr. Bryson in the drywall case and the case against

9     Pella Windows.

10          THE COURT:  Okay.  Yes, ma'am?

11          MS. OLIVER:  Good afternoon, Your Honor.  May it

12     please the Court, my name is Alyson Oliver from Michigan.  I

13     represent Plaintiff Deem in this case.  I'm involved in

14     MDL's, have been probably for about the past five years.  I

15     have been practicing for about 15 years before I switched

16     over to this area of practice, but I'm pleased to be here.

17          THE COURT:  Welcome.

18          MR. PECA:  Good afternoon, Your Honor.  John Peca

19     from Cleveland, Ohio.  We have the plaintiffs in the Central

20     District of Ohio.  I have been practicing for 32 years.  I'm

21     also a certified public accountant, but I don't do that

22     anymore, mass tort and class action litigation for some

23     years.

24          THE COURT:  Great.  Yes, sir?

25          MR. SHAH:  Good afternoon, Your Honor.  James Shah

1    from Philadelphia.  My firm represents the Pennsylvania

2    plaintiffs and the Wisconsin plaintiffs.  I have been

3    involved in a number of MDL's throughout the country over the

4    years, and including with a lot of the members of plaintiffs'

5    counsel, and very happy to be here.  Thank you.

6                THE COURT:  Thank you.  Yes?

7                MS. TODD:  Good afternoon, Your Honor.  Harper Todd

8    with Justin Lucey's office.

9                MS. FINKELMAN BENNETT:  Good afternoon, Your Honor.

10   Natalie Finkelman Bennett from Philadelphia.  I have been

11   involved in the MDL litigation for about 20 years, and

12   looking forward to working with you.

13                THE COURT:  Look forward to working with you.

14                Yes, sir?

15                MR. GUPTA:  Good afternoon.  I'm Srivatsa Gupta, I'm

16   from Louisiana.

17                MR. LUCEY:   Just to organize where we are with the

18   cases and then we'll turn -- you just heard from not only the

19   transfer of cases but two of the conditionally transferred

20   cases.  So the cases before the Court this morning, including

21   the -- this afternoon -- including the condition of transfer

22   cases total eight, the five originally transferred and the

23   three conditionally transferred.  And the only case that does

24   not have its attorney here today is the Kennedy case in

25   Illinois.  Something came up at the last minute, Mr. Usher

1    couldn't make it, but we are here with his full authority,

2    and with that said, he's in trial.

3            THE COURT:  Okay.

4            MR. LUCEY:   And we are aware of an action being

5    filed in Kansas.  But other than the contractor action, we

6    are unaware of any other actions having been filed, Your

7    Honor.

8            With that, I would turn the floor over to the next

9    party for their introductions.

10           THE COURT:  Okay.  Mr. Farrier?

11           MR. FARRIER:   Richard Farrier here for MI windows.

12    I'll let the rest introduce themselves, and note that it is

13    not correct that we have no objection to CMO 1.  We do have

14    one objection; we can handle that later.  We certainly don't

15    object to Dan being lead counsel.

16           THE COURT:  Okay.

17           MS. LUMPKIN:  Good afternoon, Your Honor.  Carol

18    Lumpkin with K&L Gates.

19           MR. OUZTS:  Good afternoon, Your Honor, I'm Steve

20    Ouzts with Turner Padget.

21           THE COURT:  Yes, sir?

22           MR. PERRONE:  Good afternoon, Your Honor.  Patrick

23    Perrone.  I'm also with K&L Gates.

24           THE COURT:  Okay.

25           MR. SHIPLEY:  Your Honor, I'm Curtis Shipley with

1    Ellis & Winters up in North Carolina.

2             MR. REILAND:  Good afternoon, Your Honor.  My name

3    is James Reiland and I'm with K&L Gates.

4             THE COURT:  Locally or nationally?

5             MR. REILAND: Locally.

6             MR. GARY:  Good afternoon.  My name is Paul Gary,

7    Gary Law Group, lawyer for MI Windows and Doors.

8             THE COURT:  Okay.

9             MR. FREEZE:  Good afternoon, Your Honor.  Steve

10   Freeze.  I'm handling the Ohio case for MI windows.

11            Good afternoon, Your Honor.  Annie Zaffuto with K&L

12   Gates.

13            THE COURT:  Anybody else?

14            MR. KENNADY:  Tom Kennady, Turner Padget.

15            THE COURT:  Okay.  Thank you.  Anybody else?  Okay.

16   Mr. Hahn?

17            MR. HAHN:   Yes.  Pleasure to be in your court

18   again.  Blair Hahn.  I do want to say the last time I was in

19   your courtroom, I introduced Katie McElveen as Katie Hug (ph)

20   and she told me that she had been married for five years, and

21   it's about time I figured that out.  Thank you for having us.

22            THE COURT:  Yes.

23            MS. MCELVEEN:  Good afternoon, Your Honor.  Katie

24   McElveen.  I have the pleasure of working with Blair Hahn.

25   Happy to be here.

1          MR. MARCUM:  Good afternoon, Your Honor.  Christiaan

2    Marcum.  I have the same pleasure.

3          THE COURT:  All right.  These are my interns.  After

4    this, they may not go to law school, they may drop out.

5          All right.  The first thing, the lead counsel,

6    liaison counsel and plaintiffs steering committee, there is

7    no objection I don't believe right now.  Is that right?

8          MR. FARRIER:   We don't have any objection to the

9    composition of the steering committee.  We object to having

10   dual steering committees, and our concern is they are going

11   to be competing steering committees.

12         THE COURT:  Okay.

13         MR. HAHN:   Judge, we don't care.  I spoke to Mr.

14   Lucey about this, and Mr. Bryson, they have suggested that

15   they may ultimately end up suing some of the contractors,

16   which would create a conflict, which is the reason we set up

17   two separate steering committees, so that if a conflict

18   arises in the future that we are okay.

19         THE COURT:  That was my -- you know, in looking at

20   this, Mr. Farrier, if Mr. Ouzts third-partied in the

21   contractors as opposed to being a codefendant, isn't there a

22   potential conflict between Mr. Hahn's clients and

23   Mr. Bryson's clients?

24         MR. FARRIER:   Um, there is both.  The Court will

25   ultimately have to resolve that disposition.  They are either

1    aligned or very adverse.

2        THE COURT:  Well, I mean, isn't part of your

3    client's defense is we make perfect windows, they just screw

4    them up when they put them in?

5        MR. FARRIER:   You've got it.

6        THE COURT:  What's your position about two steering

7    committees.

8        MR. BRYSON:   We think there should be two different

9    steering committees, a contractor and a homeowner steering

10   committee.  And for Your Honor's considering, Judge Fallon in

11   Chinese Drywall set up a contractor steering committee along

12   with the manufacturer steering committee and homeowners, and

13   that seemed to work well.  There are many areas of common

14   ground, but there are differences and potential conflicts.

15       THE COURT:  Okay.  Anything else, Mr. Ouzts or

16   Mr. Farrier?

17       MR. FARRIER:   Your Honor, one of our concerns is

18   just cost.  And I understand the conflict issue, but we don't

19   want to ultimately have to pay for two different steering

20   committees.

21       THE COURT:  Yes, sir?

22       MR. HAHN:   I just wanted to thank Mr. Farrier for

23   paying for my costs at this stage of the game.  It's coming

24   out of our pockets and not his.

25       THE COURT:  Well, I think probably at this stage of

1     the game, based on the, at least the one case I've seen, I

2     think it's probably appropriate to have two different

3     steering committees right now.  It's obviously part of your

4     defense is Mr. Hahn's client, and there is potential

5     conflicts, if not actual conflicts between the two.  I'm sure

6     they will coordinate and do everything they can to minimize

7     their costs.  They are going to keep records of their costs

8     as opposed -- it shows in the Case Management Order, and so

9     if there is an excessive amount of costs, then we can address

10     it at that time.  And you know, the position is you don't owe

11     them anything anyway, so we'll go ahead and go that way right

12     now.  If it becomes unwieldy or burdensome, just let me know

13     and we'll go -- we'll revisit it.  How does that sound?

14               MR. HAHN:    Thank you, Judge.

15               To that end, we have a Case Management Order that

16     was pared down from the one that the homeowners submitted

17     that sets up the steering committees.  If I can hand it up to

18     the Court?

19               THE COURT:  Sure.

20               MR. HAHN:    And then if you want to sign that,

21     you've got it.

22               MR. LUCEY:   Your Honor, we have a CMO that the

23     homeowners submitted to the Court which we had reached an

24     agreement with MI windows on most provisions.  There is

25     still, I believe, two objections they have to it; one minor

1    and one major, but if I may hand it up to the Court?

2            THE COURT:  Sure.  Thank you.

3            MR. LUCEY:   This we did provide for the contractors

4    various representations within this.

5            THE COURT:  Okay.  Yes, sir?

6            MR. HAHN:   Judge, if I may?  I think the only

7    difference, and I'm sure the homeowners will correct me if

8    I'm wrong, is on page 10 of their order, Discovery

9    Procedures, talks about the Johnson case.  And I believe that

10   that is where both the contractors object and the MI Windows

11   objects.  If that's not correct, I'm sure I'll be corrected.

12   And I'm happy to discuss that with you, Judge.

13           THE COURT:  Okay.  You are talking about paragraph

14   4?

15           MR. HAHN:   Yes, sir.

16           MR. HAHN:   That's --

17           MR. LUCEY:   There is other minor points, I believe.

18   For one thing we needed to clarify that how the contractor

19   work was going to be referred to.  We have it referred to as

20   the contractor group.  I believe MI had objected to the

21   contractor/developer group, which is a totally -- they have

22   used it at one point in this.

23           Paragraph 4 is actually -- the second sentence of

24   paragraph 4 is one of the major disputes between all three

25   groups as to the initial CMO number 1.  And I know MI had had

1    some objections to some of the general administrative matters

2    towards the end of CMO number 1, which we are happy to

3    address.  We believe they are appropriate, and we found it --

4    actually, we went to the Bausch and Lomb case management

5    orders in preparing this, but we don't believe the

6    administrative provisions are that determinative one way or

7    the other.  We believe it's clearer to include them, but I'll

8    ask Mr. Bryson to address the discovery procedures dispute in

9    paragraph 4 with regards to this order not affecting the

10   already-issued order compelling discovery in the Johnson

11   matter.

12          THE COURT:  Okay.  Yes, sir, Mr. Bryson?

13          MR. BRYSON:   Yes, Your Honor.

14          Certainly we understand that a lot of discovery and

15   work has already been done on the Johnson case, and there

16   have been decisions that have been rendered, documents that

17   have been produced, orders that are in place, and it is

18   certainly our preference that that case continue to proceed

19   in addition to the additional discovery that we think would

20   be forthcoming, and perhaps CMO number 2 on discovery.

21          The defendants have told us that -- we met with them

22   on Windows recently and I've had telephone conversations with

23   Mr. Hahn that, well, it's no longer just the Johnson case,

24   it's an MDL now.  We have a number of cases to consider and

25   that there is obligations owed to all the cases to decide how

1    best -- how best to proceed.  So you can see the two kind of

2    diverging viewpoints on that.

3         We had discussion among ourselves, among plaintiffs'

4    counsel, and there certainly is precedent in other MDL's, and

5    Vioxx is one, that Mr. Arsenault was telling us about, and

6    there are some others where there were some pending state

7    court actions, and the Court, for judicial economy, in trying

8    to expedite things, continued to advance those cases.  And

9    we think that that type of thing could happen here, that we

10   could have -- that we should continue to push the Johnson

11   case forward.

12        And I would ask if the Court wants to hear

13   Mr. Arsenault explain to you how the initial state court

14   action in Vioxx proceeded, as well as the MDL, that might be

15   helpful.

16        THE COURT:  Sure.

17        MR. ARSENAULT:  I think at the end of the day,

18   Judge, it's just garden variety judicial economy, and

19   different MDL's will take advantage of work that's been done

20   and build on that rather than starting from scratch.

21        THE COURT:  What's your complaint, Mr. Hahn?

22        MR. HAHN:  Thank you, Your Honor.

23        I don't presume to lecture the Court on MDL

24   procedure.  I will point out that they are talking about

25   state court cases where the Federal Court doesn't have strict

1    jurisdiction on those cases.

2         The reason the MDL is set up is to have noncompeting

3    rulings and for all plaintiffs or all parties that are

4    concerned to be able to participate in the discovery.

5         What they are proposing is for the Johnson case to

6    move forward under Mr. Lucey's watch to the exclusion of any

7    other plaintiff lawyers.  That means that I am going to be

8    bound by whatever happens in that case, and I see that as

9    problematic for a number of reasons.

10        Secondly, in every MDL I have been involved in when

11   the federal cases are all put before one judge, the federal

12   cases all work in lock step until such time that the Court

13   may select a date for trial, but at that point, general

14   discovery has already taken place and the major work of the

15   MDL is complete.

16        THE COURT:  Thank you.  Yes, sir, Mr. Farrier?

17        MR. FARRIER:   I am completely with the idea of

18   judicial efficiency.  And I think going forward with

19   different discovery schedules is particularly proficient.  We

20   are in the process of gathering documents.  Once the

21   pleadings are joined, we know what products we are working

22   with, we can begin to process the data that we have been

23   assembling, and we can move forward in an orderly fashion and

24   produce documents that are going to be usable to all the

25   plaintiffs in their respective state cases, as well as any

1    national.

2         So if the focus is on -- if the focus is on judicial

3    efficiency and economy within the parties, then the best way

4    to do it is to have this all go together at one pace.

5         THE COURT:  Okay.

6         MR. OUZTS:  May I, Your Honor?  Counsel for MI

7    windows in the Johnson case, I do want to address how -- you

8    know, Mr. Bryson indicated that discovery has gone forward in

9    that case.  Well, it really hasn't.  It's at a very early

10   stage.  And just to remind the Court of the sequence of

11   events, discovery didn't open in the Johnson case until

12   November 28, 2011 when we filed our 26(f) report.  That was

13   10 days before these other cases filed a motion to transfer.

14   And there was motions practice to dismiss third-party claims,

15   and so -- and as Your Honor recalls on May 17th, the hearing

16   on outstanding discovery requests.

17        But Johnson is not so much different from the other

18   MDL cases, as you might expect.  The other -- the only thing

19   that really separates them at this point is the motions, the

20   Rule 12 motions that are pending in the five other MDL cases

21   or four other MDL cases.

22        MR. LUCEY:  And if I may, Your Honor?  That's a

23   huge separation.  That's a huge separation.  And we've

24   actually come full circle into a separate issue, but it's a

25   related issue.  The Rule 12 issue, Johnson has survived the

1  Rule 12 motion to dismiss, and Johnson is in the discovery

2  phase.

3           And the next thing the defendants are going to do at

4  this status conference or the next one or the following one

5  will be to move to stay all discovery until all other motions

6  to dismiss are heard.  And they will move for a, let's say an

7  October or November filing of memoranda on motions to

8  dismiss, and it will be March or April of 2013 before

9  discovery recommences on the way they would have things

10 proceed.

11          Your Honor, the Court has already heard or compelled

12 discovery in Johnson.  There is no argument being proffered

13 by anybody that the already-ordered compelled discovery will

14 no longer be relevant or usable as a result of the MDL.  The

15 only argument might be that there will be more discovery and

16 we are providing for the plaintiffs not to have duplicative

17 discovery, it would only be followup or supplemental

18 discovery.

19          The contractors counsel referenced something about

20 being bound by something.  There is nothing to be bound to.

21 What the Court has ordered is a production, a long overdue

22 production of relevant documents.  The Court deferred the

23 Rule 30(b)(6) deposition until after the other parties got

24 involved.  And that's not at issue today.

25          What is at issue is the initial document production,

1    which if Johnson continues on preparing the discovery, the

2    other parties will benefit from it; judicial economy will be

3    well served.  And we would ask that the Court, having taken

4    the time and effort to have entered the Johnson order -- and

5    keeping in mind, of course, Johnson is not a transferred

6    case, it's always been here.  The Court has issued the order.

7    And frankly, Plaintiff Johnson has already complied with that

8    discovery order, but the production requests have been

9    outstanding a long time.  And we would ask that this CM

10   number 1, as written, not in any way affect the

11   previously-issued order in this case.

12          MR. OUZTS:   Your Honor, if I may briefly respond?

13          There is a couple of things that I think the Court

14   needs to keep in mind, but the discovery order that the Court

15   entered on May 17th required MI Windows to produce documents

16   only as they related to the series 3500 windows.  And it was

17   understood at that time that it would only be, at best, a

18   partial production because of some issues that still exist

19   that we'll get to later regarding ESI.

20          Now as of about -- as of this morning, we received a

21   notice of a motion filed by Johnson to amend the Complaint to

22   add additional series of windows and an additional cause of

23   action.  And so now we have a motion anyway for an amended

24   pleading in the Johnson matter, which would also be subject

25   to possible Rule 12 motions.  So you may even be in a

1    situation where there is a Rule 12 motion with regard to the

2    Johnson case.

3         But in any event, with -- particularly as it relates

4    to ESI, it would be very inefficient to require MI Windows to

5    do the kind of filter searching collection processing for

6    3500 series windows at a different time and then have to go

7    back and do additional filtering and searching of the ESI

8    database for the different series of windows, which is

9    what -- which is what --

10        THE COURT:  What you asked me to do in March.

11        MR. OUZTS:   Pardon me?

12        THE COURT:  Which is what you asked me to do in

13   March.

14        MR. OUZTS:   Well, to limit it to 3500, because

15   that's the only window that was involved in the case.

16        So, Your Honor, it would not promote efficiency to

17   go forward with discovery, especially document discovery, in

18   a piecemeal fashion.

19        What we would propose is that the MDL cases, the

20   plaintiffs' counsel, the steering committees in the MDL

21   cases, including the contractor class, um, come up with a set

22   of master document requests and interrogatories so that we

23   could establish a procedure to respond one time to the

24   universe of requests for production and not have to engage in

25   piecemeal discovery.

1          THE COURT:  Yes, sir?

2          MR. LUCEY:   Your Honor, I'm sorry, but that was

3     inadvertently incorrect, no windows were added in the motion

4     to amend.  The defendant has always objected to one homeowner

5     representing all class in all three product lines.  We simply

6     added two more homeowners in response to their objection.

7     The windows did not change.  It's been the same the entire

8     time.

9          THE COURT:  Well, the two plaintiffs that you added

10    this morning had the other two lines of windows installed in

11    their homes?

12         MR. LUCEY:   Yes, Your Honor.

13         THE COURT:  Okay. How many lines of windows are

14    involved in this?

15         MR. OUZTS:   Your Honor?

16         THE COURT:  At the most?

17         MR. OUZTS:   In the latest Amended Complaint there

18    are three family lines, which is down from 11 or so in the

19    original Complaint.

20         THE COURT:  I'm talking about the rest of these

21    folks.

22         MR. OUZTS:   I believe it's only those three.

23         MR. HAHN:  Judge, we view discovery as being broad

24    and then narrowing down, and we have alleged all the windows

25    that they made.  And even if some of the lines of windows

1    aren't leaking, there may be documents later for those

2    windows that would shed light on the manufacturing defect

3    that we are alleging.

4            As an administrative issue, Your Honor, the

5    plaintiff steering committees need to get together and create

6    a document depository.  In a case like this, we'll have

7    hundreds of thousands of documents.  So we are not prepared

8    to accept a production until all that is done and we have

9    discussion with the defendants as to how those documents will

10   be produced.

11           THE COURT:  Okay.  So you have compatible electronic

12   storage systems hopefully.

13           MR. HAHN:  Well, my hope would be that we would

14   have one depository that everybody would use, Your Honor, and

15   that we could work with the defendants on how those documents

16   are going to be produced.

17           THE COURT:  Okay.  And since, I assume for the

18   purposes of this question, that since this May 17th ruling,

19   that nothing has been produced?

20           MR. OUZTS:  Your Honor, your practices and

21   procedures order stayed all discovery proceeding in the case.

22   So you are correct, nothing has been produced.

23           MR. FARRIER:  But we have -- we have made at least

24   four trips to gather data, and we have well over 280 gigs of

25   data that we have gathered.  We've made another trip to

1   gather data within the last week.  And so we have -- the

2   first step is to gather the data, and which then needs to be

3   processed according to what we are asked to produce.

4          And I've spoken to Mr. Hahn about this, on an

5   orderly way to do this.  There is no reason why within the

6   next 30 days or so the plaintiffs can't develop a master set

7   of discovery.

8          THE COURT:  So you discussed that or you agreed that

9   Mr. Hahn thinks that they could do that?

10         MR. FARRIER:  Well, I think it would -- it would

11  take an agreement between the two steering committees as to

12  how that would go forward.

13         MR. HAHN:  I agree with Mr. Farrier.  I think it

14  can be done, Your Honor, it's just a matter of you giving us

15  the authority to go out and do it.

16         THE COURT:  All right.

17         Anything else, Mr. Lucey?  Mr. Bryson?

18         MR. LUCEY:  I would just add, Your Honor, that in

19  theory, they already did this in the last case I tried with

20  them, so they already know they are already identified.  We

21  are not talking about a big effort.  The requests have been

22  pending a long time, and discovery got stayed in the practice

23  and procedure order of discovery under Rule 33, 34, etcetera,

24  that order was stayed.

25         THE COURT:  So that's the big problem.  What's the

 1    little problem?

 2            MR. BRYSON:    On the Case Management Order, back to

 3    CMO 1, Judge, again, just to make sure we are on the same

 4    page, we have a homeowners committee one before Your Honor,

 5    and I think Mr. Hahn has one.  I would point out just a

 6    couple of the differences again.

 7            Mr. Lucey mentioned the name of Mr. Hahn's group, I

 8    think us and MI would think that it should be named the

 9    contractor/plaintiffs committee, not contractor/developer,

10    and MI agrees with that, to my understanding.  That's because

11    developers can certainly include some owners of windows.

12            I think contractors are that group that are

13    installing the windows, um, and face liability or issues that

14    are separate and distinct from an owner or a developer.  I

15    don't know, maybe it's just semantical, but that does keep it

16    clean, contractor owners.

17            THE COURT:  You already had t-shirts made or can you

18    change the name?

19            MR. HAHN:  As long as you call me, I don't care

20    what you call me.

21            THE COURT:  How about aardvark?

22            MR. HAHN:    That's fine, Judge.

23            THE COURT:  So you don't have any problem with

24    calling it right now the contractor/plaintiff steering

25    committee?

1              MR. HAHN:   That's fine.

2              THE COURT:   That's fine.  All right.  One for one,

3     Mr. Bryson.

4              MR. BRYSON:   All right.  Off and running.

5              Under the -- under C, which would be under

6     defendant's liaison counsel, did they leave in -- we had

7     preferred that under all liaison counsel, number one be

8     served as intermediary between homeowner plaintiffs counsel

9     and the Court.  And I don't know if that has been deleted on

10    some of the versions Your Honor has.  I know Mr. Hahn's

11    suggestion was to delete it.  I think perhaps on his version

12    he left it in for homeowners, and if you did, that's fine.  I

13    don't care how it is.

14             MR. HAHN:   I think it's out on ours, Judge.  This

15    is not a large MDL.  I don't think you need to order only

16    liaison counsel can talk to the Court.  It's not a big deal

17    one way or the other.  I'm sure you can talk to anyone you

18    want to.

19             THE COURT:  And vice versa, all right?  So I'm kind

20    of confused whether it's in or out.  Can you tell me?

21             MR. HAHN:   It is out on ours.  I'm happy to --

22             THE COURT:  And so you are happy that it's out?

23             MR. BRYSON:   We want it to be in.

24             THE COURT:  You are in.

25             MR. BRYSON:   We want Mr. Lucey to be designated,

1    and of course it is the one who serves as the intermediary

2    between our committee and the Court, would be liaison

3    counsel, that would be his responsibility.  And as Mr. Hahn

4    pointed out, we'll all talk to you, but we would like liaison

5    counsel in this order to be stated as the primary contact

6    with the Court.  And I think that again falls in the Bausch &

7    Lomb order in that regard.  And so our version, if you've

8    got -- do you have our version in front of you, Your Honor?

9             THE COURT:  I've got so many versions in front of

10   me.  I'm just looking now.

11            MR. BRYSON:   Yeah.

12            MR. HAHN:   Judge, we have no problem with any of

13   that really.

14            THE COURT:  Okay.

15            MR. HAHN:   I just did not want to presume and put

16   in an order that who you want, with whom you want to

17   communicate with, that's all.  And Mr. Bryson now saying

18   primary contact, I don't object to that language at all, but

19   whatever you want.

20            THE COURT:  That's fine.  We'll just have Mr. Lucey

21   as the primary liaison counsel, and then if he wants to bring

22   anybody with him, that's fine.  If Mr. Hahn wants to come

23   with him, or he can substitute Mr. Hahn, you know.

24            MR. BRYSON:   Okay.  Your Honor, the next thing

25   would be -- this is a substantive change -- is in our version

1    of CMO 1, there is a Roman Numeral II that's called General

2    Case Management.  We have a -- do you have one with Roman

3    Numeral II?

4            THE COURT:  Okay.  Got it.  Page 8, bottom of page

5    8.

6            MR. BRYSON:  Yes.  Mine has been red lined.  Yes,

7    bottom of page 8.

8            And Your Honor, we did have something, by way of a

9    bit of a background, that had more expansive -- in

10   conversations with Mr. Hahn, we realized there were many

11   areas of disagreement, so we carved all of that out and we

12   tried to just put into the Case Management Order very basic

13   information that we believe needs to be set in this first CMO

14   with regard to, you know, orders, electronic filing, um,

15   status conferences.

16           It's our proposal, Your Honor, that a status

17   conference be held every six weeks.  We thought -- of course

18   that's Your Honor's determination on that, but it seemed to

19   us --

20           THE COURT:  That's fine.

21           MR. BRYSON:  -- six weeks seemed about right.  A

22   month was too much; two months seemed to be too long.

23           THE COURT:  When you have future hearings, you don't

24   have to come here.  If you want to come here, that's fine; if

25   you want me to go somewhere, that's fine, to make it more

1    equitable for travel expenses.  I don't mind going anywhere.

2    And if anybody wants to attend by telephone on things that

3    are not substantive, I'll be glad to have them do that, too,

4    we can crank that up.  You know, if it's a motion to dismiss

5    or summary judgment or something important, I would like to

6    see a face, but anything otherwise, scheduling or, everybody

7    is welcome to not come and attend by telephone.

8         MR. BRYSON:    Okay.  Thank you, Your Honor.  Perhaps

9    we could set up a normal dial-in number for those that might

10   dial in.  If there is any state court actions that are filed,

11   we are not currently aware of any, people that might be

12   interested in dialing in.

13        And then under Discovery Proceedings, you've

14   heard -- that's one paragraph under section 4, and you've

15   heard the arguments with regard to that.

16        Section 5 of this order is attorney time and expense

17   records.  We think it's appropriate and common to have all

18   counsel keeping contemporaneous time records, particularly on

19   the plaintiffs' side.  That's of course a common, common

20   thing.

21        And then you can see Communications Among Counsel.

22   To our understanding, there was no, with the exception of the

23   information about the discovery proceedings, there was no

24   objection to this language.

25        I think the primary objection MI has in the current

1    version to the Court is that CMO 1 should really just set out

2    leadership in the committees and save these additional things

3    for the next CMO.  Our position would be this language is not

4    objectionable and that it, we ought to go ahead and get it

5    put in the very first CMO.

6            THE COURT:  Okay.

7            MR. FARRIER:   That's putting the cart before the

8    horse.  And that's the position we took when we met with some

9    of the plaintiffs' counsel and went over their original CMO 1

10   and CMO 2.  Roman numeral II forward were all in CMO 2, which

11   we had, I believe, and still believe should be deferred until

12   the leadership is put in place, and we can move forward to

13   some of the management and discovery issues.  And so we

14   object to Romans II forward in the proposed CMO submitted by

15   Mr. Bryson, and specifically object to the continuing attempt

16   to push Johnson out into some super category of different or

17   differentiated discovery.  The CMO that was submitted upon

18   the one objection that's now been ruled upon is actually the

19   CMO 1 from Bausch & Lomb.

20           MR. BRYSON:   The only thing I would add to that,

21   the cart before the horse, is just now that order that the

22   clerk is going to deliver, orders to liaison counsel, why

23   should that not be in the first one, Electronic Filing and

24   Service, follow the District of South Carolina's policies and

25   procedures on electronic case filing.  I mean, we have

1      counsel from a number of states who are, you know, becoming

2      acclimated to this Court's procedures and the possibility of

3      new cases being filed.  I think attorneys need some of these

4      basic things, status conferences will be, telephonic

5      conferences, the one on discovery procedures, Your Honor can

6      rule on that, but that's just one paragraph.  The rest of the

7      information I think is just good informational type

8      paragraphs to have in this initial CMO.

9            THE COURT:  Mr. Farrier, why wouldn't you want these

10     counsel to keep contemporaneous time records, since your

11     client is objecting?

12            MR. FARRIER:  I won't object to our meeting every

13     six weeks.

14            THE COURT:  That's five and six.  So you are

15     unobjecting to them now, is that what you are telling me?  So

16     except for your objection and Mr. Hahn's objection to the

17     Johnson case, do you have any specific objection to

18     paragraphs 2, 3, 4 and 5 as a general matter?

19            MR. FARRIER:  Four, absolutely.

20            THE COURT:  Well, 4, pending my decision, is going

21     to say, the Case Management Order related to the discovery

22     procedure will be entered separately.  You don't have any

23     objection to that?

24            MR. FARRIER:  No.

25            THE COURT:  Okay.  It's just -- so do you have any

1    other objection to paragraph 2, which is Orders, Electronic

2    Filings, Separate Dockets and Separate Filing?

3            MR. FARRIER:   I do not.

4            THE COURT:  How about 3?

5            MR. FARRIER:   No.

6            THE COURT:  How about -- 4 is still up in the air.

7            Five, you know -- 4 is either going to say that

8    first paragraph, first sentence which you have no objection

9    to, or the second sentence, which you do.  I haven't decided

10   that yet.

11           Attorney's Time and Expense, no problem?

12           MR. FARRIER:   No, sir.

13           THE COURT:  And generally -- General Application of

14   Orders, no problem?

15           MR. FARRIER:   No problem.

16           THE COURT:  And Communication Among Counsel, no

17   problem?

18           MR. FARRIER:   We'll do so.

19           THE COURT:  Okay.  So I'll enter all of that, and

20   I've still got the Johnson issue pending, okay?

21           All right.  What else do we have?

22           MR. BRYSON:   Your Honor, we have a Case Management

23   Order number 2 that we have submitted to and had

24   conversations with MI about.  Mr. Hahn, I believe, had raised

25   some objections with your -- with Your Honor about not having

1    had sufficient time to review it, and he certainly can expand

2    on that.

3            Your Honor, it's our desire to get a Case Management

4    Order number 2 entered as quickly as possible, and it's with

5    regard to discovery.  I do think that the Court's ruling with

6    regard to how you are going to handle the Johnson case,

7    though, makes a big difference as to how this particular

8    order shakes out.

9            If you read our draft Case Management Order number

10   2, there is information in there about discovery proceeding

11   in the Johnson case and how that would interact with the

12   other cases.

13           We do think with regard to discovery or -- I'm

14   sorry -- master discovery, we have had some conversations

15   among ourselves and on the homeowners side, and it has been

16   our experience that the more common practice of late is to

17   develop a plaintiffs' fact sheet or plaintiffs' profile form,

18   a defendant's facts sheet, defendant's profile form, and

19   maybe a contractor fact sheet, profile form, which are

20   exchanged among the parties and questions that are agreed

21   upon.  So that once that's agreed upon, they are going to

22   provide that information.  So we don't serve interrogatories

23   and get a lot of objections, we try to handle all the

24   questions on the front end, get those agreed upon and just

25   have them answer that information.

1           So we think maybe it's a bit semantical, but that in

2     place of doing written discovery or master discovery, instead

3     that we have three sets of profile forms or fact sheets that

4     would be developed, and that would be then exchanged among

5     the parties.  And that would be -- that would be a change

6     from the draft CMO that we had submitted to Your Honor, as

7     well as to the other parties.

8           And again, it's an effort to try to avoid, you know,

9     objections in discovery.  Let them see the questions on the

10    front end.  And that's worked well not only in Chinese

11    Drywall, but in a number of other MDL's that other counsel

12    have been involved with.

13          But the other thing on CMO 2 is that there are some

14    sections in that CMO that pertain to -- there are some other

15    sections that they have objected to.  So we would like CMO 2

16    being -- portions of it we don't think there is objections,

17    but we are really not sure where the defendants stand with

18    some of the other language we put in the CMO.

19          MR. HAHN:   Your Honor, if I may?

20          I think Mr. Bryson made part of my argument, which

21    is we don't really have enough information today to submit a

22    CMO 2.  And once you put the leadership in place, the three

23    different groups need to meet and negotiate.  I was in a hard

24    negotiation in this, I don't know what has been agreed to and

25    what's been left off the table.  I know there is some

1    deviations from the Federal Rules and there are other issues

2    that we are uncomfortable with and we don't need to take up

3    your time with.

4          I would ask Your Honor to give us a general feel for

5    the type of disparity you expect us to cover in a CMO 2, and

6    charge us to sit down in the next 30 days and come up with an

7    agreed-upon order we can submit to the Court.

8          THE COURT:  The problem with that is is that you are

9    asking the person that knows the least about this case to

10   manage the rest of you who know the most about this case.

11         MR. HAHN:   Understood, Your Honor.

12         THE COURT:  Talk about the blind leading the blind.

13         MR. HAHN:   Well, just generally, there are issues

14   with deviations from the -- and we can discuss it among

15   ourselves and hopefully come up with an agreed-upon order.

16   We have in every MDL we have been involved in; I can't

17   imagine we can't do so here.

18         THE COURT:  Yes, ma'am?

19         MS. LUMPKIN:  Your Honor, if I may?  We agree with

20   Mr. Hahn on most of what he's addressing with the Court as to

21   CMO 2.  We think it's a bit premature.  We agree with what

22   Mr. Bryson has mentioned with regard to moving this forward

23   and coordinating it, setting up some appropriate protocols,

24   but one of the issues that we think factors into what happens

25   with discovery and how it's structured, putting aside fact

1    sheets and some of these other deviations from what we have

2    in front of us, we have pending motions to dismiss that have

3    been fully briefed in almost all of the cases.  And now with

4    the Third Amended Complaint, there is likely to be one there,

5    too.  And I think that that probably would streamline and

6    assist the Court with getting to know what the issues are in

7    the various cases under those state laws and trying to set

8    that in motion as we work simultaneously towards putting

9    together a CMO 2 that works for everyone.

10              THE COURT:  Let me ask you a question:  Since I

11    think it's the North Carolina case that has a motion to

12    reconsider pending, and I certainly can't handle that because

13    I can't reconsider something I never considered, how

14    physically do you do that?

15              MS. LUMPKIN:   Well, Your Honor, we were going to

16    request that the Court set a briefing schedule so that we

17    could move to get that case back to North Carolina.  Because

18    not only is there a pending motion for reconsideration, Judge

19    Mullen requested additional research as to certain issues.

20    And Mr. Shipley is here who is handling that and can

21    certainly add anymore information that the Court may have.  I

22    think you are absolutely right, it would be difficult for you

23    to reconsider the issue and address the additional research

24    that Judge Mullen has requested.  So we were going to file

25    our motion for remand, recommend that it go back as to that

1    one motion, but the rest of the motions are fully briefed and

2    they are pending.

3              THE COURT:  Okay.  So you are going to have to hear

4    those sooner or later.  So while you are here, why don't you

5    pick a date to hear those motions to dismiss and we'll have

6    hearings on those motions to dismiss.

7              Now, my schedule will not permit hearing those

8    motions to dismiss until after August the 23rd.  So any time

9    after August the 23rd, I'll be ready to roll.  They will be

10   here; I'll be in Africa.  Not August the 28th because I've

11   got a jury panel coming in.  But if you just select some

12   dates that are convenient, and I guess we can -- there are --

13   I think there are five motions to dismiss pending.

14             Is that right?

15             MS. LUMPKIN:   There are four, Your Honor, for the

16   cases that are actually before the Court right now, not the

17   three conditionally.  Even though there are pending motions

18   there, they haven't actually been transferred here, and there

19   is a pending motion to vacate as to those three conditional

20   transfers.  My understanding is JPML will be entertaining

21   that at the end of July.  So probably by the time we set this

22   hearing we will have a better understanding as to whether or

23   not it will be the four that are presently pending in front

24   of the Court or seven.

25             THE COURT:  Okay.  And I don't know how long it's

1     going to take to do seven motions to dismiss.  I would

2     imagine, looking at this crowd, it's going to take a while.

3     So you need to select Monday, Wednesday and Friday of one

4     week or something like that, two and three, or two, three and

5     three, I don't know how long it's going to take.  I'll let

6     the lawyers figure that out and you just call my office and

7     schedule it and I'll be ready to go.

8              MS. LUMPKIN:   One other thing about the other

9     cases.  To alleviate the pressure on the Court, especially

10    with the schedule Your Honor just discussed, we would also

11    suggest if the Court wanted to recommend that the motion to

12    dismiss be heard in the original jurisdictions, they were

13    filed there and fully briefed there, we would be willing

14    to -- you know, if that's the way the Court would like to go.

15             THE COURT:  I think the reason for it being here is

16    I'm supposed to do all the work, unfortunately.  So probably

17    better off then I'll learn about the cases, and I'll have a

18    better idea on discovery.  So I think I'll unfortunately keep

19    everything except the motion to reconsider, I'll say that.

20    How about that?

21             MS. LUMPKIN:    Thank you.

22             THE COURT:  Now, is there any objection from the

23    plaintiffs remanding the case that has the motion to

24    reconsider pending to North Carolina for the resolution of

25    that order or that motion?

1           Isn't that yours, Mr. Bryson?

2           MR. BRYSON:    Your Honor, that's our case.

3           You know, that motion -- the motion to dismiss was

4    denied and then they have the motion to reconsider, and it's

5    just been pending.  That was a motion they filed that's been

6    pending for a long time, I think like a year and a half

7    perhaps.  And then the case, you know, then the case was

8    transferred here.  So I don't know to what extent the Judge

9    is going to change his ruling.  I mean, he denied the motion

10   and then they just filed a motion to reconsider it, so --

11           THE COURT:  Well, statutorily required no.  So what,

12   you said Judge Mullen?

13           MS. LUMPKIN:    Yes.

14           THE COURT:  Graham Mullen.

15           MS. LUMPKIN:    It's February of 2012 when the Judge

16   requested additional research on the statute in the --

17           THE COURT:  It's Judge Graham Mullen in Charlotte,

18   as opposed to a state court judge?  I didn't know.

19           MS. LUMPKIN:    It's a federal judge.  I apologize.

20           THE COURT:  I know him.  Okay.  Fine.

21           So again, going back, Mr. Bryson, is there any

22   objection to remanding the case to Judge Mullen to

23   reconsider?  I find it hard enough to do it, I don't think I

24   can do that one.  You can think about it and just let me

25   know. How about that?

1          MR. BRYSON:   Right.  You know, we are here, Your

2    Honor, and we object to the case being sent back to North

3    Carolina -- certainly on the motion to reconsider.  And

4    then -- but we can -- if Your Honor -- it sounds like we can

5    provide some information to you on our position on that in a

6    few days.

7          THE COURT:  I can call Judge Mullen.  I'll probably

8    see him in San Francisco on Monday.  So if you want a

9    hearing, I'll get you a hearing.

10          MR. BRYSON:  That would be fine.

11          MR. SHIPLEY:  Your Honor, my name is Curtis Shipley.

12    And we are perfectly fine with the case going for that

13    purpose.  It makes the most sense.  It serves judicial

14    economy.  The motion is fully briefed.  Initially in July of

15    last year, Judge Mullen asked for additional briefing in

16    February pending in this matter.  We think it probably could

17    be resolved fairly quickly.

18          MR. BRYSON:  Could we suggest that Your Honor call

19    Judge Mullen and ask what his preference is on this?  We are

20    certainly -- I don't know that he's going to make any

21    different decision as to his original motion that was denied,

22    but that Your Honor contact him and ask what his preference

23    is?

24          THE COURT:  Sure.  I mean, I'll be glad -- and

25    again, if Mr. Bryson -- I'm just throwing it out because we

1     are having a general meeting -- if in fact you have any

2     authority -- and I looked it up -- we tried to look it up

3     whether -- I mean, I don't have any problem with the

4     authority to decide the motion to dismiss, but it's just the

5     problem of the motion for reconsideration, since it's, you

6     know, hard for me to reconsider something that I haven't

7     considered in the beginning.  And I don't know whether Judge

8     Mullen would like me telling him he was wrong or right.

9          So I'll be glad to talk to Judge Mullen and get a

10    hearing on that case if in fact you want me to.  If you think

11    that I have the ability to decide that, just let me know and

12    I'll decide whether I can decide it or not.

13          How does that sound?

14          MR. BRYSON:   That's fine.  Thank you, Your Honor.

15          THE COURT:  Either way I'll call Judge Mullen.

16    Okay.  And could you give me the case, the North Carolina

17    file number on that one?

18          MS. LUMPKIN:   I have it, Your Honor.  It's case

19    number 2:11-CV-011.  I'm sorry, I apologize, 3:10-CV-00427.

20          THE COURT:  So 3:10-CV-00427?

21          MS. LUMPKIN:   Yes, Your Honor.

22          THE COURT:  Okay.  Got it.

23          All right.  What else is there?

24          MR. BRYSON:   Your Honor, back on the CMO 2, then,

25    which is with regard to discovery, I think again when Your

```
 1        Honor makes the ruling on Johnson and how you are going to

 2        handle that, that will allow us then to meet with defense

 3        counsel and then bring CMO 2 before Your Honor before the

 4        next status conference.

 5                THE COURT:  Sure.

 6                MR. BRYSON:   And hopefully within 30 days we would

 7        have that.  I would propose we submit to Your Honor a

 8        proposed discovery scheduling order.  There may be objections

 9        and the parties could indicate if they have points of

10        objection, that way Your Honor would have two weeks at which

11        to decide whether to go ahead and enter the order prior to

12        the status conference or to raise questions at the next

13        status conference about the points of contention, if any.

14                THE COURT:  Okay.  All right.  So give me 20 minutes

15        and I can talk to my lawyers and I'll be back and I'll make a

16        decision.  How does that sound?  All right.  And y'all can

17        talk in the meantime.

18                (Thereupon, there was a brief recess.)

19                THE COURT:  Okay.  Anything else by anybody else

20        about anything else right now?

21                MR. LUCEY:   Not on the matter under advisement, but

22        there were several --

23                THE COURT:  Let me ask you a question on the motion

24        under advisement.  Mr. Farrier, if I understand you correctly

25        that you have been taking trips to Pennsylvania.  Is that
```

```
1    where your home office is?

2              MR. FARRIER:   Not me personally, we've got a --

3              THE COURT:   The corporate you, okay?

4              MR. FARRIER:   Yes.

5              THE COURT:   One of the people lower on the

6    letterhead than you is going to Pennsylvania and going

7    through to get the discovery for these, this class action and

8    collate all the windows, is that what we are talking about,

9    all the lines of windows?

10             MR. FARRIER:   Focused primarily on 3500's, and we

11   assume.  But we are -- there is an overlap of data, and

12   frankly, we have to process it.  So we want to know what's in

13   there.

14             THE COURT:   So are there -- I mean, since it would

15   be highly unlikely that other lines of windows will not be

16   involved in this nationwide case sooner or later, are you --

17   are there plans to go forward and get the same information

18   with regard to the other lines of windows?

19             MR. FARRIER:   Yes.

20             THE COURT:   Okay.  And do you have an estimate as to

21   how long that's going to take despite whatever I do with this

22   issue on this case?

23             MS. LUMPKIN:   An estimate as time to process the

24   information?

25             THE COURT:   Do you have the information available to
```

1       push the button to give them the discovery, whatever lines of

2       windows, other things show up, the majority of the discovery,

3       whatever is available right then?

4               MS. LUMPKIN:    Your Honor, the answer to that is,

5       without talking -- you are dealing with a lot of moving parts

6       as to the 3500's, that is a true statement.  Yes, it's put

7       together and there at the moment it has not started.  Because

8       frankly at that point once we start to bring it down from the

9       gigabytes that 3500, there are hits within 3500 and we start

10      the minimizing process, it's substantial amounts of money.

11      So when we have the stay order from this Court, we waited

12      because we wanted to see what the Court was going to do in

13      the MDL discovery moving forward.

14              Having said that, going back to the other series of

15      windows, the universe of documents have not all been

16      gathered, but we have gathered chunks of them.  It's the

17      cost, it's cost prohibitive.  So we are hoping to try to work

18      with plaintiffs' counsel to come up with the type of protocol

19      for CMO 2 and figure out what the master discovery is going

20      to look like so we can then expend more of that money.

21      Because frankly at some point we are going to have to look at

22      cost sharing because it's very expensive.

23              THE COURT:    Okay.  And your contemplation and

24      discussions with regard to the universe of discovery under

25      CMO 2, or whatever, 3, or whatever it's going to be, includes

1    other lines of windows than the 3500?

2              MS. LUMPKIN:   Yes.

3              THE COURT:  Does it include all 11 lines of windows,

4    as Mr. Hahn referred to earlier today?

5              MS. LUMPKIN:   I believe we focused on 8500's,

6    4300's, because some of these other lines of windows there

7    haven't, while I know they are listed in some of the

8    complaints, not all of them -- we have not -- there has to be

9    a little bit more discussion as to whether they were even

10   sold in those states and what they represent.

11             MR. FARRIER:   Your Honor, just to further flesh

12   that out a little bit, because I think I understand where the

13   Court is going, we are still engaged in gathering the data.

14   Once we have gathered that and have a discussion about what

15   plaintiffs actually want, we can run some test runs and we'll

16   be able to give a fairly accurate estimate of the number of

17   weeks it will take to both process and review that data.

18             THE COURT:  Okay.  Yes, sir, Mr. Lucey?

19             MR. LUCEY:   Just to clarify something, Your Honor.

20   There are 11 lines of windows.  There are three lines in our

21   original Complaint.  We listed out the variations within the

22   lines to make sure that we were being clear that we were

23   including everything, but the variations are all within the

24   three lines.  So it is three lines.

25             And in the previous MI production, there have been

1    very little overlap between the different windows and

2    information produced.  In other words, there is either 3500

3    information or there is 4300 information.  They are barely on

4    the same page, with the exception that the 3500 and the 8500

5    share the same sashes and sash parts.  So on those drawings

6    and on those building materials and on those type of

7    documents, you will get both lines on the same document, but

8    other than that, there is typically very little overlap.

9              THE COURT:  Where did your other eight lines of

10    windows come from, Mr. Hahn?

11              MR. HAHN:  Um, Your Honor --

12              THE COURT:  I thought I understood you to say you

13    had 11 lines, but I mean, you know...

14              MR. HAHN:  Well, we have listed in our Complaint 1,

15    2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and not limited to just

16    these.  Some of those are subsets of the 3500 and the 8500.

17    At this stage we are looking for broad discovery and

18    narrowing it down because that's typically where you find the

19    good stuff.

20              THE COURT:  You mean you find the good stuff in the

21    broad discovery and then you narrow it down?

22              MR. HAHN:  Yes, sir.

23              THE COURT:  And it's my understanding also that as

24    far as the Johnson case, that nothing has been produced.

25              MS. LUMPKIN:   At this point, Your Honor, nothing

1    has been produced other than third-party documents that I

2    believe Mr. Lucey requested.

3         THE COURT:  Except what Mr. Lucey already had in his

4    possession.  I mean, that wasn't produced in this litigation;

5    he had it in his possession from prior litigation.

6         MS. LUMPKIN:   Right.

7         And our understanding at that May hearing, the Court

8    ruled that he should not be using that for the purposes of

9    this case.

10        MR. LUCEY:   I'm not hearing counsel.  I can't hear

11   what she's --

12        MS. LUMPKIN:   I'm just saying that the Tennyson Row

13   documents, which is what I believe the Court is referring to,

14   I believe on the May 17th hearing, after the subpoena issue

15   was addressed, I believe the Court said you could maintain

16   those documents but that you could not use them in light of

17   the confidentiality order that wasn't complied by.

18        MR. LUCEY:   The Court never said anything about not

19   using them, Your Honor.  You said hold on to your documents.

20        THE COURT:  Okay.  I didn't think I said you

21   couldn't use them, so -- but you know -- okay.

22        I'm going to in subparagraph 4, Discovery

23   Procedures, I'm going to strike the second sentence.  I think

24   we -- the best thing to do right now is because although the

25   Johnson case is an older case, through legal procedures it

1    hasn't gone very far, despite Mr. Lucey's valiant efforts to

2    advance the ball.  But Mr. Lucey is probably correct that if

3    there will be a motion to stay discovery pending the motion

4    to dismiss, that probably will not have a half life of 10

5    seconds.  I mean, there isn't one.  I'm just telling you that

6    watch out if you make that one because you may get an answer

7    by return mail, because I will call Judge Mullen, probably

8    this afternoon.  I'm going to get a copy of the pleadings

9    when we go back upstairs.  So although we are going to be in

10   lock step, I'm going to do the best I can, which is my

11   charge, to get the discovery moving in this case, which is

12   what -- everybody wants to know what this case is all about,

13   and so that's my goal.

14            And I sometimes -- I share Mr. Lucey's frustration,

15   but I think this is probably the best way to go right now,

16   okay?

17            All right.  What else?

18            MR. LUCEY:  Just to clarify on that aspect of your

19   ruling, the Court is removing that sentence; it's not making

20   any ruling about whether or not that -- what the effect of

21   that May 17th order is at this time, and that will be argued

22   at another --

23            THE COURT:  Okay.

24            MR. LUCEY:  -- status conference, I take it?

25            THE COURT:  That's fine.  I'm just doing the CMO.

1    So removing that it just says, Discovery Procedures, it is

2    going to say a Case Management Order related to discovery

3    procedures will be entered separately.

4         MR. BRYSON:   May it please the Court?

5         Is it okay with our suggestion that within 30 days

6    we would have -- all the parties would have submitted to Your

7    Honor proposed Case Management Order number 2 on discovery to

8    give Your Honor two weeks in which to decide what you want to

9    do?

10        THE COURT:  If you do me a favor and submit one

11   order as opposed to three orders and highlight or red line,

12   or however you do it, to bring to the Court's attention what

13   the --

14        MR. BRYSON:   What the party contends.

15        THE COURT:  -- what the problem is, you know, so I

16   know what's at issue.  Because starting to throw around these

17   orders, especially when it gets confusing -- and I make

18   enough bad decisions when I'm not confused.

19        MR. BRYSON:   Your Honor, for the record to be

20   clear, I know Your Honor said you were going to contact Judge

21   Mullen with regard to the Deblaker case, we would ask that we

22   be given 10 days in which to provide an official response to

23   the Court and just -- we huddled among ourselves while you

24   were on recess.  And we certainly believe that when a case is

25   transferred for all purposes, for all purposes would be all

1    the motions that may be out there pending, even the motion

2    for reconsideration, there are standards that apply to that.

3    And we'll certainly be searching for authority on that, but

4    likewise, as well, that you can't have remands for limited

5    purposes.  That would be inappropriate.  And that at the very

6    worst, you know, they could refile their motion to dismiss in

7    this particular action with regard to the North Carolina

8    case, if that's how the Court decides that.

9          THE COURT:  I'll hold off calling Judge Mullen until

10   you -- in 10 days you give me whatever your positions are.

11   So I won't call him and stir him up, but I will -- I'll get a

12   copy of the pleadings.  I mean, we are going to get those

13   when we go back upstairs.  So I'll just wait for your

14   response.  I would like to get it before the 1st of August

15   because that's when my plane leaves for Africa, all right?

16   So I can give you -- so y'all can work while I play, which is

17   my job.

18          Yes, sir?

19          MR. PERRONE:  Thank you, Your Honor.

20          THE COURT:  Could you move the microphone, because

21   sometimes Mr. Lucey and I have a hard time hearing, and I

22   think the court reporter does, too, and she's the most

23   important person around.

24          MR. PERRONE:  Yes, sir.  Thank you.

25          Just to bring to your attention, with respect to the

1    motions to dismiss that we all talked about, I just want you

2    to know that we also will be filing a motion to dismiss the

3    Lakes of Summerville case.  We accepted the pleading, we

4    waived service, but we have not yet responded.  And so we

5    will be filing a motion to dismiss or consolidate that action

6    with this action.

7              And if it wasn't clear, with respect to Mr. Lucey's

8    Third Amended Complaint, if Your Honor grants the motion to

9    amend, we will then be filing a motion to dismiss with

10   respect to that Complaint, as well.

11             THE COURT:  Okay.  Well, let me ask you:  Are you

12   going to file an opposition to his proposed Third Amended

13   Complaint and then I'll decide that, and then file a motion

14   to dismiss, or you just want to go ahead and file the motion

15   to dismiss?

16             MR. PERRONE:   Your Honor, I think we are willing to

17   accept the Third Amended Complaint.

18             THE COURT:  Okay.

19             MR. PERRONE:  We'll accept service of the Third

20   Amended Complaint and then we will file our motion to dismiss

21   so that all of the motions can be returnable before Your

22   Honor at the same time.

23             THE COURT:  Then on the motion for filing the Third

24   Amended Complaint which was filed this morning, I'll grant

25   that motion.  We'll mark that granted.  How does that sound?

1          MR. PERRONE:   Thank you, Your Honor.

2          THE COURT:  All right.  Thank you.

3          Yes, ma'am?  Anybody else?

4          MS. LUMPKIN:   Yes, sir, a point of clarification.

5    I stand corrected, Your Honor, as to that issue on Tennyson

6    Row.  You are absolutely right that you did not tell Mr.

7    Lucey that he could not use them.  Mr. Lucey agreed on the

8    record as part of the transcript May 17th that he not

9    disclose those confidential documents to other counsel in

10   other cases until such time as there is a standard discovery

11   or Case Management Order in the MDL cases or a standard

12   confidentiality order in the MDL cases.

13          THE COURT:  Okay.

14          MS. LUMPKIN:   That's what I was referring to in the

15   May 17th transcript.

16          THE COURT:  Okay.  No problem.  All right.  So you

17   are still not going to do that.  And then if Mr. Lucey wants

18   to do that after the Case Management Order, just go ahead and

19   give you some notice.  If you don't like it, call me and

20   we'll take care of that at the time.

21          MS. LUMPKIN:   After you enter this Case Management

22   Order confidentiality agreement, which was negotiated between

23   Mr. Ouzts and Mr. Lucey, that never got entered by the Court.

24          THE COURT:  Okay.

25          MS. LUMPKIN:   So that's still an issue with regard

1    to any kind of production going forward.

2              MR. LUCEY:   I brought an extra copy for Your Honor.

3    For whatever reason, the confidentiality order had not been

4    entered.

5              THE COURT:  It was probably Friday afternoon.

6              MR. LUCEY:   It has attachments.  This was on the

7    record on May 17th.

8              MR. HAHN:   I've never seen it, Your Honor.

9              THE COURT:  It's probably yours, we probably copied

10   it.

11             MR. HAHN:   It would be.

12             MR. LUCEY:   It's the standard confidentiality

13   order.  And this order was stipulated in Johnson and we were

14   going to address broadening it with the Court separately, but

15   that was stipulated on the record, and then we submitted it

16   to you after Johnson with what we agreed to on the record.

17             MR. HAHN:   What I would like to do is when we

18   negotiate a CMO 2, that we attach a confidentiality order to

19   that.

20             MR. LUCEY:   We intend to move on the failure to

21   comply with your May 17th order, and the only excuse that

22   they might proffer is that we haven't gotten an executed

23   confidentiality order back from the Court.  But we would --

24   this applies to Johnson.

25             And we are ready to address the second issue, and at

 1      least get the Court's input.  If the Court will recall --

 2              THE COURT:  Okay.  Just because I didn't enter it

 3      because of oversight, and you weren't around at the time

 4      because you weren't a party, I'll mark it entered, okay?  If

 5      you have any objection to it or you have any clarification

 6      you want to make, any additions, just let me know and you can

 7      negotiate it among yourselves or just let me know, okay?

 8              MR. HAHN:  Your Honor, I'm troubled by what Mr.

 9      Lucey just said, that he intends to move forward with the

10      Johnson case.  I thought that was something that we had

11      discussed and we all need to move together as an MDL, so --

12              THE COURT:  Okay.  Well --

13              MR. HAHN:  -- that's problematic.

14              THE COURT:  Have a drink.  Talk to him over a drink

15      tonight, okay?

16              MR. OUZTS:  Your Honor, just one point of

17      clarification.  With regard to the Johnson confidentiality

18      order and the Claw-Back order, by their terms, they are both

19      limited to the Johnson case, just because that's all that was

20      before the Court at that time.  So if those are the orders

21      that are going to be used, then we just -- in all the MDL

22      cases, that change needs to be made in those orders.

23              THE COURT:  Okay.  I mean, y'all haven't seen -- how

24      about, Mr. Bryson, the rest of the plaintiffs and you have no

25      problem with this order?

1          MR. BRYSON:   That's correct, Your Honor.

2          THE COURT:  Okay.  All right.  So we'll just broaden

3    it to cover the MDL, all the cases in the MDL, all right?

4    And with the ability of Mr. Hahn to take a look at it and

5    make any additions or corrections or any objections to it.

6          MR. HAHN:    Thank you, Judge.

7          THE COURT:  All right.  So Catina, is that entered

8    now?  I don't need to sign anything now.  You got it.  All

9    right.

10          Do you want this back, Mr. Lucey?

11          MR. LUCEY:    Thank you.

12          THE COURT:  Thank you.  What else have we got,

13    anything?

14          MR. LUCEY:   Yes, Your Honor.  There were a number

15    of timing and date issues.  It seems like we should defer

16    addressing those until the status conference that we'll have

17    sometime around when you are hearing the motions to dismiss.

18          We did consult during the break and as of now MI's

19    focusing on September 4th through 7th for their dates.  We

20    are pretty flexible on the plaintiffs' side.  So we hope to

21    have those dates more cemented for the Court shortly.

22          MS. LUMPKIN:   I spoke to Mr. Lucey, we are trying

23    to work out the dates.  In light of the fact that Your Honor

24    has a very full schedule and is going to be out of town and

25    we have the JPML coming in probably at the end of August with

1    a decision as to the other three, we had picked the first

2    week or second week of September, but I told Mr. Lucey I

3    needed to confirm this with other counsel.  Mr. Ouzts has now

4    advised me that he is out of town on a family planned

5    vacation for that week.

6              MR. OUZTS:   I think that's correct.  I need to

7    check with my wife to be sure.

8              THE COURT:  Let me -- am I going to have to have all

9    of y'all here for every hearing?  Not that -- I'll miss you.

10   I mean, if you were substantively going to argue those

11   motions, that's one thing, if you were going to sit there and

12   watch Mr. Farrier or your law partners argue them, that's

13   another thing.

14             MR. OUZTS:   Your Honor, fair point.  And what I was

15   anticipating is there may be a motion to dismiss in the

16   Johnson case, which I would be --

17             THE COURT:  Why don't we hear the rest of them.  If

18   there is a motion to dismiss in the Johnson case, I can do

19   that when you are back from vacation.  Mr. Farrier, I think

20   the second week is problematic, because I think I'm supposed

21   to be in San Diego, the week of the 4th of September is

22   better, okay?  So if we can narrow it down there.

23             MR. FARRIER:   Understood.

24             THE COURT:  And specifically if there is a motion to

25   dismiss in the Johnson case, we'll wait for Mr. Ouzts, who

1    will be refreshed and relaxed, and having spent time with his

2    family, will be glad to be back in court.

3            MR. OUZTS:    Absolutely, Your Honor.

4            THE COURT:  Okay.  All right.  Anything else?

5            MR. LUCEY:    Item five, Your Honor, was bringing up

6    the issue of early settlement discussions.  We brought that

7    up with the 26(f) conference, never got a response.  We want

8    them to know the door is always open.

9            THE COURT:  Okay.

10           MR. LUCEY:   We assume that they want to defer on

11   that.

12           MR. FARRIER:   Any time they want to talk about a

13   resolution, including dismissal with prejudice, we are happy

14   to -- we are happy to talk any time.

15           THE COURT:  Okay.  No problem.  I got you.

16           MR. LUCEY:    Item 7 A, Your Honor, is MDL procedural

17   matters, direct filing of additional actions, which has been

18   quite common and would facilitate -- I believe would

19   facilitate the organization here.  We know that Kansas is

20   getting filings and we wanted to get the Court's guidance on

21   that, the direct filing of additional actions here in South

22   Carolina.

23           THE COURT:  Yes, sir?

24           MR. PERRONE:   Your Honor, we would respectfully

25   suggest that you decline the offer to permit direct filing.

1    We don't really know what's going to happen, whether there is

2    going to be a Kansas case, an Iowa case, a California case,

3    but I think that the best course of action would be for the

4    Court to require that those actions be filed in their own

5    home states.  If they are ever going to be filed, they can

6    then go to the JPML and seek a transfer here as tag along

7    cases, Your Honor can conduct discovery, rule on motions, but

8    as opposed to Your Honor then being required to try those

9    cases as direct filed cases, they would then go back to their

10   home states, just like all these cases will go back to their

11   home states.  If Your Honor permits a direct filing, you will

12   be living with those cases until the conclusion of a trial.

13        Now, that's obviously within Your Honor's

14   discretion, but that may be an issue that Your Honor does not

15   have to tackle today.  There are no other cases filed yet.  I

16   think the better course would be to let this unfold a little

17   bit and see what actually happens.

18        THE COURT:  I guess the argument, it's less work for

19   you, Judge, always works, but go ahead.

20        MR. BRYSON:   Your Honor, I was just going to say I

21   would hope that Mr. Perrone and MI would perhaps reconsider,

22   maybe even as we speak to them tonight during negotiation of

23   the CMO 2, I don't think does not necessarily stay from the

24   beginning to the end before Your Honor, it could always be

25   sent back.  We are just trying to alleviate the step of if

 1        there is a direct, why go through the trouble of filing it in

 2        say, Kansas, and transferring it here when we could just

 3        transfer it here, you can do all the things that are

 4        appropriate for the MDL, and it can be sent back to the

 5        appropriate jurisdiction.  It does not mean that it has to be

 6        here the whole time, and it saves a lot of time and is more

 7        judicially economical to do it that way.  But there is no

 8        motion pending before Your Honor on that and perhaps we can

 9        have further negotiations on that.

10              THE COURT:  Why don't y'all negotiate that and we

11        can take care of that in the next meeting.

12              MR. PERRONE:   We would be on the same page with

13        respect to the discovery issue.  And none of us, I wouldn't

14        want to inadvertently fall into a situation where the cases

15        must stay here.

16              THE COURT:  That's fine.

17              MR. LUCEY:   As far as less work for you, Your

18        Honor --

19              THE COURT:  So pending that I guess they should file

20        them in the districts.  If somebody wants to file the case

21        for the next six weeks, I guess they don't have any choice

22        but to file them in their home districts, okay?

23              MR. PERRONE:   Yes, Your Honor.

24              THE COURT:  Yes, sir.

25              MR. HAHN:   I would like to be included in that.

1    There is some choice of law issues that need to be addressed,

2    as well.

3         THE COURT:  Yes, sir.  Mr. Lucey?

4         MR. LUCEY:   As far as less work for Your Honor, I

5    was just -- the reason we made this motion, Your Honor, is we

6    understood you get an additional MDL clerk if they are filed

7    here or something like that, so...

8         Anyway, Your Honor --

9         THE COURT:  So now y'all are even.  That depends on

10   how many cases we get, all right?

11        MR. LUCEY:   How many does it take?

12        THE COURT:  I don't know.

13        MR. LUCEY:   Unless Mr. Bryson has something else,

14   the only other thing I was going to address was the six weeks

15   for our next status conference would be about the time we

16   have the motions to dismiss.  And I would suggest that they

17   have -- even if it's brief because the motions having been

18   decided, that we have it while we are all on for that.

19        THE COURT:  Why don't we set the next meeting for

20   the week of the 4th of September.  I'll clear that week for

21   everything and I'll have an MDL week, all right?  Anything

22   else?

23        MR. HAHN:   Judge, I was remiss earlier, this is

24   administrative, Mr. Bundy is also working with our group, and

25   he had asked me to give his apologies to the Court, he was

```
 1     unable to be here today.
 2              THE COURT:  Well, tell him we missed him.  All
 3     right.
 4              Anything else from anybody else?
 5              MR. OUZTS:   Your Honor, one thing, the
 6     third-party -- the severed third-party complaint in the
 7     Johnson case, I notice that counsel for the third-party
 8     defendants are here and wanted to address that, so that's the
 9     only other thing that we have.
10              THE COURT:  Okay.
11              MR. OUZTS:   In light of the Lakes of Summerville
12     case, one of the third-party defendants has now sued MI
13     Windows in a class action case, and we believe that that case
14     should be consolidated with the third-party -- with the
15     separate third-party claim, and also Johnson.  And those are
16     issues that will be addressed in briefing in connection with
17     either this case or the Johnson case or Lakes of Summerville.
18     So I don't know that we are prepared today to decide what to
19     do with that third-party, severed third-party action, but I
20     wanted to bring it to the attention of the Court.
21              THE COURT:  Yes, sir?
22              MR. DAIGLE:  Jason Daigle for the Lakes of
23     Summerville and Sunburst Properties LLC.  We are the
24     third-party defendants in MI windows in the Johnson case.
25              Your Honor, we were going to get with each other and
```

1    figure out sometime in July to address how the third-party

2    issues are going to proceed.  That was before Mr. Hahn filed

3    his class action on behalf of the third-parties.  So I'm sort

4    of at a loss, I'm not sure exactly what to do with it at this

5    point.

6         MR. HAHN:   If I may, Your Honor?  As a class

7    action, it moves forward independent of who the named

8    plaintiff is.  We can substitute named plaintiffs, and there

9    is plenty of law on those issues.  We did not file a class

10   action on behalf of Lakes of Summerville, we filed a class

11   action, and they are the representative party and I think

12   that's the difference.  So we don't belong within the Johnson

13   action, which is why -- we are happy to brief that issue if

14   necessary, and I'm happy to talk with all interested parties

15   to set the briefing schedule.

16        THE COURT:  Why don't you and Mr. Daigle and

17   Mr. Ouzts while you are here talk about it and see which way

18   you want to go and --

19        MR. HAHN:   Be happy to, Judge.

20        MR. DAIGLE:   Your Honor, you have already ruled to

21   sever those third-party actions.

22        THE COURT:  Right.

23        MR. DAIGLE:   I'm not sure how it is going to work

24   with the other class action.

25        THE COURT:  Okay.  Well, it's been severed and so

1    it's going to remain severed until it gets stitched back

2    together perhaps, okay?  So go ahead and talk to Mr. Hahn,

3    Mr. Ouzts, and then we'll just have a hearing in the

4    third-party action in the Johnson case, which has been

5    severed, and everybody else is welcome to come, but it's not

6    necessary for them to come, okay?  So we'll do that.  And if

7    you need a time, just call my office and we'll set up a time

8    to have a meeting or sit down and talk about it or whatever

9    you want to do, okay?  Okay.  Thank you.

10    　　　　MR. LUCEY:  Will the Court be editing CMO number 1,

11    or should I e-mail the CC with that one sentence deleted?

12    　　　　THE COURT:  Since my judicial assistant is not here

13    and I have limited computer skills, I think probably if you

14    could just go ahead and do the editing and run it by Mr.

15    Farrier and Mr. Hahn, and make sure -- and your crowd, and

16    then we'll -- and just submit it and I'll sign it.  How does

17    that sound?

18    　　　　MR. LUCEY:  Thank you.

19    　　　　THE COURT:  All right.  Thank y'all very much.

20    　　　　　　　　　*****      *****      *****

21

22

23

24

25

1

2      I certify that the foregoing is a correct transcript from the

3      record of proceedings in the above-titled matter.

4

5

6

7      ---------------------------

8

9      Amy C. Diaz, RPR, CRR              April 21, 2011

10     S/  Amy Diaz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25