IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: MI WINDOWS AND DOORS, INC. PRODUCTS LIABILITY LITIGATION | MDL NO: 2333<br>C.A. No. 2:12-mn-00001-DCN |

JOSEPH DEBLAKER and CHRIS THORNE, individually and on behalf of themselves and all others similarly situated,

        Plaintiffs,

        v.

MI WINDOWS AND DOORS, INC.,

        Defendant.

C.A. No. 2:12-cv-01258-DCN

**PLAINTIFFS' REPLY TO MI WINDOWS AND DOORS, INC.'S RESPONSE BRIEF REGARDING REMAND FOR TRANSFEROR COURT TO DECIDE FULLY BRIEFED MOTION FOR RECONSIDERATION**

Defendant MI Windows and Doors, Inc., ("MIWD or Defendant") has filed a Response to Plaintiffs' brief on the issue of remand to Judge Mullen of the Western District of North Carolina.[1]

MIWD makes three arguments: 1) this Court is empowered to remand transferred cases before it concludes all its business under an MDL transfer order; 2) remand is appropriate to allow Judge Mullen to rule on its Motion for Reconsideration of his earlier denial of its Motion to Dismiss because there has been an intervening change in

---

[1] MIWD filed its Response in Opposition to Plaintiff DeBlaker's brief on August 1, 2012; however, counsel for Plaintiff DeBlaker did not receive any notice of the filing through ECF/Pacer or any other means. Likewise, no other counsel for Homeowner Plaintiffs received notice of this filing.

controlling law or a clear error of law; and 3) even if this Court does not remand the entire case to Judge Mullen, it should refer the Motion for Reconsideration to him for a recommended ruling.

As to the first of these arguments, this Court clearly can recommend to the JPML that certain claims or actions be remanded to the transferor court. The question is whether it makes any sense to do so, and, considering the merits of MIWD's other two arguments, the answer is no. With respect to the second of its arguments, MIWD postulates that Judge Mullen's order dismissing all claims in *Ellis v. Louisiana-Pacific Corp.*, No. 3:11-CV-191, 2011 WL 5402878, at *1 (W.D.N.C. Nov. 8, 2011), constitutes new controlling law and evidences Judge Mullen's inclination to reverse himself in this case on the pending motion for reconsideration. *Ellis*, however, is based on entirely different legal principles than those at issue in the case before this Court. Moreover, *Ellis* is on appeal to the U.S. Court of Appeals for the Fourth Circuit, with the issues having been fully briefed and oral argument set for September 19, 2012.[2] While the Fourth Circuit's ultimate decision in *Ellis* may have an impact on this case, it would not be the impact MIWD suggests. Rather, if the plaintiffs prevail in *Ellis*, it would largely moot MIWD's economic loss doctrine argument in this case because Plaintiff DeBlaker could proceed under the North Carolina Unfair and Deceptive Trade Practices Act without regard to Judge Mullen's prior reasoning. Finally, as to MIWD's third argument, the Fourth Circuit's decision in *Ellis* may not come down until sometime next year and remand of any issues in *DeBlaker* at this time will serve no useful purpose. It is unlikely that Judge Mullen would fully reconsider his denial of MIWD's Motion to Dismiss until there is a final decision in *Ellis.* The remaining issues before Judge Mullen either have not been

---

[2] MIWD neglects to point out that this appeal is pending.

ruled upon and can be decided by this Court just as easily, or are so straightforward as to not require remand.

I.  **THIS COURT HAS AUTHORITY TO RECOMMEND THAT THE JPML REMAND ALL OR A PORTION OF THE CASE TO JUDGE MULLEN, BUT THERE IS NO REASON TO DO SO.**

While this Court has authority to recommend to the JPML that MIWD's Motion for Reconsideration be remanded, such a course would serve no useful purpose as there are no "compelling circumstances" supporting remand. *See* MIWD Response, p. 8.

While MIWD points out that this case had been ongoing for two years at the time of transfer, there is no "complex procedural history," nor was MIWD's Motion for Reconsideration "compelling enough to require submission of supplemental briefing." *Id.* Rather, the only significant rulings by the court over a two-year span were the March 24, 2011, Order denying MIWD's Motion to Dismiss and the February 17, 2012 *sua sponte* Order requiring briefing on the Statute of Repose under N.C. Gen. Stat. § 1-50(a)(5). There has been no discovery conducted in the case and no hearings before Judge Mullen.

As detailed below, the March 24, 2011, Order does not raise complex issues that can or should be resolved by Judge Mullen at this time. Importantly, because a ruling for the plaintiffs in the *Ellis* appeal would moot the economic loss rule issue in *DeBlaker*, there can be no final ruling on that issue until the *Ellis* appeal is decided. As for the February 17, 2012, Order, Judge Mullen's inquiry simply cannot be attributed to the "compelling" nature of MIWD's Motion for Reconsideration, since the statute of repose had not been raised by either party in their earlier briefing. Rather, the Order appears to

3

have been spurred by Plaintiffs' allegation in Paragraph 31 of the Second Amended Complaint that the statute of repose did not apply. *See* February 17, 2012 Order.

Under these circumstances, remand of any portion of the *DeBlaker* case will not result in a final determination of the case nor will it significantly narrow any discovery or pretrial issues in preparation for trial. Plaintiffs must still seek the same information from MIWD as to the design, marketing and sales of the subject windows from the same documents and witnesses as the other participants in this MDL. Likewise, because this Court has become so familiar with the issues of this case through *Johnson*[3] and the MDL proceedings, this Court is now in a better position to address all of the significantly overlapping matters raised in MIWD's various motions at one time.

## II. JUDGE MULLEN'S OPINION IN *ELLIS* DOES NOT IMPACT THE ISSUES IN THIS CASE; THE COURT OF APPEALS DECISION, HOWEVER, MAY HAVE A SIGNIFICANT IMPACT.

Contrary to MIWD's arguments, Judge Mullen's Order in *Ellis* has no impact on this matter. Judge Mullen's dismissal of the plaintiffs' claims in *Ellis* was based on the Plaintiff being a member of a warranty class in another lawsuit over the same product. *Hart v. Louisiana-Pacific Corporation*, No. 2:08-CV-00047-BO (E.D.N.C. filed Oct. 22, 2008). Plaintiff Ellis admittedly had a warranty claim as a class member in *Hart* and, accordingly, Judge Mullen ruled that the existence of this contract-based claim required dismissal of the tort and UDTPA claims under the economic loss doctrine. On the other hand, in the *DeBlaker* case before this Court, Judge Mullen denied MIWD's Motion to Dismiss precisely because the Plaintiff, as the third owner of his house, *had no claim under the specific terms of the warranty* that was limited to the first two homeowners. Because DeBlaker had no other remedy except tort and state UDTPA claims, Judge

---

[3] *Johnson, et. al. v. MI Windows and Doors, Inc.*, C.A.N. 2:11-cv-0167-DCN.

Mullen held that the economic loss rule did not apply to his case. Thus, Judge Mullen's ruling in *Ellis* has no bearing on whether DeBlaker, in the case before this Court, is barred by the economic loss rule from bringing a tort or UDTPA claim. Simply put, the unpublished trial court ruling in *Ellis* is not a controlling case that has any applicability to the case at bar.

The appeal of Judge Mullen's ruling in *Ellis*, on the other hand, may have a profound effect on this case. If the Fourth Circuit rules, as appellants have urged, that the economic loss doctrine does not apply to North Carolina homeowners making negligence or UDTPA claims, both the *Ellis* and *DeBlaker* must be allowed to proceed regardless of the existence of a warranty or of any right to make a claim under that warranty.

There is a strong likelihood that the plaintiffs/appellants in *Ellis* will prevail before the Fourth Circuit. As the plaintiffs/appellants argue, the purpose of the economic loss doctrine is to maintain the integrity of the bargaining process in a commercial setting, and to give deference to the parties' mutual assessment of risks and benefits:

> The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. Thus, the rule encourages contracting parties to allocate risks for economic loss themselves, because the promise has the best opportunity to bargain for coverage of that risk of faulty workmanship by the promisor.

*Lord v. Customized Consulting Specialty*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30 (2007), *disc. rev. denied*, 361 N.C.2d 694, 652 S.E.2d 647 (2007).

In *Lord* the North Carolina Court of Appeals soundly rejected the application of the economic loss rule in negligence cases involving residential construction. In upholding a verdict for the plaintiff homeowners against the manufacturer of roof trusses,

5

the Court of Appeals stated that, while "our Legislature has specifically acted to limit liability for purely economic loss in the case of products such as the recreational vehicle in *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 499 S.E.2d 772 ((1998). . . . [t]he Legislature has taken no such action in the construction of homes." *Id.* at 642, 643 S.E.2d at 32. Quoting extensively from *Oates v. JAG, Inc.,* 314 N.C. 276, 333 S.E.2d 222 (1985), to support North Carolina's recognition of a different standard applicable in the residential construction context, the *Lord* Court concluded:

> We hold that the 84 Lumber Defendants had a duty to use reasonable care *in performing its promise to provide reliable trusses to Customized Consulting for use in the construction of the Lords' residence*. Because there was no contract between the Lords and the 84 Lumber Defendants, we further find that the economic loss rule does not apply and therefore does not operate to bar the Lords' negligence claims.

*Id.* at 643, 643 S.E.2d at 33 (emphasis added).

With respect to the North Carolina UDTPA, the Supreme Court of North Carolina has never ruled on the applicability of the economic loss doctrine. However, in *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 617 S.E.2d 306, 318-19 (2005), Judge Hudson, in a dissenting opinion, criticized the lower court's application of the economic loss rule to the Plaintiff's UDTPA claim[4] as effectively eviscerating the will of the legislature in enacting the statute: "The legislature could hardly have intended that the [economic loss] rule would bar the very claims the UDAP statute created." 617 S.E.2d at 319 (Hudson, J., dissenting) (quoting National Consumer Law Center, *Unfair and Deceptive Trade Practices Manual*, S. 4.2.16.2 (6th Edition 2004)(quoting *Casa Clara*

---

[4] It should be noted that the majority opinion in *Coker* specifically declines to address the lower court's "implicit" application of the economic loss doctrine to a UDTPA claim, ruling instead on other grounds. 617 S.E.2d at 314. Accordingly, the majority did not necessarily disagree with Judge Hudson on his views of the economic loss rule.

6

*Condo. Ass'n v. Charlie Toppino & Sons, Inc.*, 620 So.2d 1244, 1246 (Fla. 1993)). Judge Hudson's reasoning is sound. First, he points out that the purpose of the economic loss rule is "to separate contract law, 'which is designed to enforce the expectancy interests of the parties, from tort law' which is designed to keep persons from 'causing physical harm' to others." *Id.* There is no logical reason, however, to apply the rule to a UDTPA claim:

> The rule has generally been used to bar only tort claims; most courts have held that the economic loss rule does not apply to UDAP [UDTPA] claims. UDAP claims are exempt from the economic loss rule because the rule is judicial, not legislative, and must give way to specific legislative policy pronouncement allowing damages for economic loss. In other words, by enacting a remedy for economic losses suffered by reason of an act deemed wrongful by statute, the legislature has effectively preempted the economic loss rule for those cases covered by the act. *Id.*

Judge Hudson is not alone in his view of North Carolina law. U.S. District Court Judge Laurie Smith Camp, applying North Carolina law, came to the same conclusion in *In re Saturn L-Series Timing Chain Products Liability Litigation*, 2008 WL 4866604, at *17 (D. Neb.) ("After a careful review of North Carolina law, this Court concludes that the application of North Carolina's economic loss doctrine to a NCUDTPA-based claim would be contrary to the statutory purpose of the NCUDTPA and the common law purpose behind the economic loss doctrine itself.").[5] In addition to drawing a bright line distinction between tort law and claims created by the legislature, Judge Camp noted:

> as the Supreme Court of North Carolina has observed, the obligations imposed by the DTPA 'create a cause of action broader than traditional common law actions.' *South Atlantic Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 537 (4th Cir. 2002)(quoting *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397, 402 (N.C. 1981)). The North Carolina Court of Appeals has distinguished NCUDTPA claims from common law claims, holding that "traditional defenses such as contributory negligence or good faith are not relevant to" NCUDTPA claims. *Concrete Serv. Corp. v.*

---

[5] Judge Camp certified this question of law to the North Carolina Supreme Court but did not receive a response by the time the decision was issued. 2008 WL 4866604, at *17, n. 10.

7

> *Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E.2d 755, 760 (N.C. Ct. App. 1986).

2008 WL 4866604, at *18; *see also Dealers Supply Co., Inc. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 591-92 (M.D.N.C. 2004)(the legislature created UDTPA to provide relief where common law remedies often proved ineffective).[6]

Thus, the plaintiffs/appellants in the *Ellis* appeal have a strong chance of prevailing and, should they do so, the central issue raise by MIWD in *DeBlaker* will become moot. Under these circumstances, there is no reason to remand the case to Judge Mullen as this Court will be in as equal a position as Judge Mullen in applying the law to the facts of this case. ndeed, it is far more likely that Judge Mullen has not ruled on MIWD's Motion for Reconsideration due to the pendency of the *Ellis* appeal rather than to the intervention of this MDL proceeding, as MIWD suggests.

### III.  REFFERAL OF MIWD'S MOTION FOR RECONSIDERATION TO JUDGE MULLEN WOULD SERVE NO USEFUL PURPOSE

Finally, MIWD suggests that this Court consider referring its Motion for Reconsideration to Judge Mullen for recommended rulings for potential adoption by the Court. This procedure would serve no useful purpose. As noted, there has been very little in the way of substantive rulings and no discovery in this case. Moreover, there are only

---

[6] Other courts outside of North Carolina have reached similar conclusions in declining to apply the economic loss rule to unfair and deceptive practices acts that are analogous to the UDTPA. *See*, *e.g.*, *Delagado v. J.W. Courtesy Pontiac GMC-Truck, Inc*., 693 So.2d 602 (Fla. App. 1997), cited with approval, *PNR, Inc. v. Beacon Property Mgt., Inc.*, 842 So.2d 773 (Fla. 2003)(economic loss rule not a defense to UDTP claim under Florida law); *PMF Air, Inc. v. Dr. Ing. hc. F. Porsche A.G.,* No. 8:08-CV-392-T-17MAP, 2011 WL 254724, at *9 (M.D.Fla. Jan. 26, 2011)(recognizing economic loss doctrine not a defense to UDTP claim under Florida law); *Howell Crude Oil Co. v. Donna Refinery Partners Ltd.*, 928 S.W.2d 100 (Tx. App. 1996)(that damages are economic not defense to Texas DTPA claim); *In Re Well NX Marketing and Sales Practice Litigation*, 67 F. Supp. 2d 43 (D. Mass. 2009)(denying motion to dismiss claims for economic loss under consumer protection statutes of New Jersey, Maryland, Massachusetts and Nevada); *Griffith v. Centex Real Estate Corp*., 93 Wash. App. 202, 969 P.2d 486 (1998)(claim for economic loss under Washington's consumer protection act held actionable thereby implying economic loss rule not applicable to statutory claim); *Carlile v. Harbour Homes Inc.*, 147 Wash. App. 193, 194 P.3d 280 (2008)(same).

four issues that were outstanding before Judge Mullen when the matter was transferred by the JPMDL:

> a) the applicability of the economic loss rule to DeBlaker's negligence and UDTPA claims;
>
> b) the potential applicability of the statute of repose under the North Carolina real property improvement statute, N.C. Gen. Stat. § 1-50(a)(5);
>
> c) MIWD's Motion insofar as it seeks to dismiss Thorne's warranty claim in the Second Amended Complaint; and
>
> d) MIWD's Motion insofar as it seeks reconsideration of Judge Mullen's ruling that DeBlaker had properly pled a claim under the North Carolina UDTPA.

For the reasons set forth below, none of these matters merits referral to Judge Mullen.

**a.     The Economic Loss Doctrine.**

As discussed in detail above, the economic loss doctrine is the central issue in the appeal of Judge Mullen's November 8, 2011, Order dismissing the plaintiffs' claims in *Ellis*. Notice of that appeal was filed on November 30, 2011, more than five months before the JPML transferred the *DeBlaker* case to this Court. Since oral argument on that appeal is not set until September 19, 2012, it is extremely unlikely that a decision will be handed down by the Court of Appeals any time soon. Since the outcome of the *Ellis* appeal may dictate the course of this case, it would serve no purpose to remand this issue to Judge Mullen.

Under these circumstances, Judge Mullen would most likely do nothing until the *Ellis* appeal is decided. At that point, however, this Court will be in an equal or better position to apply the law of *Ellis* to this case.

9

b.     **The Potential Applicability of the Statute of Repose Under the North Carolina Real Property Improvement Statute, N.C. Gen. Stat. § 1-50(a)(5).**

This issue was first raised by Judge Mullen *sua sponte* in an Order dated February 17, 2012, apparently because Plaintiffs alleged in Paragraph 31 of the Second Amended Complaint that the statute of repose did not apply.  The statute of repose is not addressed by MIWD's Motion for Reconsideration and was briefed separately from the briefing on that motion. Judge Mullen has not ruled on the matter; however, the resolution of this issue is fairly straightforward - the statute of repose applies or it doesn't, and this Court is in as good a position to make that ruling as Judge Mullen. Remand of this issue would serve no purpose.

c.     **MIWD's Motion Insofar As It Seeks to Dismiss the Thornes' Warranty Claim in the Second Amended Complaint.**

MIWD argues that remand of the Thornes' warranty claim would be justified "to allow Judge Mullen to decide whether the Thornes have adequately addressed the concerns that caused him to require the Thornes to replead." *See* MIWD Response, pp. 8-9.  As Judge Mullen recognized in his order, after MIWD provided the Thornes with the Warranty which was purported to be the applicable warranty which applied to the Thornes, Judge Muller permitted the Thornes to replead their breach of express warranty claim.  March 24, 2011, Order, at 4.  Judge Mullen did not express any specific concerns with the Thornes' warranty claim and simply allowed them to file the Second Amended Complaint attaching the applicable warranty. Accordingly, there are no substantive issues with respect to the Thornes upon which Judge Mullen has ruled and no reason to remand the Thornes' warranty claim for further proceedings.

**d.      MIWD's Motion Insofar as it Seeks Reconsideration of Judge Mullen's Ruling That DeBlaker Had Properly Pled a Claim Under the North Carolina UDTPA.**

In his March 24, 2011, Order, Judge Mullen addressed MIWD's argument that DeBlaker must show actual reliance on an affirmative representation in order to prevail under UDTPA. Judge Mullen listed the elements of a UDPTA unfair and deceptive practice which require that an injury "causes" the plaintiffs injury but does not include an element of reliance. He further noted that where an affirmative misrepresentation underpins the claim, reliance must be alleged "in order to establish that the misrepresentation proximately caused the injury." (citation omitted).  With respect to DeBlaker, Judge Mullen held:

> The Amended Complaint does not allege that the Defendant made a specific representation to the Plaintiff DeBlaker, thus triggering the requirement of actual reliance.  Rather, the basic allegations of the Amended Complaint are that the Defendant knew of the defective nature of the windows and yet continued to sell and distribute them to customers and retailers.  These allegations state a plausible claim for unfair and deceptive trade practices.

*DeBlaker v. MI Windows and Doors, Inc.*, Order of March 24, 2011, at 4.

Judge Mullen's analysis of this issue is unassailable.  While MIWD has sought reconsideration, there is no merit whatsoever to its position that this Court cannot easily address the matter without referral to Judge Mullen.

## CONCLUSION

Remand of this case to the transferor court would not expedite these proceedings nor accomplish anything other than to deprive the Plaintiffs of the opportunity to pursue complex common discovery with the plaintiffs in the other cases transferred by the JPMDL.  The inefficiency and extra cost to Plaintiffs DeBlaker and Thorne should be

11

clear. Nor is there any reason to piecemeal refer any individual issues to Judge Mullen. The economic loss issue is not ripe for decision until the *Ellis* appeal is final. All other issues have either not been ruled upon by Judge Mullen or have been decided appropriately such that remand to his court will serve no useful purpose. This Court is clearly in a position to resolve those matters without referral.

Respectfully submitted this 24th day of August, 2012.

By: /s/ Gary E. Mason
Gary Mason
Daniel K. Bryson
Scott C. Harris
Whitfield Bryson & Mason LLP
900 W. Morgan Street
Raleigh, NC 27603
Email: dan@wbmllp.com

Justin Lucey
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465-0806
(843) 849-8400 phone
(843) 849-8406 facsimile

Jordan L. Chaikin
Parker Waichman LLP
3301 Bonita Beach Road, Suite 101
Bonita Springs, FL 34134
T: (239)390-1000
F: (239) 390-0055
Email: jchaikin@yourlawyer.com

John A. Peca
Climaco, Wilcox, Peca, Tarantino &
Garofoli Co., LPA
55 Public, Suite 1950
Cleveland, OH 44113
Email: JAPECA@climacolaw.com

Natalie Finkelman
Shepherd Finkelman Miller & Shah, LLC
35 E. State Street
Media, PA 19063
Email:  nfinkelman@sfmslaw.com

Richard Arsenault
Neblett, Beard & Arsenault
2220 Bonaventure Court
Alexandria, LA 71301
(800) 256-1050
Email:  rarsenault@nbalawfirm.com

Alyson Oliver
Oliver Law Group PC
950 W. University Ste. 200
Rochester, MI 48307
(248) 327-6556
Email:  aoliver@oliverlg.com

Edward Eshoo, Jr.
Childress Duffy, Ltd.
500 North Dearborn St.
Chicago, Illinois 60654
(312) 494-0200
Email:  eeshoo@childresslawyers.com

Jonathan Shub
Seeger Weiss LLP
1515 Market St
Suite 1380
Philadelphia, PA 19102
Email:  jshub@seegerweiss.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 24, 2012, I electronically filed the foregoing with the Clerk of the United States District Court for the District of South Carolina by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record in the matter *In Re: MI Windows and Doors, Inc. Products Liability Litigation*, Civil Action No. 1:12-mn-00001-DCN.

Respectfully submitted,

WHITFIELD BRYSON & MASON LLP

By:   /s/ Gary E. Mason