**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: MI WINDOWS AND DOORS, INC.     ) | |
| PRODUCT LIABILITY LITIGATION                  )            **MDL Docket No. 2333** | |
|                                                                            )                    **ALL CASES** | |

**CASE MANAGEMENT ORDER NO. 3:
AGREED PROTOCOL RELATING TO THE PRODUCTION OF ALL DOCUMENTS,
RECORDS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE
THINGS**

This Order applies to those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to its Order of April 23, 2012, as well as all related actions originally filed in this Court or transferred or removed to this Court. This Order shall also govern the practice and procedure in any tag-along actions transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.1 of the Rules of Procedure of that Panel subsequent to the filing of the final transfer Order by the Clerk of this Court and any related actions subsequently filed in this Court or otherwise transferred or removed to this Court.

The Parties agree that, during the pendency of the above captioned litigation, they will comply with their duties to preserve all documents, electronically stored information ("ESI"), and tangible objects that may be relevant to the Litigation. Pursuant to Fed. R. Civ. P. 26(b)(1), the relevant information to be preserved need not be admissible at trial if the discovery of the documents, ESI, and other tangible items appear reasonably calculated to lead to the discovery of admissible evidence. This duty to preserve extends to all documents, records, ESI, and tangible objects in the possession, custody, and control of the Parties to the Litigation, and any employees, agents, or third-party representatives reasonably expected to possess materials anticipated to be the subject of discovery in the Litigation ("Custodian(s)"). The Parties agree

1

that nothing in this Stipulation is intended to diminish or to expand any obligations imposed by the Federal Rules of Civil Procedure.

**I.    SCOPE OF ORDER**

    A.    <u>General</u>.

This Order governs the preservation and production of documents and electronically stored information ("ESI") by all parties to these proceedings, whether they currently are involved or become so in the future. The Parties to this Order will take reasonable steps to comply with this Order, and the parties agree to meet and confer to discuss requested variances from and/or modifications to provisions of this Order. All disclosures and productions made pursuant to his Order are also subject to all other orders entered by this Court for this litigation:

    B.    <u>Limitations and No-Waiver</u>. The Parties and their attorneys do not intend by this Protocol to waive their rights to assert attorney-client privilege or work-product protection as to any documents, ESI, or tangible things addressed in this Protocol. All Parties preserve their attorney-client privilege and work-product protections and there is no intent by the Protocol, or the production of documents, ESI, or tangible things pursuant to the Protocol, to in any way waive or weaken these privileges or protections. Nothing in this Order shall address, limit, or determine the relevance, discoverability or admission into evidence of any Record (defined below), regardless of whether the Record is required to be preserved pursuant to the terms of this Order. The Parties do not waive any objection as to the production, discoverability, privilege, work-product, or confidentiality of documents, ESI and tangible things preserved under this Order.

C. <u>Costs</u>. This Order does not address the Parties' respective responsibilities for the costs of preserving, retrieving or producing documents, ESI or Tangible Things that may be subject to discovery. Each Party reserves the right to object to producing ESI because of undue cost or burden and to request the Court to perform a cost-shifting analysis to determine if the other Party should bear some or all of the costs. Any preservation obligations arising subsequent to this Order in any court or in any other jurisdiction will not abrogate or reduce any of the preservation obligations set forth in this Order.

## II.   DEFINITIONS

A.   "<u>Parties</u>" shall mean all named Plaintiffs in any consolidated actions and Defendant. "<u>Party</u>" shall mean any individually named Plaintiff or Defendant. To the extent that additional Parties are transferred, coordinated, or consolidated into this MDL proceeding, this Order shall govern the obligations of such additional Parties regarding preservation of documents, ESI, and Tangible Things, on a going-forward basis, beginning on the date that the Transfer Order listing the transferred case is filed in the Clerk's office of the United States District Court of South Carolina (Charleston Division).

B.   "<u>ESI</u>," for the purposes of this Agreement, shall be the same as the term "electronically stored information" in Fed. R. Civ. P. 34.

C.   "<u>Records</u>" or "<u>Retained Records</u>" shall include "documents", "electronically stored information" and "Tangible Things" as defined in Federal Rule of Civil Procedure 34(a) that fall within the scope of Federal Rule of Civil Procedure 26(b) and as set forth in this Order.

D.   "<u>Retained Records</u>" shall mean the Records required to be Preserved under the Order.

E.     "Backup Media" refers to computer systems used to store electronic information on magnetic tapes or other media to permit recovery of the information in the event of a disaster or equipment failure.

F.     "Preserve" or "Preservation" shall mean taking reasonable steps to prevent the partial or full destruction, purging, erasing, changing, modifying, alteration, testing, deletion, shredding, incineration, wiping, , theft or mutation of Records, as well as negligent or intentional handling, relocation, or migration that would make material incomplete or inaccessible after such handling, relocation, or migration  "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all Records reasonably anticipated to be subject to discovery under Federal Rules of Civil Procedure 26, 45 and 56(e) in this action.

G.     "Snapshot" shall mean a copy of electronic files, on any media or on Backup Media, as of a certain point in time, which Preserves the data associated with the files copied as it existed on the original media in its native format.

H.     "Network Accessible Storage Device" shall mean any hard drive or other data storage device, server or electronic repository accessible to multiple users remotely over a computer network.

I.     "Local Hard Drive" shall mean any hard drive or other device that stores data from a personal computer (whether a desktop or laptop) but that is not part of a network.

J.     "Discoverable" shall mean all Records discoverable under Federal Rule of Civil Procedure 26(b)(1), including all Records containing information that is relevant to the allegations and defenses in these actions or that may lead to the discovery of admissible evidence in these actions.

4

III.    **PRESERVATION MEASURES**

    A.    <u>Compliance with Federal Rules.</u>  Except as otherwise exempted from this Order, the Parties shall, in good faith, Preserve all potentially Discoverable Records under Federal Rule of Civil Procedure 26(b)(1), to the extent such steps have not already been taken, including, but not necessarily limited to, the following:  Notifying all persons under a Party's control who potentially possess Discoverable Records of the pendency of these actions and instructing such persons to Preserve potentially Discoverable Records.  Except as expressly exempted in this Order, nothing in this Order shall relieve or excuse the Parties from their Preservation obligations imposed by the Federal Rules of Civil Procedure.

    B.    <u>Custodians' ESI</u>.  For Custodians, the Parties shall take Snapshots to Preserve all potentially Discoverable Records in all email accounts and documents that Custodians have stored on centralized servers.

IV.    **RECORDS REQUIRED TO BE PRESERVED**

    A.    <u>Retained Records.</u>  The Parties shall Preserve any Retained Records in their possession, custody or control during the pendency of this action, including any appeals.

    B.    <u>Form of Retention</u>.  For Retained Records that in the ordinary course of business exist in paper form, the Parties shall retain the Records in either paper or image form, at the Preserving Party's choice.  For Retained Records that in the ordinary course of business exist in electronic form, the Parties shall Preserve the Records in the same electronic form in which they exist in the ordinary course of business.  This Order does not obligate Parties to segregate Retained Records from other Records where they may reside.  This Order does not obligate Parties to image Records otherwise stored in paper form, and it does not obligate Parties to retain

paper Records if they have been adequately imaged as they were kept in the ordinary course of business (maintaining the integrity and organization of the document).  No Party shall object or raise admissibility issues under the Federal Rules of Evidence based on such imaging of paper Records pursuant to this Paragraph, unless the image of a hard copy document is illegible or missing material information.  In addition, the Parties are required to act in good faith and may not transfer ESI to paper form or downgrade ESI for the primary purpose of increasing the burden of discovery for other Parties.

    1.  <u>Paper Records</u>

For draft or original Retained Records maintained in paper form, the Parties shall retain at least one copy of all unique Retained Records in paper form or in electronic form as permitted by IV(B) above.  A full and complete copy of each unique Retained Record that differs from the original Retained Record because of highlights, underlining, marginalia, total pages, attachments, notes, markings or other alterations must be preserved.  For example where there are two documents with identical content but one has highlighting and the other does not, in such situation, each of the two documents must be preserved.

    2.  <u>Electronic Mail</u>

For electronic mail ("e-mail") of Custodians, the Parties shall Preserve at least one Snapshot of all e-mails identified as Retained Records, including the text of the message, any attachments, and shall include information regarding the current folder structure.  The Parties are not required to retain identical multiple instances of an electronic message sent to multiple recipients (e.g., an email that cc'ed five recipients need only be produced once), provided that all of the recipients can be identified from Retained Records.

      3.      <u>Other Electronic Records on Computer Systems Saved on Network Accessible Storage Devices</u>

For Retained Records of Custodians maintained in electronic form on Network Accessible Storage Devices, and not covered by Paragraph V(B)(2) above, the Parties shall Preserve a Snapshot of such Records.

      4.      <u>Other Electronic Records Saved on Local Hard Drives</u>

For electronic Retained Records saved to a Local Hard Drive the Parties may fulfill their Preservation obligations by Preserving a Snapshot of all such Records including all information pertinent to this litigation contained on personal and laptop computers or by taking reasonable and good faith steps to: (i) notify Custodians who possess or control electronic Retained Records saved on Local Hard Drives of their duties and obligations with respect to Preserved Retained Records under the terms of this Order and (ii) monitor compliance with the Preservation requirements of this Order by re-notifying Custodians of their duties and obligations every three (3) months or at some other reasonable interval as may be expressly agreed upon by the parties.

      5.      <u>Tangible Things</u>

For tangible things identified as Retained Records, the Parties shall, to the extent that those items are in their possession or under their custody or control, take reasonable steps to ensure that the tangible things remain in their possession, custody or control, with the exception that Parties may conduct testing on physical samples, including testing that may destroy part or all of a given sample. To the extent that portions of samples remain after testing, the Parties shall take reasonable steps to Preserve such samples for a reasonable period of time. If Preservation of samples becomes unduly burdensome, the Parties may destroy such samples after

providing reasonable notice to permit the other Parties to object or to inspect the tangible things prior to any destruction.

   C. <u>Reasonable Steps.</u>  For all Retained Records, the Parties' Preservation obligation is limited to those steps reasonably necessary to secure evidence for the fair and just resolution of the matter in dispute.  The Parties must exercise their own judgment, made upon reasonable inquiry and in good faith, about the data locations that should be subject to Preservation efforts. Except as otherwise expressly provided in this Order, the Parties shall take all necessary steps to Preserve specific Records that the Party knows, or reasonably should know, are relevant to these actions.

## V. FORMAT OF PRODUCTION FOR DOCUMENTS PRODUCED

   A. Native File/TIFF Format Production. All non-redacted ESI documents shall be produced as native files with load files as the default production format, for the file types listed in this Order, or as single-page TIFF's or other production format as specifically outlined herein. Redacted ESI documents and emails with attachments will be produced as single-page TIFF's, as provided in section V.B below, with extracted text (not including text corresponding to redacted portions) and load files, to the extent available, and to the extent that they can be extracted using an automated process.  Manual population of metadata fields by a producing Party shall not be required.  The parties reserve the right to seek native format of emails and attachments after review.  Imaged paper documents will be provided as Bates numbered images, with image load files. TIFF images will be of 300 dpi quality or better. The image load files should indicate page breaks, to the extent possible. During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed, and/or modified to TIFF format, the text of the files should be extracted and produced in a separate folder.  The extracted text

files shall be named to match the first Bates number of the TIFFed document to which they correspond (the "metadata load file").  The metadata load file shall contain a link to the produced documents via data values called "Native Link."  The Native Link values should contain the full directory path and file name of the document as contained in the produced media.  The load files will include an image load file as well as a metadata (.DAT) file with the metadata fields identified in Exhibit A to this Agreement, subject to the qualifying language recited at the top of Exhibit A.

    1.  Native files will be produced in their original condition, and the substantive content of the files may not be altered in any way for litigation purposes.  MD5 hash values shall be supplied as a fielded value in the accompanying load file.

    2.  TIFF's of all redacted Word Processing Documents must meet/include the following criteria: Tracked changes and revisions in word processing documents should be  included in the TIFF image, if available and able to be provided .

    3.  Word processing documents should be processed to include headers and footers.

    4.  All date, time, and filename macros will be displayed as the macro field code.

B.    Production of TIFF's for Native Format Documents that are Impractical to Convert to TIFF: The following ESI types do not lend themselves well to the TIFF format: spreadsheets (including but not limited .xls or .xlsx files); presentations (including but not limited to .ppt and .pptx files and audio and video formats including but not limited to mp3, wav, mpeg files.  For unredacted documents of these types, a placeholder TIFF, bearing the legend "This document has been produced exclusively in native format" shall be produced for such documents; these placeholders will be Bates Numbered in the same way as any other TIFF and the Bates Number of that single page shall be used as the BegBates and EndBates of the

associated document. Redacted spreadsheets and PowerPoint documents will be produced as single-page TIFF's, Audio and video files shall be edited if redactions are required, subject to appropriate identification of any such audio or video files having been edited.

TIFF's of redacted Spreadsheets must include/meet the following criteria:

1. Hidden columns, rows, and worksheets should be unhidden prior to processing.
2. Comments should be processed and produced at end of the excel sheet.
3. Spreadsheets should be processed and produced with row and column headings.
4. Spreadsheets should be processed to show headers and footers.
5. Spreadsheets should be produced across then down.
6. Spreadsheets should be produced as color images.

In addition, TIFF's of redacted Presentation documents should meet the following criteria:

1. Presentations should be processed to show hidden slides and speaker's notes.
2. Presentations should be produced as color images when necessary for comprehension.

C. The Parties agree to meet and confer regarding the format of production for structured databases.

D. <u>Appearance</u>. Subject to appropriate redaction, each document's electronic image will convey the same information and image as the original document, including formatting, such as bolding, highlighting, font size, italics. Documents will be produced in black and white, with the exception of photographs which will be produced in color Documents that present imaging or formatting problems will be identified and the Parties will meet and confer in an attempt to resolve the problems. After production, a Party may request that a document be

produced in color at which time the Parties may meet and confer about such production. Defendant shall honor reasonable and specific requests for the production of color image(s) of such documents.

    E.    <u>TIFF Numbering</u>. Each page of a produced <u>TIFF</u> will have a legible, unique page identifier "Bates Number" electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. The Bates Number for each page of each document will be created so as to identify the producing Party and the document number. In the case of materials redacted in accordance with applicable law or confidential materials contemplated in any Protective Order or Confidentiality Stipulation entered into by the Parties, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. Bates numbers and any confidentiality designations should be electronically branded on each produced TIFF image. Additionally, all Bates numbers should:

    1.    be unique across the entire production;

    2.    maintain a constant length (0-padded) across the entire production;

    3.    contain no special characters or embedded spaces; and

    4.    be sequential within a given document.

F.    <u>De-NISTing and De-duplication</u>. Electronic file collections may be De-NISTed, suppressing from searching and review commercially available operating system and application file contained on the NIST file list, version 2.20 or later. The Parties may de-duplicate identical ESI by custodian; de-duplication across custodians is not permitted.  Defendant may de-duplicate identical ESI within a custodian as follows:

MD5 hash value / exact document deduplication: SmartLoad creates an MD5 hash value for every document in the database. It also classifies documents in their full, family relationships. i.e., an email with two attachments is one document family. SmartLoad then compares all MD5 hash values for all complete family documents and suppresses any document as an exact duplicate which shares the same MD5 hash value with at least one other document, leaving only one version of the exact duplicate document as unsuppressed.

Lesser-Included email thread suppression: In addition to creating an MD5 hash value for each document, SmartLoad does a bit-by-bit comparison of email threads. Each character in an email represents a series of bits. SmartLoad compares the series of bits in one email against the series of bits associated with every other email in the database. When it finds that the series of bits from an email is wholly contained in the series of bits of another email, it classifies the wholly-contained thread as a lesser-included thread. Therefore, for an email to be considered a lesser included thread it would not contain characters unique characters. Lesser-included threads are then suppressed (1) as long as the shorter thread does not contain an attachment which the longer thread does not contain and (2) as long as the shorter thread does not contain recipients that the longer thread does not contain. If the shorter thread contains attachments or recipients not contained by the longer thread, then the shorter thread is not suppressed. The attachment determination is done with MD5 hash code and the recipient determination is done by comparing database fields. Suppressed documents are not deleted and are preserved for querying, review, production, etc., to the extent those tasks need to happen against duplicates. These documents are simply suppressed for the purposes of review and/or production workflow, depending on the

needs of the case.  Metadata within suppressed email shall be preserved.  Any documents that are suppressed will be identified with custodian information.

Treatment of BCC Email.   The sender & non-BCC received versions of BCC'd email will not dedupe against each other because MD5 Hash marks are different.

Hash Values Generated for Families.  Email files are de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. The following fields are used to create the unique value for each message: To; From; CC; BCC; Date Sent; Subject; Body; and, MD5 Hash values for all attachments, in attachment order. Messaging materials will be deduplicated at a family level, including message and attachment(s).  Because exact deduping of compound files is done based on the hash value of the compound family loose documents will not dedupe against email attachments even if they share the same individual hash values.

G.   Production Media. The producing Party shall produce documents via on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, external hard drive (with standard PC compatible interface), (the "Production Media"). Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media (e.g., "Defendant MI Windows & Doors Production April 1, 2012") as well as the sequence of the material in that production (e.g. "-001", "-002"). For example, if the production comprises document images on three DVDs, the producing Party may label each DVD in the following manner: Defendant MI Windows & Doors Production April 1, 2012", Defendant MI Windows & Doors Production April 1, 2012-002", Defendant MI Windows & Doors Production April 1, 2012-003." Additional information that will be identified on the physical Production Media includes: (1) text referencing that it was produced in *In re: Windows and Doors, Inc.*

*Product Liability Litigation*; and (2) the Bates Number range of the materials contained on the Production Media, and (3) the producing Party's name. Further, any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

      H.    <u>Write Protection and Preservation</u>. All computer media that is capable of write protection should be write-protected before production.

      I.    <u>Explanation of Inability to Produce Metadata</u>.  If the producing Party is unable to produce metadata for a particular field or production type specified by this Order, it will provide an explanation of that inability with its document production.

      J.    <u>Costs</u>.  The Parties agree that each Party will bear its own costs related to the production of ESI, with each Party reserving the right to object to producing ESI because of undue cost or burden and to request the Court to perform a cost-shifting analysis to determine if the other Party should bear some or all of the costs.

## VI.   GENERAL PROVISIONS

      A.    Any practice or procedure set forth herein may be varied by prior written agreement of the Parties.

      B.    Regardless of the foregoing, the Parties are under a continuing obligation to produce identified responsive, non-privileged documents and to identify sources of potentially discoverable materials consistent with their obligations under Federal Rules of Procedure.

## VII.   IMPLEMENTATION AND MODIFICATION OF ORDER

      A.    <u>Preservation Notices.</u>  Each Party shall communicate the existence and substance of the obligation to preserve documents to those employees or others responsible for carrying out

the Party's obligations hereunder, and shall maintain a record of to whom the existence and substance of this information has been communicated.

  B. <u>Data Transitions</u>.  The Parties shall take appropriate steps to ensure that Retained Records continue to be Preserved as outlined herein when (i) a record custodian of one or more of the Retained Records is no longer employed by that Party, (ii) responsibility for one or more of the Retained Records is transitioned between the Party's record custodians, (iii) the computer, system, or medium upon which one or more of the Retained Records are stored is retired or replaced, (iv) one or more of the Retained Records are moved from one department, functional area, and/or location to another or (v) or any similar situation which may result in a Custodian's loss of control of the Retained Records.

  C. <u>Meet and Confer</u>.  The Parties are directed to meet and confer to resolve questions as to what Records are required to be Preserved under this Order and to resolve any concerns arising from the duties outlined in this Order.  Counsel for the Parties may stipulate and agree in writing that specific Records need or need not be Preserved, and any such agreement shall be tendered to the Court thereafter.  Any dispute pursuant to this Paragraph shall be resolved by the Court or any appointed Special Master.

  D. <u>Access to Court.</u>  If the meet-and-confer Paragraph VII.C does not lead to an agreed upon modification, the Party may apply to this Court for an exception to or modification of this Order.

**AND IT IS SO ORDERED.**

_____
The Honorable David C. Norton

October 9, 2012
Charleston, South Carolina

**Exhibit A**

**The Parties shall include in any production of ESI each of the following metadata fields, to the extent available, and to the extent that they can be extracted using an automated process. Manual population of metadata fields by a producing Party shall not be required.**

| **Coding Field** | **Description** |
|---|---|
| BegBates; EndBates | The beginning and ending Bates numbers for the document at issue. |
| BegAttach; EndAttach | The beginning and ending Bates numbers of the collection to which the parent document and any attachments thereto are associated (i.e., for an email that is bates stamped TPCL0001 - TPCL0002, with two attachments bates stamped TPCL0003 - TPCL0004 and TPCL0005 - TPCL0008, the BegAttach and EndAttach for all three documents would be TPCL0001 - TPCL0008). |
| BegFamily; EndFamily (or whatever similar metadata is created) | Beginning and ending Bates # of a "family" or related documents |
| File name | Original file name of the item of data |
| Link to Native | File path linking to the native item referenced. |
| DocCreate | The internal metadata, if any, reflecting the date the document was created. |
| DocDate | The last modified date of the document, formatted as follows: MM/DD/YYYY, with leading zeros as appropriate (e.g., 03/01/2006). For emails, the field will reflect the date the email was sent; for other documents, the field will reflect the last date on which the document was last modified. |
| File System Create Date | File created date as maintained by the file system from which the document was collected. |
| File System Modified Date | File modified date as maintained by the file system from which the document was collected |

| **Coding Field** | **Description** |
|---|---|
| DocType | The type of document (e.g., email, Microsoft Word 2000, Microsoft Excel, etc.). |
| Document Title | The title of the document, if any. |
| AuthorName | The author(s) of a document. |
| LastAuthorName | The last author(s) of a document. |
| From | The sender of a document. |
| To | The recipient(s) of a document. |
| CC | The person(s) who received copies of a document. |
| BCC | The person(s) who received blind copies of a document. |
| Subject | Subject line of email message or the re line of a document |
| Custodian/Source | The name of the individual whose electronic or hard-copy custodial file contained the document at issue or the corporate file store from which the file was collected. |
| Importance | For Outlook emails, "High," "Low," or "Normal." |
| Sensitivity | For Outlook emails, "Normal," "Private," "Personal," or "Confidential." |
| Pages | The number of pages in a document. |
| MD5 Hash | Hash value used de-duplication purposes. |
| Removed From | Concatenated field: for standalone ESI documents list all original file names, file paths and file system created date and modified date of items removed for de-duplication purposes; for messaging files list the source container file name and the full folder location of each duplicate within its source container. |

| **Coding Field** | **Description** |
|---|---|
| File Extension | The digit extension of the ESI - .msg, .doc, .xlsx .pptx, etc. |
| Attachment Count | Number of attachments |
| Sent Date | System data |
| Sent Time | System data |
| Delivered/Received | System data |
| Date Delivered/Received Time | System data |
| GUID /Message ID | Unique ID created by email system for this message |
| ID of original message REPLIED to or FORWARDED | Included in the metadata of REPLY or FORWARD items |
| Agent ID | If the item was created by someone on behalf of the email box owner, ID of the agent who created/sent the item |
| Importance Ranking | System data |
| Follow up flags | System data |
| Status as READ or UNREAD | System data |
| Original File/Path | File/Path of original location of item prior to litigation hold or other litigation treatment (the original location of the item in the ordinary course of business). This should include structure inside of an email box or structure inside of any PST container from which the email was taken. |