**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: MI WINDOWS AND DOORS, INC. | ) | **MDL NO: 2333** |
| PRODUCTS LIABILITY LITIGATION | ) | **C.A. No. 2:12-mn-00001-DCN** |
| | ) | **(ALL CASES)** |

**HOMEOWNER PLAINTIFFS' MOTION TO COMPEL
DEFENDANT'S PRODUCTION OF DOCUMENTS**

COMES NOW, Homeowner Plaintiffs, and move this Court pursuant to Rules 37, Federal Rules of Civil Procedure for an order compelling the production of documents. Specifically, Homeowner Plaintiffs request an order compelling: 1) the full production of all documents redacted in Defendant's First Rolling Production on the grounds that the document is "non-responsive;" 2) the full production of all documents improperly redacted for personal material; 3) the withdrawal of all improper "confidential" designations and reproduction of those documents; 4) the reproduction of all documents that were not produced with 300DPI Group IV quality or better; 5) the production of color photographs; and 6) the production of all processed documents in Defendant's possession that were not produced on November 5, 2012.

Homeowner Plaintiffs further request an order preventing Defendant from repeating these discovery practices for the duration of the case.

This Motion is based upon the following, as well as supplemental material that may be submitted to the Court prior to the hearing on this matter on November 29, 2012.

BACKGROUND AND RELEVANT FACTS

The Court is familiar with the lengthy history of Homeowner Plaintiffs' discovery difficulties with Defendant MI Windows and Doors, Inc. ("MIWD"). Specifically, Homeowner Plaintiffs have been waiting two (2) years since the filing of the first two (2) Complaints in North

1

Carolina and South Carolina, nearly a year since the Johnson First Set of Discovery Requests were served on MIWD, and six (6) months since the Order compelling 3500 Series documents to receive any documents and begin discovery. Since May of this year, MIWD has made numerous representations that they have been reviewing documents prior to the JPML's transfer order, dated April 23, 2012. MIWD's comments about the burdensome nature of this extensive review and references to a future request for cost sharing were sprinkled throughout these discussions. A brief chronological history of the parties' discovery dispute and MIWD's representations is detailed in Exhibit A, attached hereto. Homeowner Plaintiffs' Master Set of Discovery to MIWD is attached hereto as Exhibit B.

Pursuant to Case Management Order No. 2, Section E, MIWD was to "produce all documents ready to be produced on or before November 1, 2012." MIWD accomplished a short extension based upon Hurricane Sandy. On November 5, 2012, MIWD delivered its First Rolling Production to Plaintiffs, containing 2531 documents comprised of 8023 pages. A preliminary review of these documents generally revealed: improper and sloppy redactions; improper designation of documents as confidential; and poor quality of document images.

On November 12, 2012, Homeowner Plaintiffs consulted with MIWD about these production problems, identified bate labels as examples of the various problems, and attempted to schedule a follow-up phone conference to resolve the issues. MIWD cancelled the tentatively scheduled follow-up and instead wrote the Court about its perceived "break down" in discovery negotiations. The Court granted Homeowner Plaintiffs leave to file this Motion.

<u>LAW AND ANALYSIS</u>

As indicated above, a cursory review of the documents exposed several production problems including improper redactions, and the improper designation of every page of the

production as "confidential" (including material disseminated to the public). Once uploaded into Homeowner Plaintiffs' document depository, it was further revealed that many of the images were of poor quality, and it was confirmed that the sloppy redactions made many of the responsive text unreadable because the effected extracted text was obstructed.

Accordingly, MIWD's production is inadequate and should be reproduced without improper redactions, without improper designations of confidentiality, and in an appropriate quality. Such requirements should be applied to future production to avoid unnecessary motions to compel and a waste of the Court's time.

**I.     MIWD'S REDACTION OF RELEVANT DOCUMENTS, PARTIAL REDACTION OF OTHERWISE RESPONSIVE DOCUMENTS, HAPHAZARD APPLICATION OF REDACTIONS, AND REDACTIONS FOR "PERSONAL MATERIAL" IS IMPROPER.**

The improper redactions made to MI's First Rolling Production on November 5, 2012, are as follows: 1) redactions of documents known to be relevant; 2) improper partial redactions in otherwise responsive documents; 3) sloppy redactions making responsive material illegible and the extracted text unreadable; and 4) improper redaction of text on the grounds it is "personal material."

Rule 26(b) of the Federal Rules of Civil Procedure provides the scope of information and documents to which parties are entitled, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

The federal discovery rules are liberally construed in favor of a party seeking discovery of information and documents. F.R.C.P., Rule 26; *Oppenheiner Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *National Union Fire Ins. Co. of Pittsburge v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992)(quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) for the proposition that "the discovery rules are given a 'broad and liberal treatment'"). Consequently, the burden is on the party opposing discovery to "clarify and explain precisely why its objections are proper given the liberal construction of the federal discovery rules." *United Oil Co. v. Parts Associates, Inc.* 227 F.R.D. 404, 411 (D.Md. 2005).

A.      Redactions of Material Known to be Relevant.

Included in MIWD's First Rolling Production were various documents produced by MIWD during the Tennyson Row litigation. These documents were identifiable by the Tennyson Row bate label ("TR/MIWD"). Several of these documents were redacted in whole or in part as "non-responsive." Upon comparison between the redacted documents produced in this MDL and the unredacted documents produced in Tennyson Row, it is obvious that many relevant documents were improperly redacted in the MDL production (*see e.g.*, Exhibit C, to be submitted separately for *in camera* review). Accordingly, as these documents are *known* to be relevant, Homeowner Plaintiffs' request reproduction of these documents in unredacted form.[1]

B.      Partial Redactions of Responsive Material.

A substantial portion of the first production of documents was partially redacted based upon the grounds that limited text is "non-responsive." No redaction or relevance log was provided, leaving reviewing parties unable to determine the nature of most of the discovered redactions. In this case, partial redactions should be rejected because 1) the federal discovery

---

[1] To the extent MIWD will argue that reproduction is unnecessary because the unredacted documents are in Homeowner Plaintiffs' possession, the Homeowner Plaintiffs are prepared to submit examples of Tennyson Row documents that have been altered in the MDL production by handwritten markings not previously produced.

4

rules and applicable law generally disfavor such production, absent extraordinary circumstances that do not exist here; and 2) there is a Confidentiality Order in place to protect this material and MIWD's interests.

Based upon such liberal interpretations of the discovery rules, cited to above, district courts have routinely rejected partial redacting of material in an otherwise responsive document based upon an objection or claim that the redacted portions are irrelevant or "non-responsive." *David v. Alphin*, *et al.*, No. 3:07-cv-11, 2010 WL 1404722 at *7-8, (W.D.N.C. March 30, 2010)(compelling full reproduction of unredacted versions of all documents previously produced); *Orion Power Midwest v. Am. Coal Sales Co.*, No. 2:05-555, 2008 WL 4662301 at *1-2 (W.D.Pa. Sept. 30, 2008) (ordering the producing party to cease its "redaction campaign" where the Special Master had concluded that there were no special circumstances or legitimate grounds to justify producing documents which were partially redacted); *In re State Street Bank and Trust Co. Fixed Income Funds inv. Litig.*, No. 08-1945, 2009 WL 1026013 at *1 (S.D.N.Y. April 8, 2009)(explaining partial redaction of otherwise responsive documents should not be favored because such practice breeds "suspicions, and they may deprive the reader of context").

As the above cited Pennsylvania district court analyzed, the language of F.R.C.P., Rule 34, providing that documents are to be produced as they are kept in the usual course of business implicitly "includes the substantive contents of those documents." *Orion Power Midwest*, 2008 WL 4662301 at *1. Furthermore, the court reasoned that there could be "no express or implied support for the insertion of another step in the process (*with its attendant expense and delay*) in which a party would scrub responsive documents of non-responsive information." (Emphasis added). *Id.*

Similarly, one North Carolina district court evaluated a nearly identical "wholesale unilateral" redaction of documents by a Defendant (Bank of America) and compelled the reproduction of "versions of all documents already produced in response to any request in unredacted form where such redactions were based on grounds that the material is non-responsive or irrelevant." *David v. Alphin, et al.*, No. 3:07-cv-00011 (RJC-DLH), 2010 WL 1404722 at *7-8 (W.D.N.C., Charlotte Division). In reaching its conclusion, the court cited the following from another district court facing the same discovery dispute:

> *[r]edaction is, after all, an alteration of potential evidence.* The Federal Rules sanction only very limited unilateral redaction, *see* Fed.R.Civ.P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. It should not come as a shock to those involved in litigation, that parties may see the outcome differently… On the other hand, where a specific document is very large, and separated by clearly marked designations, or separate volumes, each section/volume becomes, more or less, a document in itself. However, generally worded sections of the large document may apply to specific sections whose potential relevance is unquestioned. *Thus, unless a particular section unmistakably has no relevance whatsoever to the allegations in a complaint or denials/defenses in an answer, it should be produced along with the other relevant sections. And a word of warning to those who redact even under this standard-if you make unwarranted redactions, a court may well award sanctions for non-disclosure of requested evidence up to and including default/dismissal based on a seeming bad faith hiding of information. (*Emphasis added). *Id.* (quoting *Evon v. Law Offices of Sidney Mickell,* 2010 WL 455476, f.n.1 (E.D.Cal. Feb. 3, 2010).

Although some courts have allowed large scale redactions and challenges through *in camera* inspections, such a practice should be generally disfavored because it would only encourage and lead to numerous, on-going motions to compel and a waste of judicial resources. *See*, *David*, 2010 WL 1404722 at *8.

Here, MIWD's partial redactions of otherwise responsive material has led to and, if permitted, will continue to lead to: 1) production of unintelligible material; 2) stripping of

6

context for reader; 3) documents not produced as they are kept in the ordinary course of business, pursuant to Rule 34; 4) alteration of potential evidence; and 5) unnecessary delay and expense.

Further, as explained above, Homeowner Plaintiffs do not just suspect relevant material was redacted but have confirmed it through a comparison of Tennyson Row documents. Thus, there is verification and not just a mere suspicion that at least some relevant material was redacted, and almost no doubt that other unidentified, relevant material was redacted. Rather than subject the Court to a mass *in camera* review of each redacted document (now and with future productions), or force Plaintiffs to sort through an extensive redaction log which will be challenged and lead to motions to compel, the most efficient and logical remedy is a reproduction of unredacted documents in the possession of MIWD.

Samples of some identified partially redacted documents will be submitted for *in camera* review as Exhibit D.

Moreover, Courts have particularly rejected partially redacted documents when confidentiality or protective orders are already in place and afford the parties adequate protection of sensitive information. *Id.*; *Evon*, 2010 WL 455476 (stating "protective orders are available to shield irrelevant, but important-to-keep-confidential information, and unless the protective order permits partial production, a document should be produced in its entirety"); *In re State Street Bank and Trust Co. Fixed Income Funds inv. Litig.*, 2009 WL 1026013 at *1 (S.D.N.Y. April 8, 2009)(holding "the stipulated protective order makes it unnecessary to redact any portion of the document on the ground that the portion is non-responsive and irrelevant); *Orion Power Midwest*, 2008 WL 4662301 at *1 (stating "the strict confidentiality order which is in effect

7

would protect sensitive or proprietary information from unwarranted disclosure"). As the North Carolina district court aptly explained:

> The court believes, however, the better view is that where a Protective Order is in place, that '*generally the Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored. See* Fed.R.Civ.P. 26(c) "(the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (emphasis added)). Further, this litigation has a protective order in place that prevents non-litigants from viewing sensitive information.'
> *David*, 2010 WL 1404722 at *7-8 (*quoting In re FedEx Ground Package System, Inc.,* 2007 WL 79312, *5 (N.D.Ind. Jan. 5, 2007).

The Confidentiality Order entered in this litigation on July 23, 2012 more than adequately protects the sensitivity of any information produced unredacted. Thus, this secondary layer of protection further elucidates that redaction of documents in whole or in part based upon relevance or non-responsiveness is an unnecessary, wasted effort and use of resources.

  C. <u>Sloppy Redaction.</u>

In addition to over redaction of material, many of the redactions are so sloppy that the redaction boxes obstructed text that was clearly not intended to be redacted. As these documents have now been uploaded into Homeowner Plaintiffs' document depository, Homeowner Plaintiffs have confirmed that the sloppy redactions obstructing the responsive material have caused the extracted text from such material to be missing or otherwise unusable. In other words, the consequence of haphazardly obstructing responsive material is that such responsive material has been rendered unreadable and unsearchable; therefore, such sloppiness would create both an exorbitant cost for the document host to manually repair the text, and further delay in review of production which has long been awaited. Obviously the foregoing problems cannot be cured by

a post-production redaction log.[2] Samples of such haphazard redactions are being submitted separately for *in camera* review, as Exhibit E.

        D.      <u>Personal Material.</u>

Homeowner Plaintiffs have identified numerous documents, including those related to warranty or field service work, which are redacted for "personal material." While Homeowner Plaintiffs do not contest redaction of social security numbers, redactions witness names and of neighborhood names, cities, states, or zip codes from addresses where warranty or field service work occurred are improper given that such information is certainly relevant or reasonably calculated to lead to the discovery of admissible evidence. Further, such information is generally being protected by the Confidentiality Order in place.

**II. MIWD'S CONFIDENTIAL DESIGNATION OF EVERY PAGE OF ITS PRODUCTION WAS IMPROPER AND IN VIOLATION OF THE JULY 23, 2012 CONFIDENTIALITY ORDER.**

As indicated in Homeowner Plaintiffs' November 14, 2012 letter to the Court, MIWD improperly designated every single page of its production "Confidential," failed to submit a certification that the designations were made in good faith, and clearly designated information "confidential" that is disseminated to the public. All of the foregoing is in violation of the July 23, 2012 Confidentiality Order. In accordance with said Order, Homeowner Plaintiffs' notified MIWD in writing of their challenge to the widespread confidential designation of its production and further pointed out that "[T]he burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality." See Exhibit F.

---

[2] Reference to a redaction log is made in response to MIWD's representation to Homeowner Plaintiffs that one was being compiled to address redactions made in the First Rolling Production.

Accordingly, Homeowner Plaintiffs request that the Court order MIWD to withdraw all improper designations of confidentiality, submit the good faith certification therewith, and reproduce all non-confidential documents without a confidential identification.

## III. MIWD'S PRODUCTION CONTAINS POOR QUALITY IMAGES AND ABSENCE OF META DATA/LOAD FILE MATERIAL.

Homeowner Plaintiffs have been notified by their third-party document host vendor that many of the documents produced are of such poor quality that the images and extracted text are unreadable or unsearchable. Homeowner Plaintiffs vendor has further indicated that scans in 300DPI Group IV quality would remedy the problem.

MIWD submits that these documents *might be* documents scanned from hardcopies rather than ESI, explaining the subpar quality of imagery. MIWD has refused to identify the documents that were scanned from hardcopies. Accordingly, Homeowner Plaintiffs request that the Court order MIWD to identify, by bate label, documents scanned and produced from hardcopy so that Homeowner Plaintiffs may adequately evaluate the source of the document in the context of the quality. Homeowner Plaintiffs request an opportunity to evaluate this list with its vendor to determine if the documents with poor quality images are a result of the source or negligent production, and address this issue with the Court, if necessary.

Furthermore, Homeowner Plaintiffs' request that all documents produced in the future be of 300 DPI Group IV quality or better, and that all documents not meeting this quality in the First Rolling Production be reproduced.

Additionally, there appears to be an overwhelming absence of meta data/load file material from the First Rolling Production. As Homeowner Plaintiffs' understand this production to have primarily been ESI, it is likely that the meta data and load file content required by Case Management Order No. 3 is missing due to MIWD's chosen methodology for

the processing of these documents for production. Accordingly, Homeowner Plaintiffs request that MIWD report to Homeowner Plaintiffs and the Court as to the nature and processing method of this production and be compelled to produce missing meta data and load file content.

### IV. PRODUCTION OF BLACK AND WHITE PHOTOGRAPHS ARE IN VIOLATION OF CMO NO. 3 AND SHOULD BE REPRODUCED.

Case Management Order No. 3, Section V(D) provides that "[D]ocuments will be produced in black and white, *with the exception of photographs which will be produced in color.*" (Emphasis added). Some photographs have been identified as produced in black and white, in violation of CMO No. 3. Accordingly, Homeowner Plaintiffs request that the Court order all photographs produced in black and white be reproduced in color.

### V. MIWD SHOULD BE REQUIRED TO IMMEDIATELY PRODUCE ALL OTHER PROCESSED DOCUMENTS IN ITS POSSESSION.

As detailed above, Case Management Order No. 2 required Defendant to produce all processed documents as of November 5, 2012. MIWD has represented that between 40-50GB of documents will eventually be produced, yet less than 1GB was produced in its First Rolling Production. Given that, by MIWD's own representations, it has been reviewing documents for well over six (6) months, it is only logical that more than 1GB was ready for production as of November 5, 2012. Accordingly, Homeowner Plaintiffs request the Court order production of all documents processed for production.

### CONCLUSION

Although Homeowner Plaintiffs have just begun a review of documents, many production deficiencies were identified, addressed, and are going unresolved through consultation with MIWD. Given the currently identified deficiencies, and in anticipation of

11

several hundred thousand pages of documents that will be produced in the future, Homeowner Plaintiffs request the Court issue an order compelling:

1) the full production of all documents redacted on the grounds that they are "non-responsive" or irrelevant;

2) removal of redactions from witness names, neighborhoods, cities, states, and zip codes based on the grounds that such information is "personal material" and full production of those documents;

3) withdrawal of improper confidential designations, submission of the good faith designation of remaining confidential documents, and reproduction of improperly designated documents without a confidential identification;

4) a list of all documents submitted in hardcopy for evaluation of image quality, a standing order that all future documents be produced in images of 300DPI Group IV or better, reproduction of all documents in the First Rolling Production that do not meet this quality, a report on the nature and processing of production of documents, and the production of any missing meta data/load file content;

4) reproduction of all photographs produced in black and white; and

5) production of all currently processed documents in MIWD's possession.

In order to reduce the number of future motions to compel, Homeowner Plaintiffs further request that MIWD be prohibited from redacting documents in future production based upon the grounds that such documents are non-responsive or irrelevant, and redacting witness names, neighborhoods, cities, states, or zip codes based upon the grounds that such text is "personal material."

Homeowner Plaintiffs' counsel affirms, as stated above, that prior to the filing of this Motion to Compel, they conferred with opposing counsel and attempted in good faith to resolve this matter.

Respectfully submitted,

By: s/Justin Lucey
Justin Lucey (Fed. ID No. 5613)
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465-0806
(843) 849-8400 phone
(843) 849-8406 facsimile
Email: jlucey@lucey-law.com

*Homeowner Plaintiffs' Liaison Counsel*

AND

Daniel K. Bryson
Whitfield Bryson & Mason LLP
900 W. Morgan Street
Raleigh, NC 27603
Email: dan@wbmllp.com

*Homeowner Plaintiffs' Lead Counsel*

November 16, 2012