## MI WINDOWS AND DOORS, INC. – DISCOVERY CHRONOLOGY

November 28, 2011: After discovery in the case was stayed for over a year at MI's request, Defendant MI served Plaintiff Johnson with 26(a)(1) Disclosures identifying relevant documents in its possession under the general categories of: Engineering/Design/Technical; Component Parts; Industry Standards; Warnings and Instructions; Marketing; Sales; Credit; Warranty; Customer Service; and Quality Control. Defendant MI further represented in their Disclosures that "MIWD has enacted a litigation hold for items relating to this claim for all materials and has attempted to preserve documentation and ESI in accordance with that process."

January 19, 2012: Plaintiff Johnson served Plaintiff's First Set of Discovery Requests on Defendant MI. Plaintiff Johnson filed and served her 26(a)(2) Expert Disclosures along with reports for each identified expert, with the exception of one expert whose report could not be completed without receipt of documents from Defendant MI.

March 5, 2012: Defendant MI served responses to Plaintiff Johnson's discovery but did not produce any documents. As the Court will recall, Plaintiff Johnson filed a Motion to Compel the Defendant's 30(b)(6) Deposition and sufficient responses to Plaintiff's First Set of Discovery Requests.

March 8, 2012: The Court held a status conference on this litigation in light of pending motions, including pending motion for Transfer and Consolidation of various actions for multidistrict litigation. In support of its Motion for Bifurcated Discovery, Defendant MI's counsel argued that

> …until we know what model windows are in this case, it would be extremely burdensome for MI Windows to have to go and dig up all the research and development files, historical documents, all the documents that are in any way related to the merits of plaintiffs' claims [on the various models of windows].
>
> (March 8, 2012, Hr'g Tran. 19:20-25)

The Court pointed out that given the litigation pending in various states, Defendant MI would most likely have already begun collecting documents for the various models of windows. (March 8, 2012, Hr'g Tran. 20:1-6).

May 17, 2012:[1] The hearing on Plaintiff Johnson's Motion to Compel and Defendant MI's Motion to Quash (Plaintiff's subpoena of documents from prior litigation) was held. As the Court pointed out at the time of the hearing, the parties had been before the court several times arguing over discovery and Defendant MI had not yet produced anything.

---

[1] Just a month prior, on April 23, 2012, the Judicial Panel on Multidistrict Litigation Ordered the Transfer and Consolidation of various actions to the District of South Carolina (Charleston Division) before your Honor.

**PLAINTIFF'S EXHIBIT A**

(May 17, 2012, Hr'g Tran. 24:11-13). At that time, counsel for Defendant MI made the following representations:

> MR. OUZTS:... And we have been engaged in a process of reviewing those documents, coding them so that they can be easily produced in other cases that may come into the MDL, depending upon what the facts of the individual case are. And that involves assigning those documents Bates numbers that relate to this case rather than, you know, Bates numbers that might have applied in the Tennyson Row case. So one of our reasons for doing it that way is document management control.
> THE COURT: So are you telling me *you're already setting up a document depository and assigning Bates numbers* to some of these documents which have already been produced to Mr. Lucey?
> MR. OUZTS: *Yes, sir.*
> (May 17, 2012, Hr'g Tran. 26:14-25; 27:1)(Emphasis added).

Counsel for Defendant MI went on to represent that:

> *...Even before the transfer order was issued in April, April 24th, as I recall, K&L Gates had begun a comprehensive review of the records of M.I. Windows.* And during the course of that review, they identified sources of documents and electronically-stored information that have not been reviewed for relevance, privilege, confidentiality. And we're in the process of doing that now. (Emphasis added).
> (May 17, 2012, Hr'g Tran. 28:22-25; 29:1-4)

In response to the Court's question as to what the estimate as to how long it would take to produce these documents, Defendant MI skirted the question and instead stated they had collected 280 gigabytes of information. (May 17, 2012, Hr'g Tran. 37:6-23). At that time, the Court granted Plaintiff Johnson's Motion to Compel documents related to the Series 3500 windows, for a ten year period of time beginning January 1, 2001. (May 17, 2012, Hr'g Tran. 47:4-22).

<u>July 12, 2012:</u> The parties appeared before the Court on the first MDL status conference. At that time, Defendant MI had not yet produced a single document. In response to Plaintiff Johnson's counsel argument that Defendant was still required to comply with the Court's May 2012 Order compelling documents related to the 3500 Series (and that the Order was not stayed by the Court's Practice and Procedure Order), counsel for Defendant MI stated:

> MR. OUZTS: Your Honor, if I may briefly respond? There is a couple of things that I think the Court needs to keep in mind, but the discovery order that the *Court entered on May 17th required MI Windows to produce documents only as they related to the series 3500 windows. And it was understood at that time that it would only be, at best, a partial production* because of some issues that still exist that we'll get to later regarding ESI.

2

> THE COURT: Okay. And since, I assume for the purposes of this question, that since this May 17th ruling, that nothing has been produced?
> MR. OUZTS: Your Honor, your practices and procedures order stayed all discovery proceeding in the case. *So you are correct, nothing has been produced.*
> MR. FARRIER: But we have -- we have made at least four trips to gather data, and we have well over 280 gigs of data that we have gathered. We've made another trip to gather data within the last week.
> (July 12, 2012 Hr'g Tran. 19:14-19; 22:17-25; 23:1)(Emphasis added).

September 19, 2012: The parties appeared before the Court for the second MDL status conference. At that time, Plaintiffs agreed to serve Defendant MI with a Master Set of Discovery, and Defendant MI agreed to produce then processed documents responsive to this Set by November 1, 2012, and negotiate a discovery plan (CMO No. 5, in process).

September 28, 2012: Homeowner Plaintiffs served Defendant MI with a Master Set of Discovery which was substantially the same as the requests served by Plaintiff Johnson on Defendant MI on January 19, 2012.

November 5, 2012: Defendant MI served Plaintiffs with its "First Rolling Production."

November 12, 2012: A consultation on production deficiencies, initiated by Homeowner Plaintiffs took place. All production deficiencies identified in this Motion were addressed therein. Homeowner Plaintiffs requested a follow-up call in an effort to provide MI with an opportunity to address the identified deficiencies.

November 14, 2012: MI cancelled the schedule phone conference and emailed Mr. Farrier's letter to the Court requesting that the "break down" in discovery negotiations be addressed at the next status conference. The Court granted Homeowner Plaintiffs leave to file this Motion.