**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

-----------------------------------------------------------x
IN RE: MI WINDOWS AND DOORS,     :       MDL No. 2333
INC, PRODUCT LIABILITY          :       Case No. 2:12-mn-00001
LITIGATION                    :
                                 :    **SPECIAL MASTER'S RULINGS**
                                 :    **ON DEFENDANT'S AMENDED**
-----------------------------------------------------------x    **PRIVILEGE LOG**


DANIEL J. CAPRA, SPECIAL MASTER

      In order to provide guidance to the parties going forward, the Special Master has decided, with the consent of the parties, to conduct a review of the documents logged by the Defendant in an amended privilege log produced on March 8, 2013. In a subsequent order and opinion, the Special Master will review the documents logged by Homeowner Plaintiffs in privilege logs for the Wani and Deem clients.


## *Rulings on Logged Items:*


### *Document 1:*

      This is an email from Mike Ohlin (Defendant's Corporate Purchasing Director), sent to Peter Reardon of TB Philly. It seeks reimbursement for costs. The Defendant claims attorney-client privilege but without doubt there is no viable privilege claim here. There is obviously no reasonable anticipation of confidentiality between client and lawyer when the client is communicating to a third party and, indeed, a potential adversary. *See generally In re Grand Jury Proceedings,* 33 F.3d 342 (4th Cir. 1994) (information intended for disclosure to someone outside the attorney-client relationship is not privileged).

      The Defendant also invokes Rule 408 of the Federal Rules of Evidence. In an earlier ruling, dated April 2, 2013, the Special Master found the following:

      1. Rule 408 extends to settlement communications with third parties (like TB Philly here) if the third-party suit is related to the instant one.

2. Rule 408 is *not* a privilege rule and does not protect against disclosure during discovery. Accordingly, Rule 408 cannot be used as a ground for logging a document on a privilege log.[1]

3. A number of courts have used protective devices under Fed.R.Civ. P. 26 to impose some limits on discovery of settlement materials.

The Special Master finds that the TBPhilly matter is sufficiently related to the instant case so that Rule 408 is potentially applicable here. It is of course impossible for the Special Master to make an actual ruling on admissibility of the Ohlin email under Rule 408 — because it is not possible at this point to determine whether the email might be used for some purpose other than to prove the validity or amount of the claim. See Rule 408(b). That leaves the question whether a protective order should be entered under FRCP 26 to prevent disclosure. On the face of it, the Special Master sees no particular reason to provide a protective order in these circumstances. But the Defendant should be given an opportunity to so argue.

   ***Ruling on Document 1: The privilege claim is denied. The Defendant has 30 days from the date of this order to seek a protective order under Rule 26.***


***Document 2:***

   These are handwritten notes prepared by Mike Ohlin which summarize issues and arguments that the Defendant was having with a supplier, St. Gobain. The Defendant invokes the work-product immunity. As required by the CMO entered in this matter, the Defendant has specifically identified the litigation for which these notes were prepared. The Defendant avers that Ohlin's notes reflect advice of counsel. That assertion is difficult to evaluate in light of the sketchy nature of the notes. But what is clear is that at the time the notes were prepared, litigation was certainly anticipated and these notations relate to and are prepared in response to the threat of that litigation. So even if no lawyer was involved, these notes would be protected work product. The work product immunity protects material prepared by non-lawyers in anticipation of litigation. *See In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 666 (3d Cir. 2003) (noting that "the work product doctrine extends to materials compiled by a non-attorney, who, as the 'agent' of a party or a party's attorney, assists the attorney in trial preparation"). Certainly, notes that summarize trial-type arguments constitute trial preparation and can assist the attorney.

   ***Ruling on Document 2:        Protected work product.***

---

[1] It should be noted that the Amended Log was prepared before the Special Master's ruling on Rule 408. So no negative inference should be derived from Defendant's invocation of Rule 408 on the privilege log.

**Document 3:**

These are more notes prepared by Mike Nohlin regarding the St. Gobain dispute and they are protected for the reasons expressed in the analysis of Document 2.

**Ruling on Document 3:**          **Protected work product.**

**Document 4:**

This is another note prepared by Mike Nohlin regarding the St. Gobain dispute and they are protected for the reasons expressed in the analysis of Document 2.

**Ruling on Document 4:**          **Protected work product.**

**Document 5:**

This is a chart prepared by Tammie Hoffman, an assistant in the MIWD Customer Care Department, and sent to Mike Ohlin. It summarizes work performed due to the St. Gobain tape during a period of time when litigation was anticipated. Given the fact that this work forms the basis of demand for reimbursement, it is sufficiently clear that the chart was prepared in anticipation of litigation. And as discussed previously, the work-product immunity extends to materials prepared by non-lawyers in anticipation of preparing a case for lawyers.

**Ruling on Document 5:**          **Protected work product.**

**Document 6:**

This is a chart prepared by Tammie Hoffman and sent to Mike Ohlin, with a copy to Craig Peters, Director of the MIWD Customer Care Department. It summarizes the amount expended for work performed due to the St. Gobain tape. It is protected work product for the reasons expressed in the analysis of Document 5.

**Ruling on Document 6:**          **Protected work product.**

**Document 7:**

This is a chart prepared by Tammie Hoffman and sent to Mike Ohlin, with a copy to Craig

Peters. It summarizes work performed due to the St. Gobain tape during a period of time (a month later than Document 5) when litigation was anticipated. It is protected work product for the reasons expressed in the analysis of Document 5.

> ### Ruling on Document 7: Protected work product.

### Document 8:

This is a handwritten note by Mike Ohlin setting forth some information about litigation with suppliers. For the reasons expressed in the discussion of Document 2, this is protected as work product.

> ### Ruling on Document 8: Protected work product.

### Document 9:

This is a memorandum from John Nolan of the Gary Law Group (outside counsel to the Defendant) to MI Engineering. It asks for engineering reports on certain components of certain windows. The memo clearly indicates that the lawyer is making a confidential communication for the purpose of obtaining information necessary for legal work. It also reflects the lawyer's thought process on anticipated litigation.

> ### Ruling on Document 9: Protected as privileged and as work product.

### Document 10:

This is a chart prepared by counsel regarding instructions for usage of certain windows that were in dispute in a litigation. It is plainly work product.

> ### Ruling on Document 10: Protected as work product.

### Document 11:

This logged item contains dozens of pages of notes of counsel in the Tennyson Row litigation. The notes include legal impressions, descriptions of deposition testimony, and evaluations of communications with MIWD personnel. This material is unquestionably work product.

> ### Ruling on Document 11: Protected as work product.

4

**Document 12:**

This is an email in which Paul Gary, outside counsel, asks John Nolan, outside counsel, to send him some public documents. The documents themselves are of course not privileged, nor are they work product because they were not prepared by the lawyer of the client. The Defendant is arguing instead that the fact that Gary wants to look at the documents is work product because it is the thought process of the lawyer, i.e., that certain public documents are relevant to the defense of a matter. That is work product.

   ***Ruling on Document 12: Protected as work product.***

**Document 13:**

This is an email string in which Chris Risberg, paralegal for outside counsel, receives information (per request request) on claims and disputes regarding MIWD. Bill Bezubic of MIWD is responding to the request by providing the information. This is a confidential communication between an agent for the attorney and an agent of the corporation assigned to provide information for purposes of obtaining legal advice. As such it is protected by the privilege.

   ***Ruling on Document 13: Protected as privileged.***

**Document 14:**

This is a case list prepared by Chris Risberg, a paralegal working for outside counsel. It basically sets out the name of the case, the state in which the case is brought, the building type, and the product or claim at issue in each case. The Defendant claims privilege but that claim fails, because there is no communication between attorney and client reflected in this list. It is, rather, just a factual description of the extant cases. The attorney-client privilege does not protect underlying facts. *See Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981) ("The protection of the privilege extends only to communications and not to facts.").

The Defendant claims work product, and while there does not seem to be much though process going on in the preparation of the list, it is apparent that the list is prepared for litigation purposes and it would be of some assistance to MIWD's lawyer. As such, it is granted the qualified immunity of fact work product.

   ***Ruling on Document 14: Protected as fact work product.***

**Document 15:**

This is an email that schedules a meeting regarding the Tennyson Row dispute. The meeting

5

is between outside counsel and Bill Bezubic. There is an attachment email string that is logged as Document 16. .

As to the email indicating a meeting request, it is not privileged. The mere fact of a consultation with a lawyer is not privileged. See *In re Shargel,* 742 F.2d 61, 62 (2d Cir. 1984). Therefore, the meeting request must be produced.

**Ruling on Document 15: Not protected.**

**Document 16:**

This is an email from John Nolan to Bill Bezubic containing confidential communications regarding photos that were taken, pertinent to the Tennyson Row litigation. It is apparent in the email itself that precautions are being taken to preserve confidentiality. The email also contains mental impressions of the attorney on the matters in dispute and so is work product.

**Ruling on Document 16: Protected as attorney-client privileged and as work product.**

**Document 17:**

This is an email chain among Bill Emley, Bill Bezubic and others, preparing and arranging for a letter for MIWD to submit to building officials. The letter is apparently attached to the emails but it has not been submitted to the Special Master. In any case the letter is not privileged because it is a public document. The log states that the email will be produced in redacted form. What is redacted is the name of the two people who wrote the letter, and some communications that were made during the drafting process.

The Defendant claims that the redactions protect attorney-client privileged material, but most of the redactions do not. Most of the communications are not intended to remain confidential because the document itself is prepared for the precise purpose of a public disclosure. As to the name of the two drafters, the fact that lawyers prepare a public document is not privileged as the mere fact that they do discloses no confidential communications.

The only communication that is protected is the body of the email dated August 24, 2007 from Bill Emley to Susan McKay, in which he asks for her legal advice on his deletion of certain information from the draft. That information, which is not included in the document, is protected under the rule governing the drafting process for public documents. See the extensive discussion in *In re New York Renu with Moistureloc Product Liability Litigation*, 2008 WL 2338552 (D.S.C.). As stated in *Renu*, drafts of documents that are intended to be disclosed to the public are not privileged to the extent the draft contains statements that are in the final. But deletions to the draft

6

made on advice of counsel — and discussions of those deletions — are protected because they are not publicly disclosed.

### Ruling on Document 17:

***The only permissible redaction is to the body of the email from Bill Emley dated August 24, 2007. The letter referred to in the email string is not protected and must be produced.***

### Document 18:

This is an email chain — two emails — and one is redacted. It is described as a thread requesting legal advice with an attached chart that is a case list. The chart attachment is logged as Document 19.

The redaction has nothing to do with legal advice. It is simply a request from Matt DeSoto to lawyers to get a new point person involved in the litigation going forward. The identity of a corporate agent who is dealing with lawyers is not privileged. *See generally In re Shargel,* 742 F.2d 61 (2nd Cir. 1984) (identity of the client is not privileged).

### Ruling on Document 18: Unprotected. The document must be produced in unredacted form.

### Document 19:

This is a case list prepared by counsel, identical in purpose and execution as the case list logged as Document 14. For the reasons expressed in the discussion of Document 14, the list is not protected by the attorney-client privilege but is protected as fact work product.

### Ruling on Document 19: Protected as fact work product.

### Document 20:

This is an email from Chris Risberg to Bill Bezubic sending attached information that is not itself privileged. While the underlying information is not privileged, the fact of the transmission is itself a communication about an identifiable subject matter. And that communication was a confidential one between a lawyer (specifically a paralegal who is within the attorney-client unit) and the client (specifically the point person for the company on legal matters) on a legal matter. Accordingly, the email is protected under the attorney-client privilege.

*Ruling on Document 20: The email is privileged.*

*Document 21:*

This is another case list produced by Chris Risberg. For the reasons expressed in the discussion of Document 14, the list is not protected by the attorney-client privilege but is protected as fact work product.

*Ruling on Document 21: Protected as fact work product.*

*Document 22:*

This is an email of the same character as Document 20. For the reasons expressed in the discussion of Document 20, the email is privileged even if the attachment (logged as Document 23 is not).

*Ruling on Document 22: The email is privileged.*

*Document 23:*

This is another case list produced by Chris Risberg. For the reasons expressed in the discussion of Document 14, the list is not protected by the attorney-client privilege but is protected as fact work product.

*Ruling on Document 23: Protected as fact work product.*

*Document 24:*

This is an email from Bill Emley to Matt DeSoto relating advice of counsel. The claim is for privilege and work product. It is unclear whether this communication was made in anticipation of litigation but it surely relating confidential advice on a legal matter, and so it is privileged.

*Ruling on Document 24: Privileged.*

*Document 25:*

This is a two email chain. The first email is from General Counsel of J.T. Walker Industries

— the former parent of MIWD — to Bill Bezubic and it refers an attachment that the log states is a "chart re: case status." The attachment is logged as Document 26. As to the email itself, it is laced with concern about protecting confidentiality and it is a communication from corporate counsel to a corporate point person on a legal matter. Accordingly it is privileged.

The second email forwards the attachment sent from corporate counsel and constitutes a confidential disclosure of legal advice received from counsel.

> ***Ruling on Document 25:        The emails are privileged.***

### *Document 26:*

This is a chart on pending litigation prepared by Elizabeth Francis, Corporate General Counset of J.T. Walker Industries. This chart is rife with strategic and evaluative thinking on the part of counsel, and it is clearly prepared in anticipation of litigation. The Defendant claims that the chart is protected by the privilege and that is less clear, because it does not seem to contain any confidential communications between attorney and client. But it is unquestionably protected opinion work product.

> ***Ruling on Document 26: Protected work product.***

### *Document 27:*

This is the same email logged as the first in the two email chain in Document 25. For the reasons expressed there, the email is privileged.

> ***Ruling on Document 27: Privileged.***

### *Document 28:*

This is a duplicate of Document 26.

> ***Ruling on Document 28: Protected work product.***

### *Document 29:*

This is an email chain between Bill Bezubic and Elizabeth Francis, concerning the preparation of a chart that is logged as Document 30. The communications involve legal advice and are confidential.

***Ruling on Document 29: Privileged.***

***Document 30:***

This is a chart on pending claims that is substantively the same as Document 26. For the reasons stated in the discussion of that document, this is protected as work product.

***Ruling on Document 30: Protected work product.***

***Document 31:***

This is a memo from outside counsel to various MIWD personnel (with copies to other lawyers in the firm), regarding document retention policies. It attaches another memo that is logged as Document 32. The memo logged as Document 31 contains confidential communications on a legal matter.

***Ruling on Document 31: Privileged.***

***Document 32:***

This is a memorandum from outside counsel regarding document retention policies for a particular litigation. It contains confidential communications about the dispute, and about what information might be relevant. And it is unquestionably prepared in anticipation of litigation and evidences the lawyer's thought process. So it is protected as privileged and as work product.

***Ruling on Document 32: Protected under the attorney-client privilege and as work product.***

***Documents 33 and 33.1 :***

This is an email chain started by Paul Nolan (logged at 33.1) asking for certain spreadsheets regarding claims that are then referred to him and are logged as Document 34. Nolan's communications and review are for purposes of litigation, and the communications of MIWD personnel (logged at 33) are to assist Nolan in his preparation. So the email chain is protected work product.

***Ruling on Documents 33 and 33.1: Protected work product.***

*Document 34:*

These are tabulations and at least preliminary evaluations of claims. These tabulations were prepared by a non-lawyer at MIWD (Paul Osvold) but they would certainly assist MIWD's lawyers in preparing for litigation and they are and appear to be prepared at the behest of counsel. The preparation could be for other purposes as well (for example, resolution short of litigation or to correct problems in the future) but the spreadsheet is about alleged damages that have occurred so they are sufficiently prepared in anticipation of litigation to qualify as work product. The CMO requires the Defendant to specify the litigation for which the document is prepared if known. As applied to this spreadsheet it would be unreasonable for the Defendant to have to specify the litigation for which this is prepared — given that there are so many claims, and not all of them would end up in litigation. In this instance, disclosing the specific matters would be untenable as it would end up disclosing the document itself.

**Ruling on Document 34: Protected work product.**

*Document 35:*

This is another spreadsheet of the same character as Document 34, prepared by Paul Osvold at the behest of counsel. For reasons expressed immediately above, this document is protected work product.

**Ruling on Document 35: Protected work product.**

*Document 36:*

This is an email chain like that logged at 33, involving transmission of claims information to John Nolan. The communications of MIWD personnel are part of assisting Nolan in his preparation. So the email chain is protected work product.

**Ruling on Document 36: Protected work product.**

*Document 37:*

This Document is substantively identical (if not completely identical) to Document 34, and is subject to the same ruling.

**Ruling on Document 37: Protected work product.**

*Documents 38 and 38.1:*

This is an email thread among MIWD personnel regarding a particular claim. It starts with a report by Jeff Williams (MIWD territorial sales representative) describing the matter and seeking the formulation of a position in light of the possibility of litigation. The last of the emails, independently logged at 38, specifically seeks counsel's advice on a letter, which is logged at 39. Independently of the letter itself, the email indicates a confidential communication for legal advice. Therefore the email logged at 38 is protected by the privilege. The rest of the email chain indicates a process and discussion that is designed to package some information for counsel in anticipation of litigation. Accordingly it is protected as work product.

*Ruling on Documents 38 and 38.1: Document 38 (the email from Jeff Williams dated January 25, 2007 at 11:19 a.m.) is protected by the privilege. The email string logged as Document 38.1 is protected work product.*

*Document 39:*

This is a letter from Jeff Williams to a supplier regarding a window unit replacement. The Defendant claims this is protected as work product because it was prepared in anticipation of litigation. But the letter is sent to a possible adversary, and so it cannot be protected as work product. *See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1428 (3d Cir. 1991) (disclosure of work product to a potential adversary results in waiver of work product protection as to other parties). It is clear, by the way, that the letter is sent to a possible adversary as it is replete with "no concession" limitations.

*Ruling on Document 39: Not protected.*

*Document 40:*

This is an email from Bill Emley to Bill Bezubic, in which Emley lists the lawsuits with which he is involved. The log avers that this memo discusses legal advice but there is no legal advice actually discussed in the memo. All that is discussed is a statistic. Nonetheless, the list is clearly prepared to assist MIWD in managing anticipated and actual litigations. Accordingly it is protected as fact work product.

*Ruling on Document 40: Protected as fact work product.*

*Document 41:*

This is an email from Jeff Williams to Bill Emley and Susan McKay (outside counsel). It is clearly intended to be confidential and it is a communication about facts that are surely pertinent to

a legal matter. It is also clear that McKay's legal advice is being sought. Accordingly it is privileged.

> ### *Ruling on Document 41: Privileged.*

### Document 42:

This is an email chain that is essentially the same as that logged at Document 18. For reasons discussed in the analysis of that Document, this email chain must be produced in unredacted form.

> ### *Ruling on Document 42: Unprotected. This email chain must be produced in unredacted form.*

### Document 43:

This is a case list prepared by counsel, substantively identical to Document 14. For reasons previously expressed, the list is not protected by the attorney-client privilege but is protected fact work product.

> ### *Document 43: Protected as fact work product.*

### Document 44:

This is an email that refers information to counsel and to MIWD personnel with a need to know. The log states that Rule 408 is in play, but that is not the case with respect to this email. Rule 408 would, if anything, be in play with respect to the attachment that is logged as Document 45. The email contains no offer of settlement or anything like it, it is simply an internal communication. That said, the email is a confidential communication that certain identifiable information is being sent to the lawyer for purposes of legal advice. So the email is protected by the privilege.

> ### *Document 44: Privileged.*

### Document 45:

This is a letter from Tamie Scherbik, MIWD Director of Customer Care, to John Sands of the Sierracin Corporation, regarding customer claims. The Defendant claims that the letter is privileged but it plainly is not because it is a letter to a third party. The Defendant also claims the protection of Rule 408. As stated above, the document cannot be withheld from discovery pursuant to Rule 408, but the Defendant may move for a protective order — though it should be said that

there is doubt about the strength of the Rule 408 claim here, because it is not clear that there is even any dispute between the parties at the time the letter was sent — unlike Document 1, supra. *See, e.g., Affiliated Mfrs., Inc. v. Aluminum Co. Of Am.,* 56 F.3d 521 (3d Cir. 1995) ("dispute" under the Rule means "a clear difference of opinion between the parties" as to responsibility for a loss).

The Defendant also claims the document is non-responsive and was inadvertently included on the privilege log in the first place. The Special Master is unable to rule on that contention on the record provided. The Special Master suggests that any fight over responsiveness is not worth the lawyer time, as the letter is, on its face, of little utility.

**Document 45: Not privileged. The Defendant may seek a protective order on Rule 408 grounds. The issue of responsiveness is not resolved by the Special Master.**

**Document 46:**

This is a spreadsheet of field service claims and for reasons expressed above it is protected as fact work product. The Defendants also claim that it is non-responsive and inadvertently logged, and that it is protected under Rule 408. The arguments about non-responsiveness and Rule 408 are mooted by the fact that the Document is work product.

**Ruling on Document 46: Protected as fact work product.**

# Order

**1. The Defendant must produce the following logged documents:**

- Document 15.

- Document 17 — though the Defendant may redact the email from Bill Emley dated August 24, 2007.

- Document 18.

- Document 39.

- Document 42.

14

**2. The Defendant has 30 days to seek a protective order regarding the following logged documents:**

- Document 1

- Document 45

If no protective order is sought or granted, then Document 1 must be produced, and Document 45 must be produced if it is responsive.

**3. All other documents are protected and may remain on the privilege log.**

SO ORDERED:

Daniel J. Capra
Special Master

Dated: New York, New York
       May 1, 2013

15