UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE MI WINDOWS AND DOORS, INC., PRODUCTS LIABILITY LITIGATION | MDL No. 2333 |
| THIS PLEADING RELATES TO: ALL CASES | HON. DAVID C. NORTON |

**DECLARATION OF HOMEOWNER PLAINTIFFS' LEAD COUNSEL
DANIEL K. BRYSON IN SUPPORT OF PETITION FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
AND PLAINTIFF SERVICE AWARDS**

I, DANIEL K. BRYSON, hereby declare pursuant to 28 U.S.C. § 1746 that the following is true and correct:

**INTRODUCTION**

1.     I am Lead Counsel for Homeowner Plaintiffs ("Class Counsel") in this action.  I was appointed by the Court as Lead Counsel and  Co-Chair of the Plaintiffs Steering Committee on September 10, 2012 pursuant to Case Management Order No. 1.  I make this Declaration in Support of Motion for Attorneys' Fees, Expenses, and Plaintiff Service Award. I have actively participated in the conduct of this litigation, have personal knowledge of the matters set forth herein, and if called to testify, could and would testify competently thereto.

2.     My firm, Whitfield Bryson & Mason LLP ("WBM"), along with Lucey Law Firm and  the  other  firms  that  have  actively  litigated  this  case[1]  have  extensive  experience  in

---

[1] The following firms actively participated on the Plaintiffs' Steering Committee: Parker Waichman, LLP; Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA; Shepherd Finkelman Miller & Shah, LLP; Neblett, Beard & Arsenault; Oliver Law Group; Childress Duffy; and Seeger Weiss, LLP.  The additional

prosecuting complex class action, including significant experience in litigating building product defect class actions. *See* Plaintiffs' Memorandum of Law in Support of Petition for an Award of Attorneys' Fees, Reimbursement of Expenses, and Plaintiff Service Awards, Section II, A, 2, c.

3.      In the sections that follow, Class Counsel explains the protracted and hard fought litigation and the negotiations that resulted in the Settlement Agreement ("Agreement"). As described below, the settlement provides significant relief to homeowners throughout the country. It is, in the opinion of the undersigned and the other Homeowner Class Counsel, fair, reasonable and adequate and worthy of final approval. Accordingly, Class Counsel moves the Court to grant its request for the agreed-upon attorneys' fees and expenses, the requested amount of which is a fair, accurate, and reasonable, as are the rates used in the calculation.

## LITIGATION HISTORY

4.      These actions began on September 2, 2010, when Plaintiff Joseph DeBlaker filed a class action lawsuit against Defendant MI Windows and Doors, Inc. ("Defendant" or "MIWD") on behalf of consumers who own structures on which MIWD's 3500/8500 windows were installed. Plaintiffs alleged that, as a result of the defect, water intrudes into the structures causing mineral deposits and mold, eventually compromising the structural integrity of the window and causing damage to Plaintiffs' homes. Soon after, on October 21, 2010, Plaintiff Nadine Johnson filed a separate, state wide, putative class action in Charleston, South Carolina, alleging similar defects relating to MIWD's 3500/8500/4300 series Windows. A little over a year later, on December 5, 2011, Plaintiff Craig Hildebrand filed a separate action in the Eastern District of New York, alleging common defects with respect to MIWD's 3500/4300/8500

---

firms that have served as local counsel or otherwise assisted include The Bell Law Firm; Wise & Donahue, PLC; McConnell & Sneed, LLC; and Gunderson Sharp, LLP.

Windows. Over the course of the following years of litigation, eighteen similar actions against MIWD were filed in various districts across the United States in total.

5.      In response to the filings of these cases, Defendant hired well-qualified and experienced building products and class action attorneys – K&L Gates, LLP – to provide a vigorous defense. Turner Padgett had previously been defending the South Carolina based *Johnson* action; and Turner Padgett continued in the joint defense of the *Johnson* action throughout the litigation. MIWD, through counsel, vigorously defended the claims in the *DeBlaker, Johnson, Hildebrand* and other actions. MIWD denied that it harmed Plaintiffs or any individuals in the class they seek to represent.

## **MAJOR LITIGATION EVENTS**

### a.    **Centralization**

6.      In April 2012, the Judicial Panel on Multidistrict Litigation ("JPML") transferred the *Hildrebrand* Action along with the other five actions pending in five districts (including the *DeBlaker* Action) to the District of South Carolina for pretrial proceedings (collectively, the "MDL Actions"). This followed months of briefing by the parties. Additionally, Homeowner Plaintiffs had their engineers (as detailed below) visit all class representative residences to confirm the existence of the defect and the nature of the consequential damages in advance of arguing the transfer motion in San Diego, CA. All subsequently filed cases have also been transferred to this Court and consolidated with this Action for pre-trial proceedings.

7.      MIWD objected to every Order for Conditional Transfer ("CTO") issued by the JPML, eight in total, which necessitated Class Counsel expend additional time and resources to prepare responsive briefings at this early procedural stage. *See In re: MI Windows and Doors, Inc., Products Liability Litigation*, CTO-1 (ECF 48, filed Apr. 25, 2012); *Id.*, CTO-2 (ECF 68,

3

filed July 30, 2012); *Id.*, CTO-3 (ECF 78, filed Oct. 14, 2012); *Id.*, CTO-4 (ECF 88, filed Dec. 26, 2012); *Id.*, CTO-5 (ECF 102, filed Jan. 28, 2013); *Id.*, CTO-6 (ECF 124, filed Apr. 18, 2013); *Id.*, CTO-7 (ECF 134, filed May 30, 2013); *Id.*, CTO-8 (ECF 142, filed June 17, 2013). Defendant was just reincorporating the same arguments from prior motions to vacate by the time CTO-5 was filed.  The Panel at that time made it clear through its transfer orders that it would reject and continue to reject motions to vacate filed by the Defendants.  Class Counsel spent approximately 48 to 68 hours briefing these Conditional Transfer Orders; and, of course, this was in addition to the substantial briefing time invested before the initial transfer order.

8.    Since consolidation, Judge Norton has regularly held status conferences on roughly a monthly basis, seventeen (17) in all.  In addition, as part of these conferences, Judge Norton heard oral argument on various discovery motions and numerous motions to dismiss. The parties fully briefed MIWD's motions to dismiss in nine of the underlying cases. Consequently, Judge Norton has issued 11 discovery orders and 11 orders on motions to dismiss in these various cases.

**b.    <u>Discovery</u>**

9.    Extensive discovery was completed on both sides before the parties engaged in settlement negotiations.  In addition, relevant Case Management Orders were negotiated for document production and the Electronically Stored Information ("ESI"). CMO-3 (ESI) took approximately three months to negotiate.  Class Counsel spent approximately 50 hours on CMO-3 alone.  CMO-4 (Privilege) took approximately seven months to negotiate, two hearings and the appointment of a Special Master.  Class counsel spent approximately 125 hours on CMO-4. CMO-6 and CMO 7 (Expert Issues) took ten months to negotiate, and Class Counsel spent approximately 50 hours on these Orders.

10.    Plaintiffs have made eight rolling productions of documents and several supplemental productions thereto; Defendant has made over 12 rolling productions (not including reproductions due to a partial redaction conflict), for a production totaling 38,237 pages, plus native files, for a total production in excess of 33 gigabytes, all of which was took approximately 1,267 hours to review (or 158 eight hour days). In addition, Class Counsel spent an additional 274 (or 34 eight hour days) re-reviewing the 1st and 2nd rolling productions with redactions for determination of the appropriateness of Defendant's confidentiality designations. Plaintiffs challenged MIWD's partial redactions; which challenge resulted in two hearings (one in New Orleans); and eventually a ruling in Plaintiffs' favor against MIWD's practice of partial redactions. While this ruling benefited Plaintiffs, it also resulted in and required a time consuming re-review of the subsequently reproduced, voluminous documents.

11.    A Special Master was appointed to handle matters of privilege. The Special Master held a number of telephonic hearings, called for briefing, and filed several opinions as to disputed documents withheld by MIWD.

12.    Plaintiffs analyzed extensive technical productions and depositions which had been conducted in prior, smaller cases (see below) and conducted depositions of MIWD's corporate representatives. MIWD also inspected class members homes.

13.    Class Counsel retained expert engineers Raymond W. Latona and Thomas A. Schwartz of Simpson Gumperts & Heger ("SGH"). At considerable expense, SGH, and other personnel employed by SGH performed inspections of MIWD windows in 43 homes located in South Carolina, North Carolina, Georgia, New York, New Jersey, Michigan, Wisconsin and Minnesota. SGH water tested 81 and visually inspected 492 windows

14. Class Counsel also retained A. Rhett Whitlock of Whitlock Dalrymple Peston & Associates, Inc. ("WDP"). Also at considerable expense, WDP performed inspections of MI windows in more than 100 homes in Plaintiffs' experts inspected homes with MIWD windows in in South Carolina, North Carolina, Georgia, Virginia, West Virginia, Florida, Kansas, Pennsylvania, New York, Ohio, Wisconsin, Illinois, and Maryland.

15. Representatives of the Plaintiffs were always on hand during the aforementioned inspections to interface with the owners and assist as needed with the logistics. For example, representatives of the plaintiffs were present at inspections as follows:

      a.  November 26, 2012 – Charlotte, North Carolina

      b.  November 27, 2012 – Rock Hill, North Carolina

      c.  February 5, 2013 – Norcross, Georgia

      d.  February 6, 2013 – Norcross, Georgia

      e.  February 7, 2013 – Norcross, Georgia

      f.  March 26, 2013 – Harrison, Ohio

      g.  March 27, 2013 – Harrison, Ohio

      h.  March 28, 2013 – Hillard, Ohio

      i.  April 2, 2013 – Charlotte, North Carolina

      j.  April 3, 2013 – Summerville, South Carolina

      k.  May 8, 2013 – Plainfield, Illinois

      l.  May 9, 2013 – Plainfield, Illinois

      m. May 10, 2013 – Plainfield, Illinois

16. Importantly, the merits of the case and the engineering work were essentially jump started from prior litigation concerning these windows. Several years prior to the North

Carolina and South Carolina district court cases, a construction defect case was filed in Charleston County, Court of Common Pleas (*Meeting Street at Tennyson Row Horizontal Property Regime by Meeting Street at Tennyson Row Homeowners Association, Inc. v. MI Windows & Doors, Inc., et al.,* CA No. 2008-CP-10-7217). The *Tennyson Row* case involved defective construction of 49 townhomes in Mt. Pleasant, wherein MIWD was named as one of numerous defendants. With regard to the Plaintiffs' claims against MIWD, the case involved the same products (3500/4300 Series), and same or similar alleged defects as this litigation. Liaison Counsel represented the Plaintiff HOA in the *Tennyson Row* litigation, which resulted in the filing of the putative South Carolina class action removed by MIWD to district court. The engineering work and product discovery which occurred in the *Tennyson Row* litigation substantially jump started the analysis in the current litigation. After developing this earlier information far further with analysis of the older and new information, inspections, and testing, Class Counsel were well apprised of the strengths and weaknesses of their case as well as the risks of pursuing litigation before the parties entered into mediation.

c.    **Motions Practice**

17.    Throughout this litigation, the parties have engaged in vigorous motions practice. Among other things, MIWD sought to dismiss each of the cases filed by the representative Plaintiffs, as well as every motion to amend filed by Plaintiffs. Class Counsel briefed responses in opposition to 14 of MIWD's motions to dismiss. Exemplars of the motions practice is as follows:

*Johnson v. MI Windows and Doors*

        2/03/2011 – MIWD Motion to Dismiss

        02/22/2011 – Plaintiffs Response in Opposition

03/04/2011 –  Reply  to Plaintiffs Response

03/11/2011 – Plaintiffs Sur Reply to MIWD Reply

03/17/2011 – MIWD Motion to Strike

03/21/2011 – Plaintiffs Motion to Amend/Correct Complaint

03/25/2011 – MIWD Response in Opposition to Motion to Amend

10/21/2011 – MIWD Third Party Complaint

12/01/2011 – MIWD Motion for Discovery

02/17/2012 – MIWD Motion to Continue (Deadlines in Pre-Scheduling Order

03/05/2012 – Plaintiffs Response in Opposition to Motion to Continue

03/06/2012 –  Plaintiffs  Motion  to  Compel  30(b)(6)  Deposition  Duces  Tecum  and
             Responses to Plaintiffs First Set of Discovery

03/23/2013 – MIWD Response in Opposition to Motion to Compel

03/23/2012 – MIWD Motion for Protective Order

04/09/2012 – Plaintiffs Reply to Motion to Compel

04/09/2012 - Plaintiffs Response to Motion for Protective Order

04/19/2012 – MIWD Reply to Response to Motion for Protective Order

04/30/2012 – MIWD Motion to Quash Subpoena and for Protective Order

05/11/2012 – Plaintiffs Response to Motion to Quash

05/15/2012 – MIWD Status Report

05/15/2012 – Plaintiffs Reply in Opposition to Status Report

05/16/2012 – MIWD Supplement to Status Report

07/16/2012 - Plaintiffs Third Amended Complaint

07/26/2012 – MIWD Motion to Dismiss Complaint

07/26/2012 – MIWD Motion for Joinder

08/13/2012 – Plaintiffs Response in Opposition to Motion for Joinder

08/13/2012 – Response to Motion to Dismiss

08/23/2012 – MIWD Reply to Response in Opposition to Motion for Joinder

08/23/2012 – MIWD Reply to Response to Motion to Dismiss

12/04/2012 – MIWD Motion to Reconsider on Motion to Dismiss and Motion for Joinder

12/21/2012 – Plaintiffs Response on Motion to Reconsider

01/18/2013 – Plaintiffs Motion to Amend Complaint

02/04/2013 – Plaintiffs Amended Motion to Amend Complaint

02/04/2013 – MIWD Response in Opposition to Motion to Amend Complaint

02/14/2013 – MIWD Response in Opposition to Amended Motion to Amend Complaint

03/01/2013 – Reply to Response to Amended Motion to Amend Complaint

03/25/2013 – MIWD Emergency Motion for Protective Order

03/25/2013 – MIWD Motion to Expedite Consideration of Motion for Protective Order

03/27/2013 – Plaintiffs Response in Opposition to Emergency Motion

06/12/2013 – Plaintiffs Fourth Amended Complaint

***DeBlaker v. MI Windows and Doors, Inc.***

10/12/2010 - MIWD Motion to Dismiss

11/19/2010 – Plaintiffs Response to Motion to Dismiss

12/06/2010 – MIWD Reply to Response to Motion to Dismiss

12/08/2010 – Plaintiffs Motion for Leave to File Sur Reply

12/17/2010 – Plaintiffs Sur Reply

12/23/2010 – MIWD Motion for Leave to File Response to Sur Reply

02/25/2011 – Plaintiffs Response to Motion for Leave to File Response

04/14/2011 – Plaintiffs Amended Complaint

05/23/2011 – MIWD Motion to Dismiss

06/23/2011 – Plaintiffs Response in Opposition to Motion to Dismiss

07/12/2011 – MIWD Reply to Response to Motion to Dismiss

03/12/2012 – Plaintiffs Brief Re Applicability of NC Gen Stat 1-50(a)(5)

03/16/2012 – MIWD Brief Regarding Statute of Respose

03/30/2012 – Plaintiffs Reply Re Statute of Repose

08/24/2012 –   Plaintiffs Reply to Response Re Remand for Transfer Court to Decide
               Fully Briefed Motion for Reconsideration

09/28/2012 – MIWD Motion for Leave to File Supplement

10/04/2012 – Plaintiffs Response to Motion for Leave to File Supplement

10/12/2012 – MIWD Brief in Support of Motion for Leave

11/07/2012 – MIWD Supplemental Authority

11/08/2012 – Plaintiffs Response to Supplemental Authority

03/25/2013 – MIWD Emergency Motion for Protective Order

03/27/2013 – Plaintiffs Response to Emergency Motion

03/28/2013  - Plaintiffs Motion for Leave to File Amended Complaint

04/19/2013 – MIWD Response in Opposition to Motion for Leave

05/13/2013 – Plaintiffs Reply to Response to Motion for Leave

05/13/2013 – Plaintiffs Motion for Protective Order

05/28/2013 – MIWD Response to Plaintiffs Motion for Protective Order

05/31/2013 – Plaintiffs Motion for Leave to File Third Amended Complaint

06/24/2013 – MIWD Response in Opposition to Motion for Leave

07/08/2013 – Plaintiffs Reply in Support of Motion for Leave

**Meifert v. MI Windows and Doors, Inc.**

01/23/2012 - MIWD Motion to Dismiss

03/12/2012 – Plaintiffs Amended Complaint

03/26/2012 – MIWD Motion to Dismiss Amended Complaint

04/16/2012 – Plaintiffs Response in Opposition

04/30/2012 – MIWD Reply to Response

05/02/2012 – Plaintiffs Motion to Stay Action Pending Transfer

05/09/2012 – MIWD Response in Opposition to Motion to Stay

10/25/2012 – Plaintiffs Second Amended Complaint

11/21/2012 – MIWD Motion to Dismiss

**Kennedy v. MI Windows and Doors, Inc.**

04/09/2012 – MIWD Motion to Dismiss Complaint

08/14/2012 – MIWD Motion to Dismiss Class Action Complaint

08/24/2012 – Plaintiff Motion for Leave to Amend

09/06/2012 – MIWD Response in Opposition to Motion for Leave

09/12/2012 – Plaintiff Reply to Response

10/03/2012 – Plaintiff Amended Class Action Complaint

10/18/2012 – MIWD Motion to Dismiss

11/05/2012 – Plaintiff Response in Opposition to Motion to Dismiss

11/16/2012 - MIWD Reply to Response to Motion to Dismiss

11/26/2012 - Plaintiff Motion to File Sur Reply

01/03/2013 -  Plaintiff Sur Reply to Reply

02/13/2013 -  Plaintiff Second Amended Class Action Complaint

02/27/2013 – MIWD Motion to Dismiss

03/18/2013 – Plaintiff Response in Opposition to Motion to Dismiss

03/28/2013 – MIWD Reply to Response to Motion to Dismiss

09/04/2013 – Plaintiff Motion for Leave to File Amended Complaint

*Deem v. MI Windows and Doors, Inc.*

07/05/2012 – MIWD Motion to Dismiss

07/10/2012 – Plaintiff Motion to Stay

07/24/2012  - MIWD Response to Motion to Stay

07/31/2012 – Plaintiff Reply to Response to Motion to Stay

08/14/2012 – MIWD Reply to Response to Motion to Dismiss

01/17/2013 – MIWD Motion for Judgment on Pleadings

02/04/2013 – Plaintiff Response in Opposition to Motion for Judgment

02/14/2013 – MIWD Brief in Support of Motion for Judgment

02/20/2013 – Plaintiff Motion for Leave to File Amended Complaint

03/11/2013 – MIWD Response in Opposition to Motion for Leave

03/19/2013 – Plaintiff Reply to Response to Motion for Leave

06/17/2013 – Plaintiff Motion for Protective Order

07/08/2013 – Plaintiff Amended Complaint

07/08/2013 – MIWD Response in Opposition to Motion for Protective Order

07/16/2013 – Plaintiff Reply to Response to Motion for Protective Order

07/22/2013 – MIWD Motion to Dismiss Amended Complaint

**McGaffin v. MI Windows and Doors, Inc.**

10/24/2012 – MIWD Motion to Dismiss

11/13/2012 – Plaintiff Response to Motion to Dismiss

11/26/2012 – MIWD Reply to Response to Motion to Dismiss

01/10/2013 – Plaintiff Amended Class Action Complaint

01/24/2013 – MIWD Motion to Dismiss

02/11/2013 – Plaintiff Response in Opposition to Motion to Dismiss

02/22/2013 – MIWD Reply in Support of Motion to Dismiss

04/22/2013 – Plaintiff Second Amended Class Action Complaint

05/20/2013 – MIWD Motion to Dismiss

06/06/2013 – Plaintiff Response in Opposition to Motion to Dismiss

06/17/2013 – MIWD Reply to Response to Motion to Dismiss

06/24/2013 – Plaintiff Motion for Leave to File Sur Reply

07/11/2013 – MIWD Response in Opposition to Motion for Leave

**Taylor v. MI Windows and Doors, Inc.**

02/01/2013 – MIWD Motion to Dismiss

02/19/2013 – Plaintiff Response to Motion to Dismiss

02/26/013 – MIWD Brief in Support of Motion to Dismiss

**Lovingood v. MI Windows and Doors, Inc.**

02/08/2013 – MIWD Motion to Dismiss

02/21/2013 – Plaintiff First Amended Complaint

02/21/2013 – Plaintiff Response in Opposition to Motion to Dismiss

03/07/2013 – MIWD Motion to Dismiss First Amended Complaint

04/15/2013 – Plaintiff Response in Opposition to Motion to Dismiss

***Womack v. MI Windows and Doors, Inc.***

04/12/2013 – MIWD Motion to Dismiss

04/29/2013 – Plaintiff Response in Opposition to Motion to Dismiss

05/15/2013 – MIWD Reply in Support of Motion to Dismiss

***Zepeda v. MI Windows and Doors, Inc.***

04/12/2013 – MIWD Motion to Dismiss

05/28/2013 – Plaintiff Motion for Leave to File Amended Complaint

06/04/2013 – Plaintiff Response in Opposition to Motion to Dismiss

06/14/2013 – MIWD Response in Opposition to Motion for Leave

06/18/2013 – Plaintiff Reply in Support of Motion for Leave

***Oriolt v. MI Windows and Doors, Inc.***

04/29/2013 – MIWD Motion to Dismiss

05/29/2013 – Plaintiff Motion for Leave to File Amended Complaint

06/04/2013 – MIWD Brief in Support of Motion to Dismiss

06/12/2013 – Plaintiff Brief in Support of Motion for Leave

06/12/2013 – Plaintiff Response in Opposition to Motion to Dismiss

06/24/2013 – MIWD Response in Opposition to Motion for Leave

07/01/2013 – Plaintiff Reply to Response to Motion for Leave

07/23/2013 – MIWD Reply to Response to Motion to Dismiss

***Reed  v. MI Windows and Doors, Inc.***

07/08/2013  – MIWD Motion to Dismiss

08/27/2013 – Plaintiffs Response in Opposition to Motion to Dismiss

14

*Reed  v. MI Windows and Doors, Inc.*

      0/12/2013  – MIWD Motion to Dismiss

*Kruger  v. MI Windows and Doors, Inc.*

      07/22/2013  – MIWD Motion to Dismiss

      08/15/2013 – Plaintiffs Amended Complaint

      08/28/2013 – Motion to Dismiss

      18.      Thereafter, Plaintiffs' Counsel participated in oral argument on the following cases:

*Johnson v. MI Windows and Doors, Inc.*

      09/27/2011 – Hearing on Motions

      03/08/2012 – Hearing on Motions

      05/17/2012 – Hearing on Motions

      09/18/2012 – Hearing on Motion to Dismiss

      09/21/2012 – Hearing on Motion for Joinder

      03/27/2013 – Hearing on Motions for Protective Orders

*DeBlaker v. MI Windows and Doors, Inc.*

      09/20/2012 -   Hearing

      03/27/2013 – Hearing

*Meifert v. MI Windows and Doors, Inc.*

      09/18/2012 – Hearing on Motion to Dismiss

*Kennedy v. MI Windows and Doors, Inc.*

      09/19/2012 – Hearing on Motion to Dismiss

*Deem v. MI Windows and Doors, Inc.*

      09/18/2012 – Hearing on Motion to Dismiss

19.     In addition, discovery was hotly contested, so much so that Class Counsel was required to draft, file, and argue three or more motions to compel, as well as draft responses in opposition to MIWD's motions to compel.[2]  Similarly, the polarized discovery process behooved and resulted in motions for protective orders, and motions to reconsider prior rulings by Judge David Norton.

## THE CLASS SETTLEMENT

### a.    History of Negotiations

20.     The parties reached the Agreement after several years of hard-fought litigation described above. Every issue and virtually every word in the Agreement and numerous exhibits were hotly contested and negotiated.

21.     The Agreement was negotiated at arm's length by experienced counsel on both sides, who are fully versed in complex class action litigation, particularly with respect to consumer and product defect litigation.

22.     Settlement negotiations began about two years into the proceedings and were prolonged, encompassing multiple meetings over the course of two years. The parties met in Miami, Florida on December 19, 2012, to explore whether negotiations would be worthwhile. The parties again met in Charleston, in January, 2013, to discuss the parties' relative positions and start to consider a framework of a resolution of the lawsuit that would be mutually acceptable.[3]  Over the course of the next 24 months, the parties met approximately once a month

---

[2] March 6, 2012; November 16, 2012; March 19, 2013; March 29, 2013; April 5, 2013; and April 12, 2013.
[3] Representatives of the PSC, including Lead Counsel, met with MIWD regarding potential settlement on the following dates:  August 7, 2013; September 4, 2013; September 5, 2013; October 9, 2013.

in-person, and much more frequently by telephone, to negotiate the terms of the Settlement.[4]  In the Spring of 2013, the Court  appointed Professor Erik Green as the mediator. After an initial two-day mediation in Charleston on May 5-6, 2013, with Professor Green, the Plaintiffs believed they had reached substantial agreement with MIWD, only to reach a subsequent impasse. Subsequently, the Court appointed Magistrate Judge Hendricks to further mediate the case. The parties continued to negotiate with the assistance of Magistrate Judge Bruce Howe Hendricks, who participated in four mediation sessions. An executed Memorandum of Understanding ("MOU") was entered on October 9, 2013. After entering into the MOU, the parties negotiated attorneys' fees and costs.  Mediator Tom Willis facilitated several of these mediations. As a result of this lengthy mediation and arms-length negotiations, and an additional six months spent negotiating the formal settlement documents, claims process, and other important documents necessary to implement the settlement, the parties have arrived at the Settlement that is now before the Court.  The Settlement was granted preliminary approval on February 27, 2015.

23.    In the course of reaching the Settlement, the parties concluded that a nationwide settlement, encompassing claims of similarly situated homeowners from across the country was an appropriate resolution.  As such, the parties resolved to file and did file an Amended Complaint that would encompass all the windows ("MIWD Product") and claims that the parties had agreed to settle.

---

[4] Representatives of the PSC, including Lead Counsel, met with MIWD regarding the settlement agreement and supporting documentation, which was comprehensive, on the following dates:  November 12, 2013; December 16, 2013; January 16, 2014; February 24, 2014; March 19, 2014; May 9, 2014; July 21, 2014; July 22, 2014; August 14, 2014; September 29, 2014; November 6, 2014; November 7, 2014.

b.      **Settlement Benefits**

24.     The settlement benefits are consistent with the goals of the class based on their claims in the *DeBlaker, Johnson, Hildebrand* and other actions, namely, for monetary compensation and repairs to their MIWD Product, upon submission of a valid claim.

25.     Defendant will provide repair and compensatory relief to Homeowner Settlement Class Members who qualify under the terms of the Agreement. The Settlement establishes a claims process and offers the following relief:

**Homeowner Settlement Class A Benefits**

26.     **Repair Relief**: Class A Eligible Members (who are current Homeowners with Windows who have one or more instances of Eligible Consequential Water Staining or Water Damage) may file a repair Claim for each Window that has an Identifiable Condition(s):

    a)    Visible Residue Line: Except as provided directly below (1 and 2), MIWD shall Cap Seal (repair with sealant) or supply a New Sash (at MIWD's option) for each Window with a Visible Residue Line:

        a.    However, each MIWD Window demonstrating Consequential Water Staining or Water Damage **will receive** a sash replacement.

        b.    Additionally, Class A Eligible Members who have at least one Window with a Visible Residue Line and resulting Consequential Water Damage can choose to buy additional New Sashes at $35 per sash (inclusive of shipping) for each additional Window that demonstrates a Visible Residue Line without Consequential Water Damage. This sash price is at or below MIWD's cost to manufacture and ship the sash.

    b)    Staining at upstand leg joint (bottom corners of window frame), leaking at upstand leg joint, or unsealed upstand leg joint (sill joints): MIWD will Repair With Sealant each Window.

    c)    Water penetration through Window glazing of picture, fixed, or other non-operable Windows: MIWD will Cap Seal each Window with water penetration through Window glazing.

    d)    Interior water penetration through a horizontal or vertical mullion between windows: MIWD will Repair With Sealant each mullion with interior water penetration.

During the process of making repairs to any Window with an Identifiable Condition, MIWD will replace any failed insulated glass unit ("IGU") through sash replacement or reglazing. All repairs and replacements listed in Paragraphs a) through d) above are warranted for two years from the date of repair or shipment of replacement part(s) or, in the case of Original Homeowners who have not received a Consequential Damage Payment, the balance of the Original Express Written Warranty, whichever is longer. The terms of this warranty are set forth in the Settlement Agreement.

27.    **Consequential Damage Compensation**: Class A Eligible Members (who are current Homeowners with Windows who have one or more instances of Eligible Consequential Water Staining or Water Damage) may file a Claim for one of the following Consequential Damage Compensation payments per Affected Property:

    a)    $250 for Consequential Water Staining at up to two separate openings; or

    b)    $500 for: (1) Consequential Water Staining at three or more separate openings or (2) Consequential Water Damage resulting in Degradation of Building Materials (i.e., more than just staining to finishes) that are within eight (8) inches of the Window sill at a single Window; or

    c)    Up to $2,500 for Extensive Consequential Water Damage resulting in Degradation of Building Materials commencing within and extending more than eight (8) inches beyond the Window sill at a single Opening, or Degradation of Building Materials within eight (8) inches of the Window sill in seven (7) or more Openings. Eligibility for this relief requires submission of Photographic Proof or Video Proof demonstrating Extensive Consequential Water Damage, an estimate from a Qualified Contractor, and a Qualified Contractor causation statement establishing that the Extensive Consequential Water Damage is Reasonably Attributable to an Identifiable Condition.

### Homeowner Settlement Class B Benefits

28.    Class B Eligible Members (who are current Homeowners with Windows that have Visible Residue Lines without any Eligible Consequential Water Staining or Water Damage at any Window) may file a Claim as follows: For each Window evidencing a Visible Residue Line, Class B Eligible Members may file a Claim for a repair (by Cap Seal, re-glazing, or a New Sash, at MIWD's option), with a two year warranty on the repair measured from the date of repair or shipment of the New Sash, or, in the case of Original Homeowners, the balance of the Original Express Written Warranty, whichever is longer.

### Homeowner Settlement Class C Compensatory Benefits

29.    Class C Eligible Members may file a Claim for reimbursement for prior repair of Consequential Water Damage up to $1,250 per Affected Property. Claimants can participate in Class C recovery in addition to Class A or Class B recovery (file a Claim for both categories) provided they do not receive a double recovery on any condition or damage. Total Consequential Damage Compensation per Affected Property shall not exceed $3,750 ($1,250 + $2,500).

**c.    Settlement Conclusions**

30.    As can be seen from the history of the case, the Settlement is based upon an extensive factual record, and discovery was vigorously obtained by Class Counsel prior to reaching the terms of the Settlement. These discovery efforts allowed the parties to assess the merits of their respective positions and to reach an equitable Settlement Agreement. Class Counsel also researched the applicable laws as applied to the facts discovered and the claims and defenses asserted.

31.    Considerable time was expended drafting the Settlement Agreement, which ensures that Class Members were provided with the best practicable notice of the Settlement

Agreement and its terms, including the fairest possible claims process, a simplified claim form, and an appeals process.

32.    To reach the Agreement, Class Counsel relied on their substantial litigation experience in similar class actions involving allegedly defective construction products, and their analysis of the legal and factual issues presented in this case. Plaintiffs' liability and damages calculation was premised upon a careful and extensive review of the discovery obtained from MIWD and other relevant witnesses.

33.    In the opinion of the Plaintiffs' Steering Committee, the Agreement provides for a reasonable recovery to Class Members, and confers a substantial monetary benefit to Class Members who submit valid claim forms. I further believe the value of the settlement in total is in excess of $100 million.

34.    Although Class Counsel have always believed that Plaintiff's claims have merit, parties to the litigation process always face a significant risk of adverse result, or partially adverse result. Continued litigation would require substantial additional preparation and discovery, including the deposition and presentation of numerous witnesses; the consideration, preparation, and presentation of evidence; and the preparation and analysis of extensive and expensive expert reports. The Settlement and proposed Agreement with MIWD is fair, reasonable, adequate, and in the best interests of the Class as it will yield a prompt, certain, and substantial monetary benefit for Class Members who submit valid claim forms. Such a result will benefit both the parties and the Court.

35.    Given the risk, uncertainty, and expense of continued litigation though a decision on class certification, as well as summary judgment, trial, and appeals, Class Counsel believes

that the Settlement justified sending notice to Class Members, so that they would have a chance to consider the Settlement for themselves.

36.    Pursuant to the Notice Plan approved by the Court in its Preliminary Approval Order, Settlement Class members could object to the Settlement if they believed that it was not fair and reasonable or could exclude themselves form the Settlement altogether so they could pursue their own individual claim.

37.    All of the negotiations between Class Counsel and MIWD were at arm's-length and were vigorously argued.

38.    Each side is represented by extremely well qualified counsel. The parties often disagreed about the alleged defect, its manifestation, the sufficiency of the warranty, the robustness of the warranty claim process, and the scope and type of remediation required and at what threshold, all requiring lengthy negotiations to advance the process to conclusion.

39.    All of the above described work was reasonable and necessary to the prosecution of the settlement. Class Counsel collectively conducted significant factual investigation prior to and during the prosecution of this Action. Through this comprehensive evaluation of the facts and law, Class Counsel were able to settle this case for substantial relief to class members.

40.    Class Counsel achieved this result in a very timely and efficient manner, providing Settlement Class members with substantial and certain relief much sooner than if this matter had been extensively litigated.

## RESPONSIBILITIES OF LEAD COUNSEL

**a.    Work Assignments**

41.    WBM performed legal services on behalf of Plaintiffs and the Settlement Class in furtherance of the litigation and this Settlement.

42.     WBM served in this litigation as court-appointed Lead Counsel.

43.     As set forth in CMO 1, Lead Counsel has overseen the work that has been performed on behalf of Plaintiffs and the Settlement Class by Class Counsel. Lead Counsel cooperated to make and divide assignments, avoid duplication of effort and unnecessary expense, and accomplish tasks in an efficient manner. This is reflected by the current lodestars and expenses of the firms in this Action. Lead Counsel managed the day-to-day aspects of this Action and oversaw the completion of important tasks. Lead Counsel also assigned work to the other firms comprising Class Counsel when deemed appropriate.

44.     This case has been fairly prosecuted by Class Counsel and vigorously defended by counsel for MIWD, K&L Gates, LLP, and Turner Padget.

45.     To date, Class Counsel has received no compensation for their efforts to investigate, bring and prosecute this Action since its inception in 2010, and has received no reimbursement for the expenses they have incurred. Numerous firms filed cases that were transferred to this MDL. However, Lead Counsel oversaw the litigation and settlement of this Action in an efficient and streamlined manner in an attempt to avoid duplication of work and employ effective collaboration.

46.     As settlement administration is ongoing, and the Claims Submission Dates ranging from 180 - 240 days, I estimate that the cost to Class Counsel post-settlement will be the equivalent of $200,000 in attorney and paralegal time, plus $30,000 in unreimbursed expenses, due to need to work with the Claims Administrator, communicate with Settlement Class members, and review and prepare reports for the Court.

**b.**    <u>Time and Expense Reporting</u>

47.    Related to the work assignments and pursuant to CMO 1, WBM, as Lead Counsel, required quarterly submission of time and expense reports. WBM has maintained contemporaneous firm records on a quarterly basis throughout the course of this litigation, and has continuously reviewed and monitored the work put into this litigation by each firm and the costs they have incurred.

**ATTORNEYS' FEES AND EXPENSES**

**a.**    <u>Fees</u>

48.    Nine law firms performed legal work for the Homeowner Plaintiffs in this litigation. In total, the firms collectively worked 20,991.49 hours, generating a fee (calculated using South Carolina Rates) of $8,140,648.50 as reflected in the chart below.

| Law Firm | Total Hours Expended | Cumulative Lodestar |
|---|---|---|
| Whitfield Bryson & Mason LLP | 5584.19 | $ 2,337,712.75 |
| The Lucey Law Firm | 9528.85 | $ 3,013,427.50 |
| Parker Waichman, LLP | 1352.75 | $ 756,787.50 |
| Climaco Wilcox Peca Tarantino & Garofoli Co., LPA | 1179.25 | $ 444,800.00 |
| Shepherd Finkelman Miller & Shah, LLP | 787.90 | $ 415,065.00 |
| Neblett Beard & Arsenault | 528.30 | $ 190,095.00 |
| Oliver Law Firm | 487.10 | $ 217,440.75 |
| Childress Duffy | 249.00 | $ 107,025.00 |
| Seeger Weiss, LLP | 1294.15 | $ 658,295.00 |
| **Total** | 20991.49 | $ 8,140,648.50 |

49.    The hourly rates in the following table are the current usual and customary rates in South Carolina for each individual based on their experience and years of practice, and are in line with the prevailing rates in South Carolina for similar services by attorneys of reasonable comparable skill, experience and reputation who handle complex class action litigation in federal courts. A summary breakdown of these rates is set forth in the table below.

24

| **Position** | **Rate (Per Hour)** |
|---|---|
| Partner | $600 |
| Associates | $300 |
| Of Counsel | $300 |
| Paralegals | $125 |
| Law Clerks | $125 |

50.     A detailed breakdown of each firm's lodestar using South Carolina rates is set forth below:

## Whitfield Bryson & Mason LLP

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2012 | 444.74 | 432.65 | | 88.10 | 2.80 | 968.29 |
| Third Quarter 2012 | 247.50 | 137.70 | 23.50 | 36.95 | | 445.65 |
| Fourth Quarter 2012 | 153.50 | 244.80 | | 48.10 | | 446.40 |
| First Quarter 2013 | 231.05 | 546.20 | 103.75 | 119.00 | | 1000.00 |
| Second Quarter 2013 | 270.10 | 396.90 | 8.00 | 96.70 | | 771.70 |
| Third Quarter 2013 | 212.00 | 235.10 | | 84.70 | | 531.80 |
| October 16 2013 | 39.50 | 41.25 | | 5.50 | | 86.25 |
| October 17 2013 - Jan 16 2014 | 100.25 | 37.25 | 1.00 | 2.30 | | 140.80 |
| Jan 17 2014 - Feb 23 2014 | 71.60 | | | 4.00 | | 75.60 |
| Feb 24 2014 - Mar 17 2014 | 31.50 | | | 15.30 | | 46.8 |
| Mar 18 2014 - Apr 15 2014 | 61.00 | | | 0.80 | | 61.8 |
| Apr 16 2014 - May 8 2014 | 108.00 | | | 1.20 | | 109.2 |
| May 9 2014 - June 30 2014 | 75.50 | | | | | 75.50 |
| Third Quarter 2014 | 184.25 | 52.80 | | | | 237.05 |
| Fourth Quarter 2014 | 131.75 | 25.25 | | 12.85 | | 169.85 |
| First Quarter 2015 | 142.80 | 21.25 | | 53.45 | | 217.50 |
| April 2015 | 60.00 | 100.00 | | 40.00 | | 200.00 |
| | | | | | | |
| Total | 2565.04 | 2271.15 | 136.25 | 608.95 | 2.80 | 5584.19 |
| | x 600 | x 300 | x 300 | x 125 | x 125 | |
| | $ 1,539,024.00 | $ 681,345.00 | $ 40,875.00 | $ 76,118.75 | $ 350.00 | $ 2,337,712.75 |

## The Lucey Law Firm

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 364.80 | 996.55 | | 401.65 | | 1763.00 |
| Third Quarter 2012 | 218.50 | 386.90 | | 431.45 | | 1036.85 |
| Fourth Quarter 2012 | 229.90 | 462.25 | | 424.45 | | 1116.60 |
| First Quarter 2013 | 284.60 | 555.10 | | 737.65 | | 1577.35 |
| Second Quarter 2013 | 420.00 | 865.80 | | 686.75 | | 1972.55 |
| Third Quarter 2013 | 192.90 | 460.35 | | 301.25 | | 954.50 |
| Fourth Quarter 2013 | 94.30 | 51.20 | | 49.50 | | 195.00 |
| First Quarter 2014 | 71.50 | 60.40 | | 74.25 | | 206.15 |
| Second Quarter 2014 | 68.10 | 41.50 | | 24.00 | | 133.60 |
| Third Quarter 2014 | 103.00 | 3.90 | | 13.00 | | 119.90 |
| Fourth Quarter 2014 | 142.60 | 0.10 | | 7.00 | | 149.70 |
| First Quarter 2015 | 155.30 | | | 48.35 | | 203.65 |
| April 2015 | 60.00 | | | 40.00 | | 100.00 |
| Total | 2405.50 | 3884.05 | 0.00 | 3239.30 | | 9528.85 |
| | x 600 | x 300 | | x 125 | | |
| | $ 1,443,300.00 | $ 1,165,215.00 | | $404,912.50 | | $ 3,013,427.50 |

## Parker Waichman, LLP

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 235.10 | | | 22.80 | | 257.90 |
| Third Quarter 2012 | 159.80 | | | 8.60 | | 168.40 |
| Fourth Quarter 2012 | 153.90 | 42.40 | | 4.30 | | 200.60 |
| First Quarter 2013 | 248.40 | | | 17.10 | | 265.50 |
| Second Quarter 2013 | 212.15 | 36.90 | | 9.90 | | 258.95 |
| Third Quarter 2013 | 128.10 | 4.30 | | | | 132.40 |
| Fourth Quarter 2013 | 41.00 | | | | | 41.00 |
| January 2014 | 28.00 | | | | | 28.00 |
| | | | | | | |
| Total | 1206.45 | 83.60 | 0.00 | 62.70 | 0.00 | 1352.75 |
| | x 600 | x 300 | | x 125 | | |
| | $ 723,870.00 | $ 25,080.00 | | $ 7,837.50 | | $ 756,787.50 |

## Climaco Wilcox Peca Tarantino & Garofoli Co., LPA

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 68.50 | 113.25 | 3.00 | 36.00 | | 220.75 |
| Third Quarter 2012 | 97.50 | 84.25 | | 50.00 | | 231.75 |
| Fourth Quarter 2012 | 36.50 | 96.25 | | 32.75 | | 165.50 |
| First Quarter 2013 | 45.50 | 116.25 | | 29.00 | | 190.75 |
| Second Quarter 2013 | 102.75 | 129.00 | | | | 231.75 |
| Third Quarter 2013 | 35.50 | 81.50 | | 8.25 | | 125.25 |
| Fourth Quarter 2013 | 6.50 | 3.25 | | 3.75 | | 13.50 |
| First Quarter 2015 | 1.25 | | | 3.25 | | |
| Total | 394.00 | 623.75 | 3.00 | 163.00 | 0.00 | 1179.25 |
| | x 600 | x 300 | x300 | x125 | | |
| | $236,400.00 | $187,125.00 | $ 900.00 | $ 20,375.00 | | $444,800.00 |

## Shepherd Finkelman Miller & Shah, LLP

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 154.60 | 68.20 | | 40.60 | | 263.40 |
| Third Quarter 2012 | 144.80 | | | 3.90 | | 148.70 |
| Fourth Quarter 2012 | 85.00 | 3.00 | | 5.50 | | 93.50 |
| First Quarter 2013 | 77.20 | 1.40 | | 0.60 | | 79.20 |
| Second Quarter 2013 | 106.30 | 21.80 | | 6.40 | | 134.50 |
| Third Quarter 2013 | 55.50 | | | 4.50 | | 60.00 |
| Fourth Quarter 2013 | 7.80 | | | 0.30 | | 8.10 |
| Jan 1 2014 - Feb 24 2014 | 0.50 | | | | | 0.50 |
| | | | | | | |
| Total | 631.70 | 94.40 | 0.00 | 61.80 | 0.00 | 787.90 |
| | x 600 | x 300 | | x125 | | |
| | $ 379,020.00 | $28,320.00 | | $ 7,725.00 | | $ 415,065.00 |

## Neblett Beard & Arsenault

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 3.60 | 20.80 | | | | 24.40 |
| Third Quarter 2012 | 35.95 | 87.70 | | | | 123.65 |
| Fourth Quarter 2012 | 18.25 | 18.40 | | | | 36.65 |
| First Quarter 2013 | 11.05 | 139.90 | | | | 150.95 |
| Second Quarter 2013 | 31.00 | 154.00 | | | | 185.00 |
| Third Quarter 2013 | 5.50 | 1.90 | | | | 7.40 |
| Fourth Quarter 2013 | | 0.25 | | | | 0.25 |
| | | | | | | |
| Total | 105.35 | 422.95 | 0.00 | 0.00 | 0.00 | 528.30 |
| | x 600 | x 300 | | | | |
| | $ 63,210.00 | $ 126,885.00 | | | | $190,095.00 |

## Oliver Law Firm

|  | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 48.90 | | | 5.20 | 16.10 | 70.20 |
| Third Quarter 2012 | 100.79 | | | 2.74 | 22.41 | 125.94 |
| Fourth Quarter 2012 | 28.40 | 1.90 | | 0.70 | 4.90 | 35.90 |
| First Quarter 2013 | 40.25 | 21.11 | | 3.80 | 22.10 | 87.26 |
| Second Quarter 2013 | 91.60 | 2.70 | | 43.80 | 12.10 | 150.20 |
| Third Quarter 2013 | 2.50 | 14.40 | | 0.10 | | 17.00 |
| Fourth Quarter 2013 | | 0.60 | | | | 0.60 |
| Jan 2014 - March 2015 | 1.70 | | | | | |
| | | | | | | |
| Total | 314.14 | 40.71 | 0.00 | 56.34 | 77.61 | 487.10 |
| | x 600 | x 300 | | x 125 | x 125 | |
| | $ 188,484.00 | $12,213.00 | | $ 7,042.50 | $ 9,701.25 | $ 217,440.75 |

## Childress Duffy

|  | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2013 | 11.00 | | | 7.50 | | 18.50 |
| Third Quarter 2012 | 34.50 | 11.00 | | 19.00 | 27.75 | 92.25 |
| Fourth Quarter 2012 | 32.00 | 21.00 | | 8.25 | | 61.25 |
| First Quarter 2013 | 23.50 | | | 2.25 | | 25.75 |
| Second Quarter 2013 | 40.50 | | | 0.50 | | 41.00 |
| Third Quarter 2013 | 6.50 | | | 3.75 | | 10.25 |
| | | | | | | |
| Total | 148.00 | 32.00 | 0.00 | 41.25 | 27.75 | 249.00 |
| | x 600 | x 300 | | x 125 | x 125 | |
| | $ 88,800.00 | $ 9,600.00 | | $ 5,156.25 | $ 3,468.75 | $ 107,025.00 |

**Seeger Weiss, LLP**

| | Partner | Associate | Of Counsel | Paralegal | Law Clerk | Total |
|---|---|---|---|---|---|---|
| Inception - June 30, 2012 | | | | | | 0.00 |
| Third Quarter 2012 | 154.00 | 54.50 | | | | 208.50 |
| Fourth Quarter 2012 | 208.50 | 48.45 | | 7.00 | | 263.95 |
| First Quarter 2013 | 193.50 | 215.80 | | 8.00 | | 417.30 |
| Second Quarter 2013 | 197.00 | 10.60 | | 3.50 | | 211.10 |
| Third Quarter 2013 | 61.00 | 11.40 | | 3.00 | | 75.40 |
| Fourth Quarter 2013 | 47.00 | | | | | 47.00 |
| First Quarter 2014 | 50.00 | | | | | 50.00 |
| April - September 2014 | 2.00 | 0.40 | | 0.50 | | 2.90 |
| | | 18.00 | | | | 18.00 |
| Total | 913.00 | 359.15 | 0.00 | 22.00 | 0.00 | 1294.15 |
| | x 600 | x 300 | | x 125 | | |
| | $ 547,800.00 | $107,745.00 | | $ 2,750.00 | | $ 658,295.00 |

**b.    Expenses**

51.    In total, Plaintiffs' attorneys incurred a total of $899,395.97 in expenses in connection with the prosecution of this litigation. The expenses pertaining to this case are reflected in the books and records of each firm. These books and records are prepared from expense vouchers, check records, and other documents and are an accurate record of the expenses. They are broken down by firm as follows:

| Law Firm | Expenses | |
|---|---|---|
| Whitfield Bryson & Mason LLP | $ | 124,494.34 |
| The Lucey Law Firm | $ | 237,796.47 |
| Parker Waichman, LLP | $ | 92,836.10 |
| Climaco Wilcox Peca Tarantino & Garofoli Co., LPA | $ | 77,164.04 |
| Shepherd Finkelman Miller & Shah, LLP | $ | 71,888.36 |
| Neblett Beard & Arsenault | $ | 82,129.33 |
| Oliver Law Firm | $ | 68,658.26 |
| Childress Duffy | $ | 62,832.10 |
| Seeger Weiss, LLP | $ | 81,596.97 |
| **Total** | $ | 899,395.97 |

52.     A detailed breakdown of the expenses incurred by each firm is set forth below:

**Whitfield Bryson & Mason LLP**

| | | |
|---|---|---|
| Litigation Fund Assessments | $ | 57,500.00 |
| Expert Fees | $ | 7,493.02 |
| Travel and Related Expenses | $ | 53,829.93 |
| Court Copies | $ | 2,317.48 |
| Filing Fees | $ | 800.00 |
| Research | $ | 1,916.57 |
| Postage | $ | 222.71 |
| Meals | $ | 414.63 |
| Total | $ | 124,494.34 |

**The Lucey Law Firm**

| | | |
|---|---|---|
| Litigation Fund Assessments | $ | 57,500.00 |
| Expert Fees | $ | 65,293.57 |
| Legal Fees | $ | 1,087.91 |
| Mediation Fees | $ | 8,104.59 |
| Contractor Fees - Site Inspections | $ | 11,849.40 |
| Supplies - Site Inspections | $ | 8,802.58 |
| Court Reporter Fees | $ | 1,950.35 |
| Court Copies | $ | 2,604.40 |
| Filing and Process Server Fees | $ | 607.00 |
| Federal Express / Delivery Services | $ | 2,711.41 |
| Outside Production Charges | $ | 9,220.75 |
| Postage | $ | 122.06 |
| Research | $ | 12,599.01 |
| Travel and Related Expenses | $ | 54,742.57 |
| Meals | $ | 600.87 |
| | | |
| Total | $ | 237,796.47 |

## Parker Waichman, LLP

| | |
|---|---|
| Litigation Fund Assessments | $ 57,500.00 |
| Expert Fees | $ 9,371.18 |
| Court Fees | $ 1,050.00 |
| Process Server Fees | $ 80.00 |
| Federal Express | $ 37.43 |
| Copying Charges | $ 2,340.50 |
| Postage | $ 342.80 |
| Travel and Related Expenses | $ 22,114.19 |
| Total | $ 92,836.10 |

## Climaco Wilcox Peca Tarantino & Garofoli Co., LPA

| | |
|---|---|
| Litigation Fund Assessments | $57,500.00 |
| Copying Charges | $ 312.40 |
| Court Copies | $ 201.62 |
| Federal Express | $ 18.21 |
| Long Distance | $ 418.71 |
| Postage | $ 17.23 |
| Research | $ 1,305.40 |
| Travel and Related Expenses | $17,390.47 |
| Total | $77,164.04 |

## Shepherd Finkelman Miller & Shah, LLP

| | |
|---|---|
| Litigation Fund Assessments | $ 57,500.00 |
| Filing Fees | $ 350.00 |
| Process Server Fees | $ 75.00 |
| Copying Charges | $ 438.00 |
| Postage / Overnight Deliveries | $ 124.06 |
| Telephone / Internet Charges | $ 156.34 |
| Travel and Related Expenses | $ 13,244.96 |
| Total | $ 71,888.36 |

## Neblett Beard & Arsenault

| | |
|---|---:|
| Litigation Fund Assessments | $ 57,500.00 |
| Court Filings and Service Fees | $ 20.00 |
| Research | $ 7.90 |
| Long Distance / Conference Calls | $ 150.68 |
| Travel and Related Expenses | $ 24,450.75 |
| | |
| Total | $ 82,129.33 |

## Oliver Law Firm

| | |
|---|---:|
| Litigation Fund Assessments | $ 57,500.00 |
| Filing Fees | $ 350.00 |
| Process Server Fees | $ 55.00 |
| Copying Charges | $ 0.40 |
| Telephone / Conference Calls | $ 38.59 |
| Postage / Overnight Delivery | $ 55.44 |
| Research | $ 12.50 |
| Travel and Related Expenses | $ 10,646.33 |
| | |
| Total | $ 68,658.26 |

## Childress Duffy

| | |
|---|---:|
| Litigation Fund Assessments | $ 57,500.00 |
| Copying Charges | $ 5.60 |
| Court Copies | $ 35.98 |
| Federal Express | $ 257.52 |
| Research | $ 685.78 |
| Travel and Related Expenses | $ 4,347.22 |
| | |
| Total | $ 62,832.10 |

**Seeger Weiss, LLP**

| | |
|---|---|
| Litigation Fund Assessments | $57,500.00 |
| Copying Charges | $    17.75 |
| Federal Express | $    25.88 |
| Process Server | $    90.00 |
| Research | $   401.56 |
| Telephone / Fax | $    76.49 |
| Travel and Related Expenses | $23,395.16 |
| Miscellaneous | $    90.13 |
| | |
| Total | $81,596.97 |

53.      Pursuant to the settlement agreement, MIWD agreed to not object to fees and expenses for Homeowner Plaintiffs' counsel in an amount not to exceed $8,000,000.[5] Unfortunately for Plaintiffs' counsel, the total of the fees or "lodestar" ($8,140,648.50) and expenses ($899,395.97) exceed this amount by $1,061,035.96 ($8,140,648.50 + $899,395.97 = $9,061,035.96). Of course, this does not allow for any multiplier for Homeowner Plaintiffs' counsel, which, is particularly disappointing given the extreme risk associated with the case and the possibility that there would be no recovery.

54.      Therefore, Plaintiffs seek an award of $8,000,000, consisting of $899,395.97 in expense reimbursement and $7,100,604.03 in attorney fees.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

---

[5] *See* Stipulation of Class Action Settlement and Release, Section P(2).

Executed on Tuesday, April 28, 2015.

/s/ Daniel K. Bryson
Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, North Carolina
(919) 600-5000
dan@wbmllp.com

Lead Counsel for Homeowner Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants, this 28th day of April, 2015.

_____/s/ Daniel K. Bryson_____
Daniel K Bryson
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, NC 27603
919-600-5002
Email: dan@wbmllp.com