**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: MI WINDOWS AND DOORS, INC., PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2333 |
| THIS PLEADING RELATES TO: | ) ) | |
| ALL CASES | ) ) ) ) | HON. DAVID C. NORTON |

-------------------------------------------------------------------------------------

# HOMEOWNER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

-------------------------------------------------------------------------------------

Daniel K Bryson
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, North Carolina 27603


Justin Lucey
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Mt. Pleasant, South Carolina 29464

## TABLE OF CONTENTS

Page

I.   Introduction ................................................................................................1

II.  Background ..................................................................................................3

  A.   The Pending Litigation ...................................................................3

  B.   Settlement Negotiation and Mediation ..........................................5

III. Terms of the Settlement Agreement ...........................................................6

  A.   The Settlement Class.......................................................................6

  B.   The Settlement Benefits..................................................................7

  C.   Settlement Administration and Notice............................................9

       1.   Claims Resolution Procedure................................................9
       2.   The Class Notice Program ..................................................10

  D.   Exclusion and Objection Rights....................................................11

IV.  The Settlement Warrants Final Approval ..................................................11

  A.   The Settlement Approval Process..................................................11

       1.   The Fairness of the Settlement............................................13

            a.   The Posture of the Case at the Time
                 Settlement was Proposed ...........................................13

            b.   The Extent of Discovery That Had Been Conducted..................14

            c.   The Circumstances Surrounding Negotiations ...........................14

            d.   Expertise of Class Counsel in the Class Action Field................15

       2.   The Adequacy of the Settlement...........................................16

            a.   The Relative Strength of the Plaintiffs' Case
                 on the Merits ..............................................................16

b. The Existence of Any Difficulties of Proof or Strong Defenses the Plaintiffs Were Likely to Encounter in the Event of Trial.................................17

c. The Anticipated Duration and Expense of Additional Litigation.................................18

d. The Degree of Opposition to the Settlement.............................19

  (i) The Anonymous Objection.................................20
  (ii) The Gheesling and Stein Objections.................................21
  (iii) The Winberg Objection.................................21
  (iv) The Kidnie/Boudreau Objection .................................22
  (v) The Vullings Objection.................................24

V. The Proposed Homeowner Class Should Be Certified For Purposes of Settlement.......31

 A. The Settlement Class Satisfies Rule 23(a).................................31

  1. Settlement Class Members Are Too Numerous to Be Joined.................31

  2. Plaintiffs and the Settlement Class Members Share Common Legal and Factual Questions.................................32

  3. Plaintiffs' Claims are Typical of the Settlement Class.................................33

  4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.................................33

 B. The Proposed Settlement Class Satisfies Rule 23(b).................................34

  1. Common Questions of Law and Fact Predominate .................................35

  2. Class Resolution of this Action is Superior to Other Methods of Adjudication .................................35

VI. Conclusion .................................36

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 31, 35, 36

*Amoco Oil Co.*, 211 F.R.D. 457 ................................................................................ 22

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ................................................................................ 21

*Bell Atl Corp., v. Bolger*, 2 F.3d 1304 (3rd Cir. 1993) ................................................. 19

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)................................. 35

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ................................... 19

*Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628 (D.S.C.),
*aff'd* 6 F.3d 177 (4th Cir. 1993) ................................................................................ 32

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010)................................................................................ 19

*Chatelain v. Prudential-Bache Sec,*, 805 F. Supp. 209 (S.D.N.Y. 1992) ................................... 12

*City Pshp Co. v. Atlantic Acquisition Ltd. Pshp*,
100 F.3d 1041 (1st Cir. 1996)................................................................................ 28

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006)........................................................ 33

*In re Dell Inc. Securities Litigation,* No. 06-CV-726-SS, 2010 WL 2371834
(W.D. Tex. June 11, 2010)................................................................................ 18

*Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975) ........................................................ 15

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)................................................ 33

*Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989) ........................................................ 20, 21, 22

*Gulbankian v. MW Mfrs., Inc.*, 2014 U.S. Dist. LEXIS 177668 ................................................ 26
(D. Mass. Dec. 29, 2014)

*Gunnells v. Healthplan Services, Inc.,* 348 F3d 417 (4th Cir. 2003)....................................... 35, 36

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. Cal. 1998)................................................ 25

*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211 (D. Md. 1997) .......................... 31

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*,
855 F. Supp. 825 (E.D.N.C. 1994) ....................................................... 13, 16

*Hunter v. Am. Gen. Life & Accident Ins. Co.*,
2004 U.S. Dist. LEXIS 30358  (D.S.C. Dec. 2, 2004) .............................. 32

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ...................... 12, 13

*International Woodworkers of America, Etc. v. Chesapeake Bay Plywood Corp.*,
659 F.2d 1259 (4th Cir. 1981) ............................................................... 33

*Lloyd v. GMC*, 266 F.R.D. 98 (D. Md. 2010) ........................................... 35

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F.Supp. 819 (D. Mass 1987) .......................................................... 12

*McDaniels v. Westlake Servs., LLC*, 2014 U.S. Dist. LEXIS 16081
(D. Md. Feb. 7, 2014) ........................................................................... 12

*McDonough v. Toys "R" Us, Inc.*, 2015 U.S. Dist. LEXIS 7510
(E.D. Pa. Jan. 21, 2015) ....................................................................... 31

*Melton v. Carolina Power & Light Co.*, 283 F.R.D. 280 (D.S.C. 2012) .................................... 35

*In re MicrsoStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654
(E.D. Va. 2001) .................................................................................... 16

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465
(S.D.N.Y. 1998) ................................................................................... 18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523
(C.D. Cal. 2004) .................................................................................. 28

*In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891
(E.D. La. 2012) .................................................................................... 22

*In re Serzone Prods Liab. Litig.*, 231 F.R.D. 221 (S.D. W.Va. 2005)................................... 12, 13

*Shakman v. Forest Pres. Dist.*, 2009 U.S. Dist. LEXIS 133213
(N.D. Ill. Mar. 5, 2009) ......................................................................... 26

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) ...................... 27

*Slomovic v. All for a Dollar*, 906 F. Supp. 146 (E.D.N.Y. 1995) .................................................. 18

*South Carolina Nat'l Bank v. Stone*, 749 F.Supp. 1419 (D.S.C. 1990) ...................................... 11

*South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325 (D.S.C. 1991) .......................................... 34

*Stoetzer v. United States Steel Corp.*, 897 F.2d 115 (3rd Cir. 1990) ...................................... 19

*Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505 (D.S.C. 2007) ............................. 32, 33, 34

*In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ........................................ 12

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........................................ 19

*Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*,
287 F. Supp. 2d 65 (D.D.C. 2003) ............................................................................................... 27

*Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541 (2011) .......................................................... 32

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2nd Cir. 2005) .................................... 11

*In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
No. 08-wp-6500 (N.D. Ohio, Feb. 18, 2015) ............................................................................... 18

*Whitaker v. Navy Fed. Credit Union*, 2010 WL 3928616
(D. Md. Oct. 4, 2010) ............................................................................................................ 12, 13

## Statute and Rules

Fed. R. Civ. P. Rule 23 ............................................................... 12, 22, 31, 32, 33, 34, 35, 36

## Other Authorities

American Architectural Manufacturers Association: Glossary 2013 ........................................... 27

Manual for Complex Litigation (Fourth) § 21.632, at 497 (2004) ......................................... 11, 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **IN RE MI WINDOWS AND DOORS, INC., PRODUCTS LIABILITY LITIGATION** | ) ) ) ) ) ) ) | MDL No. 2333<br><br>Hon. David C. Norton |

**HOMEOWNER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Nadine Johnson, David R. Van Such, Craig Hildebrand, Joseph DeBlaker, Mike and Janeen Meifert, Jackie Vargas Borkouski, Kerry Dewitt, Arthur and Susan Ferguson, Gregory and Kristy Kathman, Alex Krueger, Gail Loder, James Lovingood, Thomas Boettinger, John Oriolt, Jamie Reed, Patricia Lane, Larry Taylor, Jacquiline Ward, Manzoor and Sosi Wani, David Deem, John W. McCubbrey and Elizabeth D. McCubbrey, Daniel Kennedy, Charles Bradley, Jennifer and Scott McGaffin, Jessica Zepeda, Stevenson T. Womack (the "Homeowner Plaintiffs" or "Plaintiffs"), by and through Homeowner Class Counsel, respectfully submit this memorandum of law in support of their motion for final approval of the Stipulation of Class Action ("Settlement" or "Agreement") (Exhibit A to Motion) between MI Windows and Doors, LLC ("MIWD" or "Defendant") and Plaintiffs, on behalf of themselves and the Homeowner Settlement Class.[1]

## I.    INTRODUCTION

This is a putative class action alleging that tape glazed MIWD windows (hereinafter "MIWD windows" or "windows") manufactured by MIWD are defective, fail prematurely, and

---

[1] Capitalized terms in this motion correspond with the definitions of such terms set forth in the Agreement.

allow water to leak into the structures in which they are installed causing damage to property. MIWD denies all wrongdoing and liability and is prepared to vigorously defend its product if the litigation proceeds. Notwithstanding, following extensive good-faith and arm's-length negotiations between experienced counsel and under the auspices of two Court appointed respected mediators and a Magistrate Judge, the parties have agreed to settlement terms they believe will fairly resolve this action, avoid protracted, expensive and uncertain litigation, and reasonably and adequately provide effective relief for putative class members.

The Settlement establishes a claims process as to MIWD windows for 1) all Homeowners, past and present, who purchased or came into ownership of property containing MIWD Products, as well as for all persons who have a legal obligation to maintain or repair these windows; and 2) for all Contractors who, while engaged in the business of residential construction, were involved in any respect in causing MIWD's Product to be acquired and installed into Affected Property and who continue to own such Affected Property at the time of Notice. Qualifying Claimants may obtain cash payments, new sashes, repairs, and reimbursements based on the condition of the Window and the extent of damage, if any. The terms of the claims process are set forth in the Agreement and described herein.

The value of the benefits made available to the Settlement Class Members is substantial given the large numbers of windows at issue, the expansion of relief beyond what was available under the MIWD warranty, the cost of repair, and the generous payments available for consequential damage and compensatory relief. There are believed to be approximately one million class members and approximately twenty one million Windows.[2]

As further described in this memorandum, the proposed settlement terms are reasonable

---

[2] It is documented that there are approximately 21 million windows manufactured during the class period that are subject to this settlement. The class size is calculated using an industry standard of seventeen windows per residence.

and fair, the proposed Settlement Class meets all of the requirements for final certification, and the proposed class notice program is comprehensive and provides the best practicable notice under the circumstances.  Given the uncertainty of litigation and obstacles to Plaintiffs' success on the merits and the difficulties inherent in obtaining and maintaining certification of a liability or damages class for purposes of trial, the substantial benefits the Settlement provides are a very favorable result for Plaintiffs and the proposed Homeowner Settlement Class.  The Parties also recognize the expense and other potential risks of litigating a class action such as this through trial (and possible appeals) and, therefore, are amenable to resolution on the terms set forth in the Settlement.

Accordingly, Plaintiffs move this Court for an Order: (1) granting final certification of the Homeowner Settlement Class; (2) granting final approval of the proposed Settlement; and (3) entering final judgment approving the Settlement Agreement.

## II.    <u>BACKGROUND</u>

### A.    <u>The Pending Litigation</u>

MIWD manufactures and sells windows throughout the United States. The windows at issue in this case were manufactured by MIWD between July 1, 2000 and March 31, 2010 using Glazing Tape ("MIWD Product" or "MIWD's Product"). Glazing Tape is a preformed plastic tape material applied between the face of the glass panel and the window unit framing to provide resilient support between the glass and the frame to limit and otherwise impede the passage of air and water.  Plaintiffs contend that these windows suffer from a common defect resulting from the Glazing Tape, which prematurely fails, resulting in water intrusion, water penetration, and leakage at or around the glazing beads of the windows. *See* Declaration of Homeowner Plaintiffs' Lead Counsel Daniel K. Bryson in Support of Petition for Attorneys' Fees and Expenses, ¶ 4

("*Bryson Decl.*"). Plaintiffs further allege that MIWD's windows contained defects that result in a loss of seal, resulting in consequential damages to other property, including the adjoining finishes, walls, and floors.

On September 2, 2010, Plaintiff Joseph DeBlaker filed his class action in the United States District Court for the Eastern District of North Carolina. *Bryson Decl.*, ¶ 4. Soon thereafter, several other class actions were filed in South Carolina, New York, Ohio, Maryland, Michigan, Minnesota, Pennsylvania, Florida, Kansas, Virginia, West Virginia, Georgia, Illinois, and Wisconsin alleging similar claims against MIWD. On May 17, 2012, Contractor Lakes of Summerville, LLC filed its nationwide class action complaint on behalf of all Contractors in the United States District Court for the District of South Carolina. On December 5, 2011, Plaintiff Craig Hildebrand filed a motion for transfer and consolidation with the Judicial Panel on Multidistrict Litigation ("JPML"). By Order dated April 23, 2012, the JPML transferred and consolidated the related MIWD cases in the United States District Court for the District of South Carolina. *Bryson Decl.*, ¶ 6.

Throughout this litigation, the parties have engaged in vigorous motions practice. *Bryson Decl.*, ¶ 17. Among other things, MIWD sought to dismiss each of the cases filed by the representative Plaintiffs. Class Counsel briefed and argued against all of MIWD's motions to dismiss. In addition, discovery was hotly contested. Among other things, Class Counsel filed numerous motions to compel, responses in opposition to MIWD's motions to compel, motions for protective orders, and motions to reconsider prior rulings by Judge David Norton. *Bryson Decl.*, ¶ 19.

The Parties have also engaged in extensive discovery. *Bryson Decl.*, ¶¶ 9, 10. In particular, MIWD has produced thousands of documents, the parties have exchanged answers to

interrogatories, Plaintiffs have conducted depositions of MIWD's corporate representatives, a representative Plaintiff was deposed, MIWD has inspected many of the Plaintiffs' properties, and the Parties have engaged expert witnesses. *Bryson Decl.*, ¶ 10. Plaintiffs' expert witnesses inspected and tested hundreds of windows in many states. *Bryson Decl.*, ¶¶ 13, 14.

### B.    <u>Settlement Negotiation and Mediation</u>

In late 2012, the Parties began to explore the possibility of settlement. The Parties met in-person in Miami to discuss the Parties' relative positions and start to consider a framework of a resolution of the lawsuit that would be mutually acceptable. *Bryson Decl.*, ¶ 22.

Over the course of the next 24 months, the Parties met approximately once a month in-person, and more frequently by telephone, to negotiate the terms of the Settlement. *Bryson Decl.*, ¶ 22. These meetings frequently took place in Charleston, South Carolina, and meetings were also held in Miami, Florida. Several sessions were conducted with the assistance of Court-appointed Magistrate Judge Bruce Howe Hendricks,[3] Professor Eric Green, and Mediator Thomas J. Wills. *Bryson Decl.*, ¶ 22. As a result of the mediation and arms-length negotiations, the Parties have arrived at the Settlement that is now before the Court. The Settlement was granted preliminary approval on February 27, 2015. *Bryson Decl.*, ¶ 22.

Attorneys' fees and expenses, as well as Class Representative's service fees, were negotiated separate, apart, and following negotiation of the settlement benefits to the Settlement Class. Pursuant to the Settlement Agreement, MIWD agreed to not object to fees and expenses for Homeowner Plaintiffs' counsel in an amount not to exceed $8,000,000. *Bryson Decl.*, ¶ 53.

---

[3] Magistrate Judge Bruce Howe Hendricks was appointed and approved as an Article III judge during the mediation of this case.

III.    **TERMS OF THE SETTLEMENT AGREEMENT**

The following is a general summary of the principal terms of the Settlement. The Settlement relief includes the creation of new warranty rights, repairs, reimbursement for repairs, new sashes, and cash payments for consequential damage. The Settlement Agreement also sets forth the parameters of the class notice program and payment of the costs of notice and claims administration. Finally, it establishes payment to Homeowner Class Counsel and Contractor/Construction Class Counsel for reasonable attorneys' fees and expenses by MIWD.

The proposed Settlement offers a substantial recovery to the Settlement Class Members and does so through a claims process that does not impose undue burden on the Settlement Class Members. Qualifying Settlement Class Members are eligible for reimbursements, repairs, replacements, and cash compensation based on an agreed-upon value for each affected MIWD Product and Eligible Consequential Window Damage or Extensive Consequential Water Damage, as described in the Agreement. The Agreement includes an appeals process and treats all similarly situated Homeowner Settlement Class Members fairly, as the recovery is based on the level of damage to the MIWD Product and adjacent property and whether the Homeowner Class Member is entitled to reimbursement for past repairs. The Agreement treats all similarly situated Contractor/Construction Settlement Class Members fairly and equally, as the recovery is based on the level of damage to the MIWD Product and adjacent property.

A.    **The Settlement Class**[4]

The "Homeowner Settlement Class" includes all Persons that purchased or came into ownership of (through assignment, transfer, or otherwise) Affected Property containing MIWD's Product, as well as all Persons who have a legal obligation to maintain or repair a MIWD

---

[4] Named Plaintiffs and Class Counsel seek final certification of the Settlement Class, and agree that, preliminary certification of the Settlement Class is in no way an admission by MIWD that class certification is proper in this litigation Absent the compromises contained within the Settlement Agreement.

6

Product. The Homeowner Settlement Class does not include members of the Contractor/Construction Settlement Class. Nor does the Homeowner Settlement Class include any Persons who have previously settled and released their claims against MIWD involving or relating to all their MIWD Product, had their claims dismissed with prejudice in court, or accepted a final remedy from MIWD involving or related to all their MIWD Product as evidenced by a written document (such Persons shall be barred from any further recovery).

The "Contractor/Construction Settlement Class" includes all Persons who, while engaged in the business of residential construction, were involved in any respect in causing MIWD's Product to be acquired or installed into Affected Property and also includes all Persons who continue to own such Affected Property at the time of Notice (including developers, builders, contractors, subcontractors, and all other persons or entities involved in the purchase, installation, or supervision of the installation of MIWD's Product). The Contractor/Construction Settlement Class does not include members of the Homeowner Settlement Class. Nor does the Contractor/Construction Settlement Class include any Persons who have previously settled and released their claims against MIWD involving or relating to all their MIWD Product, had their claims dismissed with prejudice in court, or accepted a final remedy from MIWD involving or relating to all their MIWD Product, as evidenced by a written document (such Persons shall be barred from any further recovery).

### B. The Settlement Benefits

Qualifying Settlement Class Members with an Identifiable Condition will be provided with one or more of the following benefits: warranty for subsequent homeowners, repairs, replacement sashes and IGUs (insulated glass units), reimbursement of eligible repair costs incurred prior to Notice, or cash payments for consequential damage.

The Settlement also establishes a Claims Process whereby Homeowner Class Members will obtain compensation under one of three categories: (1) Class A: covering Windows determined to have visible evidence of a Visible Residue Line, Sill Joint Staining, Water Penetration Through Window Glazing, or Mullion Water Intrusion and Property determined to have Consequential Water Staining or Extensive Consequential Water Damage; (2) Class B: covering Windows determined to have visible evidence of a Visible Residue Line; and (3) Class C: covering reimbursement for repair or replacement costs incurred as a result of Consequential Water Damage prior to Notice of up to $1,250 per Affected Property. Class C Class Members may also participate in Class A or Class B recovery provided they do not receive a double recovery for the same damage. Homeowner Class Members may also obtain relief for defects in components covered by MIWD's original express written warranty and not covered or compensated as part of a Class A, Class B, or Class C claim during the relevant Claim Period; and homeowners continue to enjoy warranty protection after the claim and repair period.

Contractor/Construction Class Members will qualify for and be entitled to elect either a repair or a Consequential Damage Payment as set forth in the Settlement Agreement.

Within these categories, the exact compensation payable to each qualifying Settlement Class Member is determined by a formula that considers the type and extent of water intrusion, the number of windows affected, and the impact on the property adjacent to the windows. Any Claimant who has previously submitted a warranty claim for any MIWD Product may submit a claim under the Agreement for the same window regardless of whether he received any compensation or benefits (provided a written release does not exist). Additionally, no aggregate cap shall apply to limit MIWD's total, overall liability to Settlement Class Members for relief.

Unlike some other construction defect class action settlements, participation in this

settlement is simple and straightforward. Namely, to obtain relief, the class members need only show certain kinds of visible damage that is "Reasonably Attributable" to a specified condition and need not prove causation. The relief is also extraordinary because it confers more benefits upon class members than they would have otherwise received under the warranty, which Plaintiffs asserted MIWD was not honoring.  Overcoming a once seemingly insurmountable hurdle, Class Counsel has now secured benefits for class members beyond that available under the terms of the limited "warranty." These various settlement benefits are also far reaching because they are applicable to subsequent homeowners who would otherwise not be entitled to relief under the terms of MIWD's warranty.

      **C.**      **Settlement Administration and Notice**

      **1.**      **Claims Resolution Procedure.**

As set forth in the Agreement, all costs of notice and claims administration shall be paid by MIWD.  The initial claims administration will be undertaken by the Claims Administrator and followed, if necessary, by an Appeal Adjudicator. The Claimant shall have the right to appeal a full or partial denial to the Appeal Adjudicator. The Agreement provides that Settlement Class Members who wish to seek a remedy under the Settlement will be able to file a Claim Form at any time on or before: (1) 240 days from the Notice Start Date for Class A or Class B Homeowner Claimants; (2) 180 days from the Notice Start Date for Class C Homeowner Claimants; and (3) 180 days from the Notice Start Date for Contractor/Construction Claimants. Settlement Class Members will be able to request Claim Forms by contacting the Claims Administrator by telephone or in writing or by accessing the Settlement website which will provide a user-friendly method for downloading Claim Forms.

## 2.    The Class Notice Program.

Class Counsel estimates that there are one million Settlement Class Members, all of whom have been targeted by the comprehensive Notice Program. Notice to Settlement Class Members has been accomplished pursuant to the terms of the Notice Program approved by the Court at the preliminary approval stage. It included publication of summary notices, mailed notice to potential Settlement Class Members identified by the Parties through reasonable efforts, web notice, notice to known distributors, press release(s), and establishment of a settlement website. Class Members have been prompted to visit, and have visited, the settlement website – https://www.miwdtapeglazedwindowsettlement.com. To date the site has received 328,858 unique visits. *See* Declaration of Cameron Azari, Vice-President Epiq Systems, Director Hilsoft Notifications ("*Epiq Decl.*"), ¶ 35.

As detailed in the *Epiq Decl.*, ¶¶ 17-25, notice included one-time publication in various publications (two-time publication in People Magazine), direct mail to approximately 183,771 potential class members identified by use of MIWD's databases, web notice, a press release, and notice to known distributors and contractors.

The Notice Program met its primary objectives – effectively apprise class members with notice of the settlement, its details, and a reasonable opportunity to understand their legal rights and options. The Notice Program reached 83.8% of the targeted audience that most likely contained Class Members. *Epiq Decl.*, ¶¶ 10, 45. With the continued implementation of the Notice Program by way of print, internet, or post, the percentage reach to the target audience, as well as the claims rate will only increase over the course of the Notice Program.[5]

Accordingly, the Notice Plan carried out by Epiq (which was preliminarily approved by

---

[5] The claim submission deadlines are as follows: Homeowner Class A and Class B - December 28, 2015; Homeowner Class C - October 26, 2015; Contractor/Construction Class - October 26, 2015.

this Court) was effectively implemented and provided the best practicable notice for this case

### D.     Exclusion and Objection Rights

Class Members have largely responded positively to the Settlement. Since implementation of the Notice Program, Class Counsel have received hundreds of phone calls and emails from interested Class Members. As of the May 28, 2015 deadline for exclusions and the June 1, 2015 deadline for objections, 160 have requested an exclusion (123 of which were deemed complete and timely), while a mere six have filed objections[6] to the Settlement with respect to the Homeowner Class. *Epiq Decl.*, ¶ 44. These objections are without merit and are addressed in Section IV, A, 2, e, below.[7]

## IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.     The Settlement Approval Process

It is well established that the law favors class action settlements. *See South Carolina. Nat'l Bank v. Stone*, 749 F.Supp. 1419, 1423 (D.S.C. 1990). This "strong judicial policy in favor of settlements" is particularly significant "in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). The present putative class action litigation is no exception, and the fair and adequate settlement terms reached by the Parties should be granted final approval.

There is a three-step procedure for approval of class action settlements, requiring (1) preliminary approval determination, (2) provision of notice to the class, and (3) a final fairness hearing. "First, counsel should submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation." Manual for Complex Litigation (Fourth) § 21.632, at 497

---

[6] Objections to the Homeowner Class include: (1) the Anonymous Objection (E.C.F. 234); (2) the Gheesling Objection (E.C.F. 239); (3) the Stein Objection (E.C.F. 240); (4) the Winberg Objection (E.C.F. 258); (5) the Kidnie/Boudreau Objection (E.C.F. 251); and (6) the Vullings Objection (E.C.F. 256).
[7] Two Contractors, Ashton Woods Homes (E.C.F. 259), and D.R. Horton - Inc. Jacksonville (E.C.F. 260), have filed objections to the Contractor Settlement.

(2004) ("MCL"). Second, "[o]nce the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Id.* § 21.633, at 498 (the Court effectuated steps one and two through its Preliminary Approval Order dated February 27, 2015). Third, the Court must hold a fairness hearing to create a satisfactory record to support the settlement so that Class Members may begin to receive settlement benefits. *Id* §§ 32.634 - 21.635; *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *In re Serzone Prods Liab. Litig.*, 231 F.R.D. 221, 223 (S.D. W.Va. 2005). The purpose of the fairness hearing of Rule 23(e) is to ensure that the settlement is "fair, reasonable, and adequate." *McDaniels v. Westlake Servs., LLC*, 2014 U.S. Dist. LEXIS 16081, *21 (D. Md. Feb. 7, 2014); *Chatelain v. Prudential-Bache Sec,.* 805 F. Supp. 209, 212 (S.D.N.Y. 1992).

Fairness can be achieved by way of presumption when, as in this case, the settlement was "reached after meaningful discovery [and] after arm's length negotiation conducted by capable counsel." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass 1987). This presumption is bolstered when the settlement was crafted with the assistance of an experienced mediator – in this case, Magistrate Judge Bruce Howe Hendricks. *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("Most significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").

In the Fourth Circuit, final approval is appropriate when the settlement is both "fair" and "adequate." *Whitaker v. Navy Fed. Credit Union*, 2010 WL 3928616, *5 (D. Md. Oct. 4, 2010) ("The United States Court of Appeals for the Fourth Circuit has held that a class action

settlement should be approved if it is both 'fair' and 'adequate'") (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991) ("*Jiffy Lube*")).

"Fairness" is determined by examining "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of … class action litigation." *Whitaker*, 2010 WL 3928616, *5-6; *Jiffy Lube*, 927 F.2d at 158-159; *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 828 (E.D.N.C. 1994).

"Adequacy" is determined by examining "(1) the relative strength of plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Whitaker*, 2010 WL 3928616, *5-6; *Jiffy Lube*, 927 F.2d at 159.

**1.    The Fairness of the Settlement.**

**a.    The Posture of the Case  at the Time Settlement was Proposed.**

Along with engaging in extensive discovery (discussed below), the Parties engaged in substantive motion practice, including substantial dispositive motions and discovery motions. *Bryson Decl.*, ¶ 17. After developing this information, Class Counsel were well apprised of the strengths and weaknesses of their case as well as the risks of pursuing litigation before the parties entered into mediation. *Bryson Decl.*, ¶ 16.  *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 244 (S.D. W. Va. 2005)**.**

### b.  The Extent of Discovery That Had Been Conducted.

The Parties have engaged in substantial discovery and confirmation discovery over the years prior to, and during settlement discussions. *Bryson Decl.*, ¶¶ 9, 30.  Specifically, Class Counsel thoroughly investigated and examined MIWD's engineering, business, and sales records, and its engineering and manufacturing practices, and deposed MIWD executives. *Bryson Decl.*, ¶¶ 12, 39. In addition, Class Counsel have retained product defect experts, inspected MIWD's third party product testing records and product samples, interviewed potential witnesses, incurred significant costs relating to the testing and analysis of the windows at issue and performed numerous on-site property inspections and laboratory and on site water intrusion testing. *Bryson Decl.*, ¶¶ 13, 14, 34. Given the thorough investigation of the facts, Class Counsel and counsel for MIWD have been able to sufficiently evaluate the merits of the claims in this Action. *Bryson Decl.*, ¶ 30.

### c.  The Circumstances Surrounding the Negotiations.

Settlement negotiations began about two years into the proceedings and were prolonged, encompassing multiple meetings over the course of two years. *Bryson Decl.*, ¶ 22. The parties met in Miami, Florida on December 19, 2012, to explore whether negotiations would be worthwhile. *Id.* The parties again met in Charleston, in January, 2013, to discuss the parties' relative positions and start to consider a framework of a resolution of the lawsuit that would be mutually acceptable.[8] Over the course of the next 24 months, the parties met approximately once a month in-person, and much more frequently by telephone, to negotiate the terms of the Settlement.[9] In the Spring of 2013, the Court-appointed Professor Erik Green as the mediator.

---

[8] Representatives of the PSC, including Lead Counsel, met with MIWD regarding potential settlement on the following dates:  August 7, 2013; September 4, 2013; September 5, 2013; October 9, 2013.

[9] Representatives of the PSC, including Lead Counsel, met with MIWD regarding the settlement agreement and supporting documentation, which was comprehensive, on the following dates:  November 12, 2013; December 16,

After an initial two-day mediation in Charleston on May 5-6, 2013, with Professor Green, the Plaintiffs believed they had reached substantial agreement with MIWD, only to reach a subsequent impasse. *Id.* Subsequently, the Court appointed Magistrate Judge Hendricks to further mediate the case. *Id.* The parties continued to negotiate with the assistance of Magistrate Judge Bruce Howe Hendricks, who participated in four mediation sessions. *Id.* An executed Memorandum of Understanding ("MOU") was entered on October 9, 2013. *Id.* Mediator Tom Willis facilitated several of these mediations. *Id.* As a result of this lengthy mediation and arms-length negotiations, and an additional six months spent negotiating the formal settlement documents, claims process, and other important documents necessary to implement the settlement, the parties arrived at this Settlement, which was granted preliminary approval on February 27, 2015 by this Court. *Id.*

### d. Expertise of Class Counsel in the Class Action Field.

Class Counsel are well-qualified and experienced attorneys who have successfully represented thousands of owners in a wide variety of defective construction product suits, class actions, MDLs, and various mass torts. *Bryson Decl.*, ¶ 38. Prior to commencing this litigation, Class Counsel conducted significant factual and legal investigations about MIWD Product. *Bryson Decl.*, ¶ 16. Class Counsel also researched and is familiar with the applicable legal standard for product defect litigation as well as for nationwide and statewide class certification. The same is true for Class Counsels' efforts as to product design, manufacturing, warranties, the warranty claims process, and the manifestations of defectively designed windows. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given

---

2013; January 16, 2014; February 24, 2014; March 19, 2014; May 9, 2014; July 21, 2014; July 22, 2014; August 14, 2014; September 29, 2014; November 6, 2014; November 7, 2014.

weight in evaluating the proposed settlement"); *In re MicrsoStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (internal quotes omitted) (counsel had "experience and ability … necessary to [advance] representation of the class's interests.").

### 2.    The Adequacy of the Settlement.

#### a.    The Relative Strength of the Plaintiffs' Case on the Merits.

In evaluating the adequacy of a class action settlement, the Court may consider the relative strength of Plaintiffs' case. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 831 (E.D.N.C. 1994).

The merits of the case and the engineering work were essentially jump started from prior litigation concerning these windows. Several years prior to the North Carolina and South Carolina district court cases, a construction defect case was filed in Charleston County, Court of Common Pleas (*Meeting Street at Tennyson Row Horizontal Property Regime by Meeting Street at Tennyson Row Homeowners Association, Inc. v. MI Windows & Doors, Inc., et al.*, CA No. 2008-CP-10-7217). *Bryson Decl.*, ¶ 16. The *Tennyson Row* case involved defective construction of 49 townhomes in Mt. Pleasant, wherein MIWD was named as one of numerous defendants. *Id.*  With regard to the Plaintiffs' claims against MIWD, the case involved the same products (3500/4300 Series), and same or similar alleged defects as this litigation. Liaison Counsel represented the Plaintiff HOA in the *Tennyson Row* litigation, which resulted in the filing of the putative South Carolina class action removed by MIWD to district court. *Id.* The engineering work and product discovery which occurred in the *Tennyson Row* litigation substantially jump started the analysis in the current litigation. *Id.*

Here, Class Counsel prevailed, in-part, on MIWD's various motions to dismiss, demonstrating viability of the allegations in the cases before this MDL. On the basis of the

16

outcomes of similar prior litigation, as well as extensive discovery and dispositive motions in these MDL cases, Plaintiffs were confident that they would meet their burden on class certification. This information also helped Class Counsel strategically evaluate the strengths and weaknesses of each of the class claims and conclude that the Settlement was fair, reasonable, adequate, and in the best interests of the classes. *Bryson Decl.*, ¶ 16. Accordingly, Class Counsel adopted a pragmatic view of the merits of Plaintiffs' claims.

### b. The Existence of Any Difficulties of Proof or Strong Defenses the Plaintiffs Were Likely to Encounter in the Event of Trial.

MIWD countered Plaintiffs' claims with various defenses, and to this day, denies liability and the existence of any defect in its windows. If this case had not been settled, MIWD would have continued to raise those defenses that it alleged during the course of dispositive motions practice including, *inter alia*, that Plaintiffs' claims and damages are: (1) barred by the economic loss rule, (2) limited or barred by MIWD's limited warranty, and (3) caused by the acts (e.g. faulty installation, poor ventilation, and weather), omissions, and/or conduct of third parties.

Using these, and other arguments, MIWD successfully argued motions to dismiss that resulted in some of the Homeowner Plaintiff actions being dismissed in their entirety,[10] while other actions were narrowed.[11]

---

[10] *See Hildebrand v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-1261-DCN (motion to dismiss granted in its entirety; amended complaint filed and dismissed in its entirety; second amended complaint filed, motion to dismiss pending); *Kennedy v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-02305-DCN (motion to dismiss granted in entirety; motion to dismiss amended complaint pending); *McGaffin v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-02860-DCN (motion to dismiss amended complaint granted in its entirety; motion to dismiss second amended complaint pending).

[11] *See Johnson v. MI Windows & Doors, Inc.*, Case No. 2:11-cv-00167-DCN (express warranty and unjust enrichment claims dismissed due to lack of standing); *Wani v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-01255-DCN (motion to dismiss partially granted as to unjust enrichment, fraudulent concealment, and Ohio Consumer Sales Practices Act); *Deem v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-02269-DCN (motion to dismiss partially granted, dismissing plaintiff's claim for negligence, fraudulent misrepresentation, declaratory relief, and violation of consumer protection act); *Meifert v. MI Windows & Doors, Inc.*, Case No. 2:12-cv-01256, (negligence claim in amended complaint dismissed to the extent barred by economic loss doctrine for any damage to windows or the house, and express warranty, declaratory relief, and Wisconsin Deceptive Trade Practices Act claims dismissed).

### c. The Anticipated Duration and Expense of Additional Litigation.

Continued litigation would require substantial additional preparation and discovery, including the deposition and presentation of numerous witnesses; the consideration, preparation, and presentation of evidence; and the preparation and analysis of extensive and expensive expert reports. Additionally, the Class Representatives could be responsible for taxable costs in the event MIWD prevailed at trial. *See e.g. In re: Whirlpool Corp. Front-Loading Washer Products Liability Litigation,* No. 08-wp-6500 (N.D. Ohio, Feb. 18, 2015) (taxing costs against Plaintiffs). MIWD had every intention of litigating the cases before this MDL, as demonstrated by the various motions to dismiss that it filed in an attempt to narrow Plaintiffs' claims. Given the risk, uncertainty, and expense of continued litigation through a decision on class certification, as well as summary judgment, trial, and appeals, Class Counsel believes that the Settlement was justified. *See Slomovic v. All for a Dollar*, 906 F.Supp. 146 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggests that settlement is in the best interests of the Class"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("class action litigation in particular, is unpredictable."); *In re Dell Inc. Securities Litigation,* No. 06-CV-726-SS, 2010 WL 2371834, at * 19 (W.D. Tex. June 11, 2010) ("Class action cases often carry with them elevated risks, a requirement of lengthy investigation through informal discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case."). Without this Settlement, MIWD and Class Counsel anticipate that litigation would continue by way of hundreds or thousands of individual claims against MIWD related to the defective nature of the windows, causing the Parties and this Court to expend additional time and resources.

### d. The Degree of Opposition to the Settlement.

As stated above, Class Counsel believes that there are one million potential settlement class members. Yet, the Settlement only received eight objections (six with respect to the Homeowner Class,[12] and two with respect to the Contractor Class[13]), and 160 requests for an exclusion (123 of which were deemed complete and timely). *Epiq Decl.*, ¶ 44. Generally, reaction to a class settlement is gauged by comparing the number of objections and opt-outs to the class as a whole. *See e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (where only 0.06% of class members opted out, this factor weighed in favor of approval of the settlement); *Bell Atlantic Corp., v. Bolger*, 2 F.3d 1304, 1313-14 (3rd Cir. 1993) ("[l]ess than 30 of approximately 1.1 million shareholders objected…. This small proportion of objectors does not favor derailing settlement"); *Stoetzer v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3rd Cir. 1990) (29 objections out of a class of 281 illustrate a strong favoring of settlement); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

In this case, only six objections were filed by Homeowners among a Settlement Class that comprises an estimated one million members – strong evidence that the Settlement is fair, reasonable, and adequate. *See In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468 (E.D. Pa. 2010) ("[T]he fact that approximately 367 objectors withdrew their objections to the settlement, and that at least 501 opt outs chose to return to the fold confirms that this version of the proposed settlement agreement is satisfactory to a large majority of the

---

[12] Objections to the Homeowner Class include: (1) the Anonymous Objection (E.C.F. 234); (2) the Gheesling Objection (E.C.F. 239); (3) the Stein Objection (E.C.F. 240); (4) the Winberg Objection (E.C.F. 258); (5) the Kidnie/Boudreau Objection (E.C.F. 251); and (6) the Vullings Objection (E.C.F. 256).
[13] Objections to the Contractor Class include: (1) the Ashton Woods Homes Objection (E.C.F. 259); and (2) the D.R. Horton - Inc. Jacksonville Objection ( E.C.F. 260).

class. Accordingly, this court finds that this factor weighs strongly in favor of settlement."). Expressed as a percentage of the estimated class (a fraction of a percent), the number of objections is exceedingly small.

Nonetheless, objections serve a legitimate role in class action litigation and often shine a light on important issues. Accordingly, each of the six objections to the Homeowner Class settlement shall be discussed, in turn, below.

### (i)    The Anonymous Objection

An unnamed person filed an objection to the Settlement on April 27, 2015. (E.C.F. 234). This anonymous objection is deficient of requisite information for objections as mandated by the Order, and therefore, is invalid and should be overruled.

The Order requires that an objection contain the objector's full name, address, and be signed, as well as a declaration that the objector "currently owns or formerly owned Affected Property containing MIWD's Product." (E.C.F. 227 at 11-12), and states that "all objections not made in the prescribed manner and time shall be deemed waived." (E.C.F. 227 at 12). "Non-class members have no standing to object, pursuant to Rule 23(e) … to a proposed class settlement." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). The anonymous objector has (1) failed to include his or her name, address and signature; and (2) not declared that he or she owns Affected Property containing MIWD's Product. The anonymous objector is not a class member because he or she has not declared that he or she owns Affected Property, and therefore, lacks standing to object. Because the anonymous objector did not comply with the Order and because he or she lacks standing, the objection should be overruled.

### (ii)    The Gheesling and Stein Objections

On April 29, 2015, J. Barry Gheesling ("Gheesling") filed an objection to the Settlement. (E.C.F. 239). On May 4, 2015, Michael C. Stein ("Stein") filed an objection to the Settlement. (E.C.F. 240).

The Order requires that an objection contain a declaration that the objector "currently owns or formerly owned Affected Property containing MIWD's Product" (E.C.F. 227 at 12), and states that "all objections not made in the prescribed manner and time shall be deemed waived." (E.C.F. 227 at 12). "Non-class members have no standing to object, pursuant to Rule 23(e) … to a proposed class settlement." *Gould*, 883 F.2d at 284; *see also Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 (S.D. Fla. 2002) ("non-class members are not permitted to assert objections to a class settlement.").

Gheesling's objection should be rejected because he failed to comply with the Order when he failed to declare that he owns or owned "Affected Property." Moreover, neither Gheesling or Stein are class members. According to the Fulton County Board of Assessors, Gheesling's home was built in 1997,and Stein admits that his windows were manufactured outside of the class period. Accordingly, Gheesling and Stein lack standing to object to the Settlement. For these reasons,  both the Gheesling objection and the  Stein objection should be overruled.

### (iii)    The Winberg Objection

On June 2, 2015, Sandra Winberg ("Winberg") filed an objection to the Settlement (E.C.F. 258).

The Order requires that an objection contain a declaration that the objector "currently owns or formerly owned Affected Property containing MIWD's Product" (E.C.F. 227 at 12), and

states that "all objections not made in the prescribed manner and time shall be deemed waived." (E.C.F. 227 at 12). "Non-class members have no standing to object, pursuant to Rule 23(e) … to a proposed class settlement." *Gould*, 883 F.2d at 284; *see also Amoco Oil Co.*, 211 F.R.D. at 473 ("non-class members are not permitted to assert objections to a class settlement.").

Winberg's objection should be waived because she failed to declare that she owns "Affected Property," and because it was not timely filed by the June 1, 2015 deadline for objections, in accordance with the terms of the Order. Also, her objection should be overruled for lack of standing. By her own admission, Winberg purchased her windows in 1996 – outside of the class period prescribed by the settlement. Moreover, the substance of Winberg's objection – that the Settlement does not include their windows – is not a valid basis for an objection. *See In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 934 (E.D. La. 2012) (objections by non-class members on the basis of request for inclusion within the class shows that the settlement is fair and reasonable).

For the reasons stated above, the Court should overrule the objection filed by Winberg.

### (iv)     The Kidnie/ Boudreau Objection

On May 28, 2015, Mark Kidnie and Joanne Boudreau ("Kidnie/Boudreau") filed an objection to the Settlement (E.C.F. 251). Each of their arguments are categorically restated and responded to, below.

Objection:     The maximum allowable amount for Class C relief is insufficient.

Response:     The maximum allowable amount for Class C Compensatory Relief was the result of a negotiated compromise between the Parties under circumstances where consequential damages were excluded by the applicable warranties.

Objection:     The Identifiable Conditions are arbitrary and unduly prohibitive.

22

Response:    The Claims Administrators must have objective criteria to serve as the basis for approving claims. Moreover, Kidnie/Boudreau complain they cannot receive compensation because their windows do not have signs of damage. Of course, if no damage exists, then one cannot complain that they will not receive monetary compensation.

Objection:    The water damage clause is unduly prohibitive.

Response:    The defect at issue is visible and clearly manifests itself to homeowners, and is not a defect which causes a secret build-up of damage that lurks within the walls of surrounding structures. Therefore, the Consequential Water Damage and Excessive Consequential Water Damage clauses are required to ensure that the negotiated relief is provided to compensate only those types of damage that are within the framework of these cases.

Objection:    Photographic and video proof are too restrictive.

Response:    When a Class Member notifies MIWD or the Claims Administrator about a failed IGU under the warranty or the Claims Process, neither requires photographic or video proof.[14]

Objection:    Class C eligibility only applies to previously paid repairs as a result of Consequential Water Damage, but not for repairs done prior to water damage.

Response:    Class C eligibility was a heavily negotiated term of the Settlement. To obtain compensatory relief, a Class Member must have evidence of a prior repair brought on by Consequential Water Damage. Proof of a presently nonexistent condition inherently requires a greater effort than a presently existing condition.

Objection:    Re-caulking is not an acceptable repair  for Class A Class Members.

Response:    The repair process involves more than re-caulking.  Where failed IGU units are repaired, a new IGU unit is installed.

---

[14] *See* Homeowner Claim Form, Section X.

Objection:      The Settlement does not cover future failures.

Response:      In the event of future failures, eligible Class Members do not lose the benefits of their original warranty rights and have the added advantage of a third party Claims Administrator with respect to future claims and do not have to prove that they saw or relied on MIWD's Limited Warranty.

Objection:      The time required to undergo the inspection process is too lengthy and will cause Kidnie/Boudreau to incur additional expenses as a result thereof.

Response:      For  Kidnie/Boudreau,  or  other  Class  Members  in  exceptional circumstances, the Settlement makes available "an expedited initial Claim review for special circumstances (e.g., repairs in process or property subject to a contract of sale)."[15]

Objection:      The requirement of disclosure under the Notice to Future Owner clause will deter future home sales.

Response:      Kidnie/Boudreau are mistaken that they are required to "disclose our defective windows to prospective buyers." The Claim Form only requires Claimants to disclose to subsequent purchasers that a Claim has been made. Even absent the Notice to Future Owners clause, Claimants are likely required to make a substantially similar disclosure under local, state, or federal law governing disclosure requirements for buying and selling homes.

For all of these reasons, the Kidnie/Boudreau objections should be overruled.

### (v)      The Vullings Objection[16]

On June 1, 2015, Michelle W. Vullings ("Vullings") filed an objection to the Settlement (E.C.F. 256). Many of Vullings's objections are inapposite and should not be considered by the Court, primarily, because the Settlement was a result of good faith arm's-length negotiation that

---

[15] *See* Settlement Agreement, Section G, ¶ 11.
[16] The portion of the Vullings Objection that relates to Class Counsel's attorneys' fees and expenses is addressed in the Supplemental Petition in Support of Attorneys' Fees

was reached with the aid of an experienced mediator, and Vullings does not allege that she has been affected by the substance of her objections.  As the Ninth Circuit Court of Appeals stated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. Cal. 1998):

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

With this in mind, each of Vullings's objections are categorically restated and responded to, below.

Objection:    The Release is overbroad and effectively supplies MIWD with a blanket liability waiver, leaving Class Members with no recourse in the event of future harm.

Response:    The Release is not overbroad because it only releases claims that arise out of the very same windows covered by the Settlement – namely, MIWD windows that are glazed with Glazing Tape and were manufactured or sold between July 1, 2000 and March 31, 2010. Moreover, eligible Class Members do have recourse in the event of future harm because (1) the original warranty remains in place, and (2) under the terms of the Settlement there exists an opportunity for third-party review by the Appeal Adjudicator to determine the validity of any appeal of any Claim.

Objection:    The Claims Process is unreasonably burdensome and unfair to the Class because it requires unnecessary documentation.

Response:    As MIWD is understandably concerned about false claims, it is entirely reasonable to require one piece of evidence (homeowner's deed, mortgage statement, tax bill, etc.) exhibiting proof of ownership of the structure containing MIWD windows.

<u>Objection</u>:      The Claims Process is unreasonably burdensome and unfair to the Class because it requires Claimants to perform tasks not reasonably expected of the average homeowner such as taking pictures or videos of each window.

<u>Response</u>:      The Claim Form in this case is similar to Claims Forms used in numerous construction defect class action settlements, which generally span multiple pages and have extensive documentation requirements.  Further, Class Counsel will assist, and has already assisted, class members who need help with the Claim Form. It is noteworthy that Vullings does not allege that she has been unduly burdened by the Claims Process or that *she* had trouble taking photos or videos of her Affected Product, or that she found it difficult to have *her* Claim Form notarized. This and similar objections are speculative at best.

<u>Objection</u>:      The Claims Process is unreasonably burdensome and unfair to the Class because the Claim Form requires actions for the sole purpose of denying claims.

<u>Response</u>:      The requirements of the Claim Form are based on rational requirements for claims administration and are not intended to deny claims. Thus, a Claimant is only required to secure an estimate from a Qualified Contractor in the narrowest of circumstances where a Class Member has Extensive Consequential Water Damage in amounts in the $2,500 range (and a category into which a vast majority of Class Members will not fall into).

<u>Objection</u>:      The Claims Process is unreasonably burdensome and unfair to the Class because it requires "Claimants to notarize the Claim Form." (E.C.F. 256).

<u>Response</u>:      A notarized signature is a common feature of class action settlements. *See e.g. Gulbankian v. MW Mfrs., Inc.*, 2014 U.S. Dist. LEXIS 177668, *16 (D. Mass. Dec. 29, 2014) (court approving settlement where the claims process required a notarized claim form) *see also Shakman v. Forest Pres. Dist.*, 2009 U.S. Dist. LEXIS 133213 (N.D. Ill. Mar. 5, 2009)

26

(granting final approval of settlement which required class members to notarize their claim form); *In re Shell Oil Refinery*, 155 F.R.D. 552, 562 n.19 (E.D. La. 1993) (Proof of claim form was required to be completed before a notary); *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 287 F. Supp. 2d 65 (D.D.C. 2003) (granting final approval of class action settlement where the claims process required that the proof of claim form be notarized).

Objection:    Former homeowners should be included in Class C.

Response:    The Settlement Agreement clearly and conspicuously states that "Class C Eligible Members are current or former Homeowners that paid for repairs or replacement Windows as a result of Consequential Water Damage …."

Objection:    The Class Period is too narrow and "should be expanded to the earliest date those products were manufactured."

Response:    The scope of the Class was a negotiated compromise influenced by a variety of factors including, variations in warranty period(s) (unlimited as to certain components as to original homeowners, very limited as to subsequent homeowners and commercial use), and variations in statutes of limitations and repose. As such, the Class Period goes back 15 years, well-beyond most states statutes of repose and statutes of limitations, and provides broad relief to Class Members.

Objection:    The Settlement Relief is inadequate, unreasonable, and unfair because (1) Class A homeowners with Identifiable Conditions and Class B homeowners who have yet to experience damage are essentially limited to a Cap Seal repair.

Response:    A Cap Seal replacement is the standard repair in the window industry to remedy the types of Identifiable Conditions at issue in this case.[17] Any homeowner with

---

[17] See American Architectural Manufacturers Association: Glossary 2013, defining "Cap Bead" as "A beveled seal applied to the top of the glazing rabbet to shed water away from the glazing infill."; and "Wet Seal" as "A method of

consequential damage is eligible to receive a free sash for openings with damage, or a sash below cost for other windows, as well as the benefit of a two-year warranty from MIWD for every repair and replacement (if a Cap Seal Failure occurs during the two year warranty period, MIWD provides a New Sash for Cap Sealed Windows that fail). Further, Class B Homeowners continue to hold their original warranty rights which will cover any future failures. "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citing *City Pshp Co. v. Atlantic Acquisition Ltd. Pshp*, 100 F.3d 1041, 1043 (1st Cir. 1996).

Objection:    The Settlement Relief is inadequate, unreasonable, and unfair because the Settlement does not provide adequate relief for IGU failures – glass replacement is the only sufficient remedy.

Response:    The remedy for IGU failures (sash replacement or re-glazing) is sufficient because the process of re-glazing includes replacement of the window glass. This is precisely what Vullings requested, believing it is the "only sufficient remedy". What is more, the IGUs of all Class Members are warranted for 20 years, and therefore, may still be under warranty until at the earliest 2020 allowing many Class Members with failed IGUs to make a warranty claim under the already existing warranty process.

Objection:    The Settlement Relief is inadequate, unreasonable, and unfair because Homeowners do not know who will perform their repairs under the Settlement.

Response:    As a result of the negotiated compromise, MIWD and its regional service companies will perform the repairs, and, if a glazing repair does not solve the problem, the Class Member can make an additional claim under the two-year warranty that accompanies each repair in which case a new sash will be provided.

---

sealing, utilizing either gunnable sealant or preformed tape as the primary seal."

Objection:    The limits on Consequential Damage Compensation are unreasonable and unfair.

Response:    The limits on Consequential Damage Compensation was the result of a negotiated compromise, where during the litigation phase, Defendant claimed it was not responsible for any of the alleged wrongdoing and that it did not have to honor its written "warranty" as it was often not within the basis of the bargain (and the Court appeared to give quarter to that argument). Further, prior to Settlement, consequential damages were not part of the warranty, and its availability is, itself, an added benefit of the Settlement. Finally, Class Members benefit through the ease in which they can qualify for Consequential Damage Compensation because the Settlement merely requires a "reasonably attributable" threshold, effectively a presumption based upon proximity that the complained of damage was caused by the Defendant.

Objection:    The Settlement Relief is inadequate, unreasonable, and unfair because condo, co-op, or other multi-family structure owners who are not responsible for the MIWD Product in their Affected Property should not be foreclosed from recovery under the Settlement.

Response:    The Settlement does not seek to preclude recovery, rather it seeks to ensure there is no double recovery (hence, in multi-unit complexes, it simply provides that the settlement administrator is entitled to know which party gets the funds – the property owners' association or the condominium owner).

Objection:    The Challenge Factors are unreasonable and unfair on the basis that Defendant could deny a claim if there is "evidence" of water infiltration more than eight inches above an Identifiable Condition.

29

Response:    Apart from these conclusory assertions to the Challenge Factors (below), Vullings does not explain, much less provide supportive evidence, why she believes these Challenge Factors are unfair. Vullings does not articulate why the eight inch rule is unfair when water *above* an Identifiable Condition can hardly be attributable to the window as gravity acts to cause water to flow downward. Additionally, as discussed above, Class Members need only submit a photo and satisfy the "reasonable attributable" standard (discussed above). As such, it would take an extreme case for the third-party Claim Administrator to deny a completed claim.

Objection:    The Challenge Factors are unreasonable and unfair on the basis that Defendant could deny a claim if there is use of non-MIWD mull products or methods.

Response:    If an MIWD product did not cause the mull leak, it is hard to contemplate why MIWD should be held liable for third party products.

Objection:    The Challenge Factors are unreasonable and unfair on the basis that Defendant could deny a claim if there is observable water damage in the Substrate without any additional reason for a challenge.

Response:    The objection to the Substrate factor lacks substance.

Objection:    The Challenge Factors are unreasonable and unfair on the basis that Defendant could deny a claim if there is condensation in and around an aluminum window.

Response:    "Condensation in and around an aluminum window" means  condensation from an adjoining structure, and does not refer to condensation between panes of glass.[18] As stated above, Class Members need only submit a photo and satisfy the "reasonably attributable" threshold.

---

[18] *See* Settlement Agreement, at ¶ 62 ("claimed Damages that more likely than not are caused by condensation, **as evidenced by uniform water staining or uniform water damage across the stool or sill immediately adjacent to the Window sill**.") (emphasis added).

30

For the reasons stated above, Plaintiffs respectfully request that the Court overrule the objections filed by Vullings.[19]

## V.    THE PROPOSED HOMEOWNER CLASS SHOULD BE CERTIFIED FOR PURPOSES OF SETTLEMENT

### A.    The Settlement Class Satisfies Rule 23(a)

This Settlement was preliminary certified under Rule 23(b)(3) on February 27, 2015, and Plaintiffs now move for final certification. Through certification of the settlement class, the benefits of the settlement come to be realized. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997) ("[T]he 'settlement only' class has become a stock device," and "all Federal Circuits recognize its utility.").

Under Rule 23(a), class certification is appropriate if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. Rule 23(a).

### 1.    Settlement Class Members are Too Numerous to Be Joined.

In this action, it is axiomatic that joinder of all potential Settlement Class Members would be impracticable. While there is no concrete threshold of potential class members above which joinder becomes impracticable, "[w]hen a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder." *Hewlett v. Premier Salons Int'l, Inc.*, 185

---

[19] The Court should also take note that the Vullings' property is co-owned by Brent F. Vullings of the Vullings Law Group. LLC. Mr. Vullings recently filed an objection to the class action settlement entered in *McDonough v. Toys "R" Us, Inc.*, 2015 U.S. Dist. LEXIS 7510 at *76 (E.D. Pa. Jan. 21, 2015)(stating that Vullings' client, Kim Morrison, filed an objection to the settlement and class counsel's fee and expense request. Ms. Morrision subsequently noticed an appeal). The Court should therefore be mindful that Michelle Vuillings objection is more likely motivated by a potential fee for her husband than any interest in  improving the terms of the settlement or obtaining greater benefits for class members.

F.R.D. 211, 215 (D. Md. 1997). Additionally, "the Fourth Circuit affirmed the district court's approval of a class with 480 potential class members, stating this number 'would easily satisfy the numerosity requirement.'" *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 508 (D.S.C. 2007) (quoting *Central Wesleyan College. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)). Here the proposed Settlement Class consists of all persons in the United States who own, owned or have a legal obligation to maintain or repair a MIWD Product.

### 2. Plaintiffs and the Settlement Class Members Share Common Legal and Factual Questions.

Rule 23(a) requires that there exists common questions of law or fact among the class. Fed. R. Civ. P. 23(a)(2). "What matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "The commonality requirement … does not require that all, or even most issues be common. *Hunter v. Am. Gen. Life & Accident Ins. Co.*, 2004 U.S. Dist. LEXIS 30358, *18 (D.S.C. Dec. 2, 2004) (citing *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C.), *aff'd* 6 F.3d 177 (4th Cir. 1993)) (internal quote marks omitted)..

While a single common question will suffice, it must be of such a nature that its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2556. "[T]he Rule 23(a)(2) commonality considerations overlap with the predominance considerations of Rule 23(b)(3)." *Hunter*, 2004 U.S. Dist. LEXIS 30358 at *19.

Here, there are several common questions with respect to the Settlement Class, including: whether (1) the Windows are defective and (2) MIWD was negligent in its manufacture of the Windows. Further, the suitability and performance of the glazing tape is the single dominant factual issue that drove this litigation. Accordingly, the commonality requirement is satisfied.

32

### 3.    Plaintiffs' Claims are Typical of the Settlement Class.

In order to satisfy the typicality requirement "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Thomas*, 246 F.R.D. 505 at 510 (quoting *Gen. Tel. Co. of the Southwest. v. Falcon*, 457 U.S. 147, 155 (1982)). For this reason, the typicality requirement "tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). In this case, Plaintiffs have alleged that their claims arise out of MIWD's conduct in manufacturing, marketing, advertising, warranting, and selling defective Windows. By way of example, Homeowner Plaintiffs Kennedy and McGaffin each allege that their Windows suffered a lack of or loss of seal at joints, all of which permitted moisture or water intrusion into their home and have continuously and repeatedly caused damage in and around the Windows, and are alleging causes of action for breach of express and implied warranties as well as negligence. Again, the suitability and performance of the glazing tape is the single dominant factual issue that drove this litigation. These claims are typical when compared to those held by other members of the Settlement Class.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.

The final element required under Rule 23(a) instructs that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A class representative is adequate if he or she "possess[es] the same interest and suffer[s] the same injury" as the class members he or she seeks to represent. *International Woodworkers of America, Etc. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269 (4th Cir. 1981). "The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously. This inquiry involves two

33

issues: (i) whether plaintiffs have any interest antagonistic to the rest of the class, and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 329-30 (D.S.C. 1991). Importantly, "[t]he adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Thomas*, 246 F.R.D. 505 at 509 (quoting *Stone*, 139 F.R.D. 325).

Here, Class Counsel are abundantly qualified and experienced to pursue these claims and negotiate a settlement in this class action. The attorneys at Whitfield Bryson & Mason LLP, and the Lucey Law Firm, have significant experience in class action litigation proceedings throughout the United States, securing in sum over a billion dollars in settlement funds for their consumer class action clients. Further, there is no reason to believe that antagonism or conflicts of interest exist between Plaintiffs and the proposed Settlement Class. Plaintiffs, like all proposed Settlement Class Members own, owned, or are responsible for upkeep and repair of MIWD Product, and seek to maximize their recovery. Therefore Rule 23(a)(4) is satisfied.

**B.      The Proposed Settlement Class Satisfies Rule 23(b)**

Rule 23(b)(3) allows class certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The requirements of predominance and superiority "do not foreclose the possibility of mass tort class actions, but merely ensure that class certification in such cases 'achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or

bringing about other undesirable results.'" *Gunnells v. Healthplan Services, Inc.*,  348 F.3d 417 at 424 (4th Cir. 2003) (quoting *Amchem Products*, 521 U.S. 591 at 615).

### 1.    Common Questions of Law and Fact Predominate.

"The predominance requirement ensures that a class is 'sufficiently cohesive to warrant adjudication by representation.'" *Melton v. Carolina Power & Light Co.*, 283 F.R.D. 280, 288 (D.S.C. 2012) (quoting *Amchem Products*, 521 U.S. 591 at 623).   In order to satisfy the predominance requirement, "[p]laintiffs must show that the issues they seek to litigate are ones that are 'readily susceptible to classwide proof.'" *Lloyd v. GMC*, 266 F.R.D. 98, 105 (D. Md. 2010) (quoting *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 341 (4th Cir. 1998)). Class Members' claims are based on common legal theory linked to MIWD's Windows,  and they seek to litigate the principal issue that overshadows this litigation – whether MIWD's windows are defective. After a determination is made on that class-wide issue, only minor issues, such as number of Windows a Class Member owns, remains. MIWD's liability can be determined by class-wide proof, given that the same course of alleged conduct by MIWD – *i.e.* the same manufacturing, marketing, advertising, warranting, and selling of defective Windows utilizing glazing tape and sealant – forms the basis of all of the Settlement Class Members' claims.

### 2.    Class Resolution of this Action is Superior to Other Methods of Adjudication.

In order to determine whether the class action device is the superior method of adjudicating these claims, Rule 23(b)(3) enumerates four factors for consideration: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims

35

in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. Rule 23(b)(3). "The Supreme Court explained in *Amchem* that when dealing with a settlement only class pursuant to Rule 23(e), a district court need not inquire whether the case, if tried, would present intractable management problems." *Gunnells*, 348 F.3d 417 at 440 (internal quotes omitted). It is well settled that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* (quoting *Amchem Products*, 521 U.S. 591 at 617).

This case presents a disincentive to pursue individual lawsuits because the prospect of small individual recoveries is dwarfed by the cost of litigation, which includes collection and presentation of common proof that is required to establish MIWD's liability. If each Class Member were required to sue MIWD individually, then each would also have to present evidence that MIWD Products are defective, which requires extensive discovery, engineering work and testing, and expert testimony. Rather, since this action arises from an alleged common defect without variation across the Settlement Class, this case is a quintessential one for aggregate treatment.

## VI.    <u>CONCLUSION</u>

For the reasons discussed above, the Settlement is fair, reasonable, and provides substantial relief to the Settlement Class. Accordingly, Plaintiffs respectfully request that this Court: (1) certify the Settlement Class; (2) grant final approval of the Settlement Agreement; and (3) enter final judgment approving the Settlement Agreement.

Dated: June 23, 2015

/s/ Daniel K. Bryson
Daniel K Bryson
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, NC 27603
919-600-5002
Email: dan@wbmllp.com

Justin Lucey
JUSTIN O'TOOLE LUCEY, PA
415 Mill Street
Mt. Pleasant, SC 29464
843-849-8400
Email: jlucey@lucey-law.com

Counsel for Homeowner Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this, the 23rd day of June, 2015, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, which will provide electronic notice of such filing to all counsel of record.

/s Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 West Morgan Street
Raleigh, NC 27603
919-600-5002
dan@wbmllp.com