**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: MI WINDOWS AND | ) | **ORDER** |
| DOORS INC. PRODUCTS | ) | MDL No. 2333 |
| LIABILITY LITIGATION | ) | No. 2:12-mn-00001-DCN |
| | ) | |

This matter is before the court on two motions: a motion for Attorneys' Fees and Costs by Homeowner Plaintiffs and a motion for Attorneys' Fees and Costs by Contractor/Construction Plaintiff. The Parties also seek service fee awards for the Named Plaintiffs. The court awards Attorneys' Fees and Costs and service fees as described below. Unless otherwise noted, capitalized terms in this order have the meanings set forth in the Stipulation of Class Action Settlement and Release ("Settlement" or "Settlement Agreement"). The court incorporates its discussion of the background of this Action and the Settlement contained in its Final Order and Judgment.

## I.   MOTIONS FOR ATTORNEYS' FEES & COSTS

Federal Rule of Civil Procedure 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." "A class member, or a party from whom payment is sought, may object to the motion" for attorney's fees. Fed. R. Civ. P. 23(h)(2). In the Settlement Agreement, the Parties agreed that Attorneys' Fees and Costs for both the Homeowner Plaintiffs' counsel and Contractor/Construction Plaintiff's counsel would be determined by the court. The Parties further agreed that the compensation to the class members would not be reduced to pay the fees or costs of the attorneys. Homeowner Class Counsel agreed not to seek Attorneys' Fees and Costs in excess of $8 million and Contractor/Construction Class Counsel agreed not to accept an Attorneys' Fees and Costs

1

award that would require defendant MI Windows and Doors, LLC ("MIWD") to pay Contractor/Construction Plaintiff's Class Counsel and Homeowner Plaintiffs' Class Counsel a total aggregate award greater than $9,045,000.

"There are two general methods for assessing awards of attorney's fees in settlements of class action cases: (1) the percentage-of-the-fund method and (2) the lodestar method." DeWitt v. Darlington Cnty., S.C., No. 4:11-cv-00740, 2013 WL 6408371, at *6 (D.S.C. Dec. 6, 2013). The percentage-of-the-fund method allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class. Id. The lodestar method determines the appropriate amount of attorney's fees by applying the factors from the seminal case of Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), to determine a "lodestar" figure by multiplying the number of hours expended by a reasonable hourly rate. DeWitt, 2013 WL 6408371, at *7. Even when the percentage of recovery method is used, courts often use the lodestar method to "cross-check" the award of attorney's fees. In re Royal Ahold N.V. Sec. & ERISA Litig., 461 F. Supp. 2d 383, 385 (D. Md. 2006).

The Settlement in this case does not create a common fund to be distributed among the Class Members but rather affords all Class Members who timely file a Claim the opportunity for recovery. See Weber v. Gov't Employees Ins. Co., 262 F.R.D. 431, 449 (D.N.J. 2009). Attempting to value the Settlement before the Claims Period has expired would be speculative at best. When a settlement is difficult to value, courts often favor the lodestar method. See Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996) (noting that district court did not abuse its discretion in using the lodestar method in part because the value of the settlements were speculative); In re Gen. Motors

Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 821 (3d Cir. 1995) ("[T]he lodestar rationale has appeal where as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method."); In re Vitamins Antitrust Litig., 2001 WL 34312839, at *3 (D.D.C. July 16, 2001) ("However, despite this and other circuits' preference for the percentage of recovery method, courts have acknowledged the utility of the lodestar method in instances in which the amount of the common fund is difficult to ascertain . . . ."). Therefore, the court will utilize the lodestar method for determining attorney's fees. See Weber, 262 F.R.D. at 449–50 (employing lodestar method where settlement did not create a common fund and was not easily valued); Deloach v. Philip Morris Cos., 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (holding that trend towards using percentage method was "largely inapposite" since that case did not involve a common fund); see also Brzonkala v. Morrison, 272 F.3d 688, 691 n.* (4th Cir. 2001) ("The 'common-fund' doctrine . . . applies, as its name suggests, in cases where an actual common fund has been created as a consequence of the litigation." (emphasis added)); Cerrato v. Alliance Material Handling, Inc., 2014 WL 7190687, at *4 (D. Md. Dec. 16, 2014) ("Here, the percentage of recovery method is inappropriate because the attorneys' fees are not being deducted from the Plaintiffs' recovery."); Teague v. Bakker, 213 F. Supp. 2d 571, 583 (W.D.N.C. 2002) (collecting cases and noting that except for the D.C. and Eleventh Circuits, all other circuits to have address the issue have held that a trial court may use, in its discretion, either the percentage or lodestar method).

The lodestar amount is defined as a "reasonable hourly rate multiplied by hours reasonably expended." Grissom v. Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008).

To determine the reasonable number of hours and reasonable rate to use in calculating the lodestar, the court is guided by twelve non-exclusive factors, often known as the Barber factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)).  As the Fourth Circuit has noted, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." Doe v. Chao, 435 F.3d 492, 506 (4th Cir. 2006) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)).  Although courts should consider all of the Barber factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable.  See EEOC v. Serv. News, Co., 898 F.2d 958, 965 (4th Cir. 1990).

The court has considered all the Barber factors as they relate to both the Homeowner Class Counsel and Contractor/Construction Class Counsel and considers the following factors particularly applicable to the current Action.

    **A.    Homeowner Class Counsel**

        **1.    Time and Labor Expended**

Homeowner Plaintiffs' counsel and paralegals have expended almost 21,000 hours on this case, Bryson Decl. ¶ 48, and the court has reviewed billing records which

were submitted directly to chambers. This litigation has been pending in this court for more than three years and Homeowner Plaintiffs' counsel have responded to and argued numerous motions to dismiss, briefed and resolved many discovery disputes, defended and taken depositions, conducted written discovery, developed expert and inspection protocols, and participated in multiple mediation sessions and countless telephone conferences. Homeowner Plaintiffs' counsel will continue to work beyond the Final Order and Judgment to ensure the terms of the Settlement are properly carried out going forward, as certain claims submission deadlines are not until late October and December 2015. This ongoing work—including the potential for appeals—will require many additional hours of work without the possibility of further fees.

### 2.     Novelty and Difficulty of Questions/Skill Required

These are complex cases, which have required multiple hotly-contested motions to dismiss and involved the laws of many states. These cases presented causation defenses, economic loss doctrine arguments, and limitations of remedies and warranties. MIWD mounted a vigorous defense including arguments regarding causation, class certification, and application of the economic loss rule. Moreover, the nature of these cases required Homeowner Plaintiffs' counsel to consult with experts and inspect and test Windows nationwide.

### 3.     Experience, Reputation, and Ability of Counsel

Homeowner Plaintiffs' counsel are highly skilled in both class action and construction defect litigation.

### 4.     Opportunity Costs

Homeowner Plaintiffs' counsel have obviously spent a substantial amount of time that could not be invested in other cases. Moreover, there was a risk of non-payment should Homeowner Plaintiffs not succeed in their claims.

> In complex, multi-year class actions, the risks inherent in the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney fees. The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and costs advanced, but lost the case despite their advocacy.

In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig., No. 3:09-cv-00054, 2012 WL 5430841, at *4 (D.S.C. Nov. 7, 2012) (citations omitted).

### 5.     Amount in Controversy and Results Obtained

Although the amount in controversy is difficult to value at this stage, it is no doubt high considering the number of Class Members. Moreover, Homeowner Plaintiffs' counsel have achieved significant relief for the Homeowner Settlement Class, as set forth more fully in the court's Final Order and Judgment. This relief includes the possibility of repairs, replacement products, or monetary compensation for consequential damages.

### 6.     Awards in Similar Cases

In similar cases, attorneys' fee awards are often substantial. See, e.g., In re Zurn Pex Plumbing Products Liab. Litig., 2013 WL 716460, at *1 (D. Minn. Feb. 27, 2013) (approving attorneys' fees and expenses of $8.5 million in litigation concerning brass plumbing fittings in which common fund settlement was $20 million); In re CertainTeed Fiber Cement Siding Litig., 303 F.R.D. 199, 205 (E.D. Pa. 2014) (approving attorneys' fees and expenses of $18.5 million in litigation concerning cement siding in which common fund settlement was $103.9 million).

After considering the Barber factors, the analysis turns next to the reasonableness of counsel's hourly rates. In determining whether a rate is reasonable, the court is to consider "prevailing market rates in the relevant community." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits. Id. The Fourth Circuit has recognized that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (citations and internal quotation marks omitted). Typically, a party seeking attorneys' fees would present an affidavit from a local counsel not connected to the present litigation who would offer testimony concerning prevailing local rates for the relevant type of work. Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009) (citing affidavits of other local lawyers as specific evidence "sufficient to verify the prevailing market rates").

Here, Homeowner Plaintiffs' counsel calculate the lodestar using hourly rates performing comparable work in South Carolina, even though the case is national in scope and many of the attorneys work in regions with higher rates. Homeowner plaintiffs use a $600 rate for partners, a $300 rate for associates, and a $125 rate for paralegals. According to Professor John Freeman, such rates are consistent with those for class action attorneys operating on a contingency-basis in this district. Freeman Aff. ¶ 26. In his affidavit, Professor Freeman notes other cases in which those rates were accepted. Id. The court finds that the hourly rates documented by Professor Freeman and reflected in

the billing records are the prevailing market rates for this type of case in the District of South Carolina.

Based on the above, the court finds that the lodestar amount for Homeowner Plaintiffs' counsel is $8,582,183.00, which the court determines to be reasonable in this case.[1] See Bryson Supp. Decl. ¶ A. Because Homeowner Plaintiffs' counsel agreed not to seek Attorneys' Fees and Costs in excess of $8 million, the court awards Homeowner Plaintiffs' counsel $7,091,921.30 for attorneys' fees and $907,198.18 for reasonable expenses.[2,3]

### B.    Contractor/Construction Class Counsel

#### 1.    Time and Labor Expended

Contractor/Construction Plaintiff's counsel have expended around 1,200 hours on this case. Contractor/Construction Pl.'s Mot. Ex. C. This litigation has been before this court for more than three years and Contractor/Construction Plaintiff's counsel have

---

[1] Because Homeowner Plaintiffs' counsel's lodestar is above their requested attorneys' fees, the court need not consider whether a lodestar multiplier is appropriate.

[2] The court notes that one Class Member—Michelle W. Vullings ("Vullings")—objected to the amount of fees sought by Homeowner Plaintiffs' counsel. Vullings argues that Class Members cannot sufficiently review the reasonableness of the fee requests without knowing the value of the Settlement. As discussed above, any valuation of the Settlement would be purely speculative. Regardless, the court is confident that the Settlement benefits Homeowner Class Members and that the lodestar method results in a reasonable fee request. The court overrules Vullings's objection as it relates to Homeowner Attorneys' Fees and Costs.

[3] "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." Kabore v. Anchor Staffing, Inc., 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012). The Fourth Circuit has stated that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). The court finds the Homeowner Plaintiffs' counsel's expenses reasonable with the exception of an $880.52 meal at Charleston Grill. Therefore, the court reduces their recovery accordingly.

responded to and argued a motion to dismiss and motion for judgment on the pleadings as well as engaging in discovery and participating in multiple mediation sessions and countless telephone conferences. Contractor/Construction Plaintiff's counsel will continue to work beyond Final Order and Judgment to ensure the terms of the Settlement are properly carried out going forward, as certain claims submission deadlines for the Contractor/Construction Settlement Class are not until late October 2015. This ongoing work—including the potential for appeals—will require many additional hours of work without the possibility of further fees.

### 2.     Novelty and Difficulty of Questions/Skill Required

This is a complex case, which has involved multiple hotly-contested motions. MIWD mounted a vigorous defense against Contractor/Construction Plaintiff's claims.

### 3.     Experience, Reputation, and Ability of Counsel

Contractor/Construction Plaintiff's counsel are highly skilled in both class action and construction defect litigation.

### 4.     Opportunity Costs

Contractor/Construction Plaintiff's counsel have obviously spent a substantial amount of time that could not be invested in other cases. Moreover, there was a risk of non-payment should Contractor/Construction Plaintiff not succeed in its claims.

> In complex, multi-year class actions, the risks inherent in the litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney fees. The risk of no recovery in complex cases of this sort is not merely hypothetical. Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and costs advanced, but lost the case despite their advocacy.

LandAmerica, 2012 WL 5430841, at *4 (citations omitted).

### 5. Amount in Controversy and Results Obtained

Although the amount in controversy is difficult to value at this stage, it is no doubt high considering the number of Class Members. Moreover, Contractor/Construction Plaintiff's counsel have achieved significant relief for the Contractor/Construction Settlement Class, as set forth more fully in the court's Final Order and Judgment. This relief includes the possibility of repairs, replacement products, or monetary compensation for consequential damages. There is also a significant benefit to the Contractor/Construction Settlement Class in avoiding future litigation related to the window defects at issue in this Action.

### 6. Awards in Similar Cases

As discussed above, attorneys' fee awards in similar cases are often substantial.

After considering the <u>Barber</u> factors, the analysis turns next to the reasonableness of counsel's hourly rates. Contractor/Construction Plaintiff's counsel did not produce any evidence that the rates they charged were the prevailing market rates. Therefore, the court will use the rates it already found reasonable with regard to Homeowner Plaintiffs' counsel: a $600 rate for partners, a $300 rate for associates, and a $125 rate for paralegals. When calculated using those rates, the lodestar amount for Contractor/Construction Plaintiff's counsel is $497,980.00.[4]

Courts may "adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case." <u>Kay Co. v. Equitable Prod. Co.</u>, 749 F. Supp. 2d 455, 462 (S.D. W. Va. 2010); <u>see also</u> <u>In re</u>

---

[4] Vullings objects to the amount of fees sought by Contractor/Construction Plaintiff's counsel. As an initial matter, it is not even clear that Vullings has standing to object since she is not a member of the Contractor/Construction Settlement Class. Regardless, the court overrules her objection for the same reasons as set forth above.

Microstrategy, Inc., 172 F. Supp. 2d 778, 786 (E.D. Va. 2001) ("[T]he lodestar figure may then be increased or decreased based on an assessment of a variety of factors relating to the nature of the case."). Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee. Jones v. Dominion Res. Servs., Inc., 601 F. Supp. 2d 756, 766 (S.D. W. Va. 2009).

Based on the factors laid out above, the court finds that a multiplier of 2.5 is appropriate in this case, for a total of $1,244,950. Because Contractor/Construction Plaintiff's counsel agreed not to seek Attorneys' Fees and Costs that would require MIWD to pay more than $9,045,000 in Attorneys' Fees and costs, the court awards Contractor/Construction Plaintiff's counsel $1,002,743.60 for attorneys' fees and $42,256.40 for reasonable expenses.

## II.  SERVICE AWARDS

The final issue before the court is whether to award service awards to the Named Plaintiffs. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest" and "[c]ourts around the country have allowed such awards to named plaintiffs or class representatives." Deem v. Ames True Temper, Inc., 2013 WL 2285972, at *6 (S.D. W. Va. May 23, 2013); see also Savani v. URS Prof'l Solutions LLC, No. 1:06-cv-02805, 2014 WL 172503, at *10 (D.S.C. Jan. 15, 2014) (citation omitted).

The Settlement contemplates service awards of $5,000 per Named Homeowner Plaintiff (limited to one fee per household) and a service award of $5,000 to Named Contractor/Construction Plaintiff.  "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  <u>Kirven v. Cent. States Health & Life Co. of Omaha</u>, No. 3:11-cv-2149, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (citation omitted).  The modest service awards here are well within the range of service awards approved by other courts.[5]

Therefore, the court awards the requested service awards to the Named Plaintiffs for their performance of their responsibilities throughout this litigation.

## IV.   CONCLUSION

Based on the foregoing, the court **GRANTS** both motions for attorneys' fees and costs and **AWARDS** attorneys' fees, costs, and service awards as laid out above.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 23, 2015**
**Charleston, South Carolina**

---

[5] The court again notes Vullings's objection to the service awards as excessive and unfair.  The court finds her objection unpersuasive and overrules it as it relates to service awards.