RECOMMENDED SUBCONTRACTORS ACCIDENT PREVENTION PROGRAM

WESTERN SHOWER DOOR will at all time be governed by the Williams-Steiger Occupational Safety and Health Act of 1970 as amended to date and the Industrial Safety Orders of the California Department of Industrial Relations, Division of Industrial Safety, and will do everything reasonably necessary to protect the life and safety of workers by the following these precepts:

1.　JOB SURVEY: Prior to the start of work, make a thorough survey of the site condition to determine so far as practicable the predictable hazards to employees and the kind and extent of safeguards necessary to procure the work in a safe manner.

2.　INSPECTIONS: Make regular inspections of all excavations, forms, scaffolds, stairs, railways, ladders, machinery and equipment.

3.　UNSAFE CONDITIONS: Make sure no workers be permitted to work in an unsafe place unless for the purpose of making it safe and then only after proper precautions have been taken to protect him while doing such work.

4.　CORRECTIVE MEASURES: Take immediate corrective measures to eliminate the hazards directly under our control and shall report to the project superintendent any unsafe conditions or practices not under our control.

5.　SAFETY INSTRUCTIONS FOR NEW EMPLOYEES: When a worker is first employed he shall be given instructions regarding the hazards and safety precautions applicable to the type of work in question.

6.　HOUSEKEEPING: During the course of construction, form and scrap lumber with protruding nails and all other debris shall be kept reasonably, cleared from work areas, passageways and stairs.

7.　HEAD PROTECTION: Workers who are subjected to the hazards of falling or flying material shall be protected by a hat designed to resist the impact of falling objects.

8.　EYE PROTECTION: Employees working in locations where eye hazards are inherent in the work shall be safeguarded by means of eye protection.

9.　EAR PROTECTION: Where required by Noise Control Safety Orders, ear protection shall be provided and worn.

10.　EXCAVATIONS: Shall not cause or permit employees to work in or adjacent to any excavation until a reasonable examination of same has been made to determine that no conditions exist exposing them to injury from moving ground.

11.　GUARDING-SHORING: All excavations under control of Subcontractor shall be provided with approved guards or shoring system when the excavation exposes workmen to danger or hazards.

12.　ALCOHOL-DRUGS: Advise workers under their orders that no alcohol or drugs of any kind shall be allowed on the job site.

13.　SAFE ACCESS AND MOVEMENT: Provide adequate work areas, ladders and protection for floor and roof openings.

14.　TOOLS AND EQUIPMENT: Repair and maintain an adequate supply of tools and supplies for each part of the job.

15.　All employees shall be given frequent accident prevention instructions. Instructions shall be given at least once every 10 days.

SIGNED  DATE: 5-15-04

SIG 000472

**Abella Villas Condominiums**
Specific Scope of Work
## MIRRORS, WARDROBE DOORS, TUB ENCL, CLOSET SHELVING: 2072,2073,2074,2076

Western Shower Door, Inc.

### REV. 4/28/04

The following documents are part of the subcontract and are referenced as follows:

A. Architectural Drawings by KTGY Group, last revised 12/16/03.
B. Structural Drawings by, Bay Area Engineering, Inc., last revised 12/18/03.
C. Mechanical Drawings by, FARD Engineers, Inc., last revised 12/18/03.
D. Electrical Drawings by, FARD Engineers, Inc., last revised 12/16/03.
E. Plumbing Drawings by, FARD Engineers, Inc., last revised 12/16/03.

SUBCONTRACTOR agrees to furnish the necessary labor, materials, tools, implements, equipment and appliances required to perform and complete in a substantial workmanlike manner and free from any and all liens and claims of artisans, materialmen, other Subcontractors, equipment suppliers and laborers therein, all **Mirror/ Shower Door/ Closet Shelving/ Wardrobe doors.**

## A. GENERAL

2073.001     **SUBCONTRACTOR** is responsible for all materials until final installation and acceptance by CONTRACTOR. Any loss due to theft or breakage prior to acceptance by CONTRACTOR shall be replaced by SUBCONTRACTOR at no additional cost to CONTRACTOR.

2073.002     **SUBCONTRACTOR** agrees herein that any labor, materials, and/or workmanship that does not comply to the CONTRACTOR'S standards shall be removed and replaced to conform to the CONTRACTOR'S standards.

2073.003     **SUBCONTRACTOR** further agrees that the quality of his workmanship and his materials shall be in strict accordance with the plans and these specifications.

2073.004     **SUBCONTRACTOR** shall strictly comply with all applicable City, County, State, FHA, and VA codes.

2073.005     **SUBCONTRACTOR** shall warranty all work for two years from the date of the initial occupancy of the particular residential unit.

2073.006     **SUBCONTRACTOR** shall fully coordinate work and cooperate with the framing, and painting SUBCONTRACTORs. CONTRACTOR shall not accept any backcharges or extra costs due to conflicts or disputes between any SUBCONTRACTORs.

2073.07     **SUBCONTRACTOR** shall perform all duties herein so as not to impede the progress of any other SUBCONTRACTORs.


Subcontractor's Initials


Signature Properties

SIG 000473

2073.008    **SUBCONTRACTOR** shall inspect framing and other related work before installing and immediately notify CONTRACTOR'S Project Superintendent of any unacceptable work. Commencement of SUBCONTRACTOR'S work shall represent acceptance of previous subcontractor's work.

2073.009    **SUBCONTRACTOR** shall purchase a business license if required by the City or the County.

2073.010    **SUBCONTRACTOR** agrees herein that it is his sole responsibility to personally verify that he has the latest approved plans for construction.

2073.011    **SUBCONTRACTOR** will adhere to all requirements of the General Construction Activity Storm Water permit and be responsible for its enforcement by their employees and anyone working under their control.

2073.012    **SUBCONTRACTOR** agrees herein that this scope supersedes all bid, proposal, quote or addendum restrictions submitted by SUBCONTRACTOR.

2073.013    **SUBCONTRACTOR** shall supply one qualified employee, independent of production crew, to handle all customer service and/or warranty claims through duration of project.

2073.014    **SUBCONTRACTOR** agrees to provide and install buyer options at the prices listed in this agreement.

## B. CLEAN-UP

2073.015    **SUBCONTRACTOR** shall clean up and remove all debris relating to his work. Should SUBCONTRACTOR fail to perform this function in a timely manner, in conjunction with his work sequence through the project, CONTRACTOR reserves the right to have this work performed by others and backcharge SUBCONTRACTOR accordingly.

## C. PROJECT SPECIFICS

2073.016    _MIRRORS: 2073_

(Master, Secondary and Powder Bathrooms)
1.   Mirror type – Square cut float glass mirror with polished edges
2.   Mirror thickness – 1/4"
3.   Trim material – Aluminum "J" channel
4.   Trim color – Bright silver

2076.001    _WARDROBE DOORS: 2076_

Master Bedroom
1.   Brand – Classique
2.   Model – Carrara
3.   Style – Pre-Hung, 3 hinge Mirror Door
4.   Material – Wood door with mirror inset on hall side
5.   Color – Painted Swiss Coffee
Secondary Bedroom
1.   Brand – Classique
2.   Model – Carrara
3.   Style – Bi-pass doors
4.   Material – Wood door
5.   Color – Painted Swiss Coffee



Subcontractor's Initials



Signature Properties

2074.001   _SHOWER ENCLOSURES: 2074_

      a.    Brand - N/A
      b.    Frame -Aluminum sliding bi-pass
      c.    Finish - Chrome
      d.    Glazing – 1/8" clear tempered safety glass
      e.    Height - Per architectural plans
      f.    Door hinge – N/A
      g.    Hardware - Integral towel bar

_CLOSET SHELVING:  2059_

2059.001      **SUBCONTRACTOR** agrees to supply and install all closet shelving per plans and specifications.

**D. EXTRA WORK**

2073.018      Should extra work outside this contract be required for unforeseen conditions, SUBCONTRACTOR shall perform extra work on a time and material basis with material at cost plus 10% and labor at the following rate:

      I.    Installer at regular time    $65   /hour

Should said work require a special trip, SUBCONTRACTOR acknowledges CONTRACTOR will pay only one way travel time.

**THE REST OF THIS PAGE IS BLANK**



Subcontractor's Initials



Signature Properties

**Signature Properties**
4670 Willow Road, Suite 200
Pleasanton, CA  94588-2710

*SEQUENCE SHEET*

TRACT:  8781          RELEASE:  0          INITIAL DATE:   10/27/2003
NAME:  Abella Villas                      REVISION INFORMATION:
No. OF UNITS:    14

| Tract | Lot | Address | Plan | Sq. Ft. | Elev | Garage | Color Scheme | Options |
|-------|-----|---------|------|---------|------|--------|--------------|---------|
| 8781 | 100 | 100 Carmel Street | 3 | 1,449 | A-R | | | Unit #1 |
| 8781 | 102 | 102 Carmel Street | 3 | 1,415 | B-R | | | Unit #2 |
| 8781 | 104 | 104 Carmel Street | 1 | 1,020 | | | | Unit #3 |
| 8781 | 106 | 106 Carmel Street | 2 | 1,215 | B-R | | | Unit #4 |
| 8781 | 108 | 108 Carmel Street | 2 | 1,149 | A-R | | | Unit #5 |
| 8781 | 110 | 110 Carmel Street | 5 | 1,497 | R | | | Unit #6 |
| 8781 | 112 | 112 Carmel Street | 4 | 1,324 | R | | | Unit #7 |
| 8781 | 114 | 114 Carmel Street | 4 | 1,324 | | | | Unit #8 |
| 8781 | 116 | 116 Carmel Street | 5 | 1,497 | | | | Unit #9 |
| 8781 | 118 | 118 Carmel Street | 2 | 1,149 | A | | | Unit #10 |
| 8781 | 120 | 120 Carmel Street | 2 | 1,215 | B | | | Unit #11 |
| 8781 | 122 | 122 Carmel Street | 1 | 1,020 | | | | Unit #12 |
| 8781 | 124 | 124 Carmel Street | 3 | 1,415 | B | | | Unit #13 |
| 8781 | 126 | 126 Carmel Street | 3 | 1,449 | A | | | Unit #14 |

SUMMARY

| PLAN | | A | A-R | B | B-R | R | Total |
|------|---|---|-----|---|-----|---|-------|
| 1 | 2 | 0 | 0 | 0 | 0 | 0 | 2 |
| 2 | 0 | 1 | 1 | 1 | 1 | 0 | 4 |
| 3 | 0 | 1 | 1 | 1 | 1 | 0 | 4 |
| 4 | 1 | 0 | 0 | 0 | 0 | 1 | 2 |
| 5 | 1 | 0 | 0 | 0 | 0 | 1 | 2 |
| Total | 4 | 2 | 2 | 2 | 2 | 2 | 14 |

| ACCEPTED BY: | | |
|---|---|---|
| Robert Huggins | Linda Kime |
| Date:  7/2/04 | Date:  3/3/04 |

SIG 000476

# Exhibit 3

SIGNATURE PRO T 3, INC.
4670 Willow Road, Suite 200
Pleasanton, CA 94588-2710

*Insight
Townhomes*

**Material Supply
Sub-Contract**

TRACT NAME: ABELLA TERRACE          TRACT NO.: 8575          COST CODE: 2033

THIS AGREEMENT, made and entered into this 18TH day of JUNE , 2002 by and between INSIGHT GLASS INC.
hereinafter called the Supplier, and Signature Properties, Inc., hereinafter called Signature.

Supplier agrees as follows:

1. To supply necessary materials as they apply to the plans and specifications furnished by Signature and to secure all field measurements necessary, required by the Scope of Work or at the Tract Superintendent's request:

THIS ATTACHED EXHIBITS ARE MADE A PART OF THIS CONTRACT BY THIS REFERENCE.

2. The above materials are to be delivered to Tract No. 8575, City of SAN PABLO County of CONTRA COSTA , (the "Project") in accordance with the attached Sequence Sheet and to such additional lots as may be designated by Signature, with the specific understanding that all other deliveries to the Project authorized in writing shall be subject to and become a part of this Sub-Contract.

3. To pay for all materials, skill, labor, tools and equipment used in, or in connection with, the performance of this contract, when and as bills or claims therefore become due. To ensure that no claims or mechanic's liens are filed against the premises or Signature on account of Subcontractor's performance of this contract and to provide satisfactory evidence to Signature, when and if required, that Supplier has complied with the requirements set forth in this section. By making this promise, Supplier in no way waives its right to enforce a lien against Signature in the event that Signature fails to pay Supplier for its performance of this contract on the terms set forth herein. Upon demand from the Signature, Subcontractor shall cause the removal of any mechanic's liens filed against the Property due to Subcontractor's non-payment of obligations whether or not such non-payment is justified.

4. To deliver materials on the date set forth by tract superintendent or within TWO (2) calendar days after being notified in writing by Signature to do so.

5. That no extension of time of performance of this Sub-Contract shall be valid without Signature's written consent.

6. Not to assign this contract or to sublet the same, or any part of this contract covering materials delivered to the Project, without first obtaining Signature's written consent.

7. To employ no person on the job site or who makes deliveries to the job site whose employment on or in connection with this Sub-Contract may be reasonably objectionable to Signature and to discharge any such person when reasonably objected to by Signature.

8. During the term of this Sub-Contract, Signature may increase or decrease the quantities ordered, make changes to the specifications or drawings, change the time of delivery or terminate this Sub-Contract by written notice to Supplier. Any adjustment in the contract price made pursuant to the above-mentioned changes shall be made on the per unit cost of the material as set forth in Supplier's bid, or if no such bid exists, adjustments to the contract price shall be made on a reasonable per unit cost. Supplier shall be entitled to any price adjustments based on quantity as set forth in Supplier's bid. Signature shall be obligated to pay for all materials delivered prior to Supplier's receipt of the change order or notice of termination. Signature shall not be liable for lost profits, consequential damages or other claims that Supplier could otherwise assert as a result of these changes.

9. Signature shall have the right to inspect and test the materials at Supplier's plant anytime prior to shipment and to conduct additional inspections at any time after the materials are delivered to the job site. If the materials are rejected due to (a) any variation from the specifications or (b) Supplier's failure to meet the delivery date, the Supplier agrees to remove the rejected materials from the job site within 48 hours of receiving notification of such rejection. During that time, the materials will be held subject to and in accordance with Sections 2602 and 2711 of the California Commercial Code. The making or failure to make any inspection, acceptance of, or payment for, the materials shall not impair Signature's right to later reject nonconforming materials, or to avail itself of any other remedy to which Signature may be entitled, including but not limited to those remedies set forth in Section 2711 et.seq. of the California Commercial Code. Supplier shall be liable for all inspection, reshipment, and return costs on nonconforming materials. Supplier shall replace any returned materials as directed by Signature.

10. If Supplier fails to cure a nonconforming or defective delivery of materials furnished under this Sub-Contract, or fails to complete the delivery within the time breach provided for, or breaches any provision or condition of this Sub-Contract, Signature upon twenty-four (24) hours written notice to Supplier shall have the right to order a substitute delivery from an alternate supplier and to charge any costs over and above the original contract price to Supplier.

11. Supplier warrants to Signature that it has reviewed the specifications, drawings, samples or other descriptions related to the above-mentioned Project. Supplier warrants that the materials shall be free from all defects and shall be fit for the purposes intended. Supplier warrants that the materials shall conform to the specifications, performance standards, drawings, samples, or other descriptions contained in the plans and specifications. Supplier warrants that the materials will be complete in all respects necessary to make the material fully functional. All warranties including any express manufacturer's warranties, implied by law or usage of trade are incorporated into this Sub-contract and shall apply to all materials ordered. All warranties and guarantees given by the Supplier hereunder shall remain in effect until the termination of any and all liability Signature may have to any purchaser of the improvements of which the materials are a part, or any successor owner or purchaser thereof. The materials are ordered by Signature in reliance on each and all of the warranties, guarantees, and indemnities specified herein and implied by law or usage of trade. Signature's remedies pursuant to this paragraph are in addition to, and not a limitation on, all other remedies allowed by law.

12. Supplier shall strictly conform with all applicable Federal, State and Local laws, codes and regulations and all municipal ordinances and regulations effective where the work is to be performed under this contract, including but not limited to, all Federal, State and Local non-discrimination in employment provisions and Signature's own internal safety program. Supplier shall execute and deliver all documents as may be required to effect or evidence compliance. Without limiting the foregoing Supplier shall comply with all requirements, regulations, orders, and directives promulgated under the Federal Occupation Safety & Health Act, the California Occupational Safety & Health Act, and the California Safe Drinking Water and Toxic Enforcement Act of 1986, including but not limited to the supply, maintenance and dissemination as required of Material Safety Data Sheets and all other required notices for hazardous materials or chemicals supplied or sold under Sub-Contract. Supplier shall pay all fees, taxes, including sales and use taxes, and expenses connected with such compliance and also to pay all taxes imposed by any State or Federal Law for any employment insurance, pension, old age retirement funds or any similar purpose.

13. Supplier shall pay all royalties and licensing fees arising in connection with the sale or use of materials hereunder. Supplier further understands and agrees to indemnify, hold harmless and defend Signature, at Supplier's expense, from and against all suits, actions or proceedings in which Signature, its successors, assigns, customers, or users of its customer's products are made defendants for actual or alleged infringement under this Subcontract.

14. That Supplier's acceptance of the last payment, as set forth in Exhibit "C," shall operate as, and shall be a release to Signature from all claims and liability to Supplier from anything done, or furnished for, or relative to, the materials delivered, or for any act or neglect, of Signature relating to or affecting the delivery.

X _____          2 _____
SUBCONTRACTOR.                     SIGNATURE PROPERTIES, INC.

**3-1**

15. Should one or more other contracts now or hereafter exist between the parties hereto or w.... any affiliated company of Signature, concerning this or any construction project, then a breach by Supplier of any contract may at the option of Signature be considered a breach of all contracts. In such event, Signature may terminate any or all of the contracts so breached, or withhold monies due or to become due any of such contracts and apply the same toward payment of any damages suffered on that or any other of such contract.

16. The price herein specified shall include all taxes and duties of any kind levied by federal, state, municipal, or other governmental authorities, which either party is required to pay with respect to the production, sale, use, or shipment of the materials covered by the this Sub-Contract, and all charges for packing, loading, unloading and shipping. If transportation costs are designated as part of the cost to Signature, only actual transportation costs shall be included. Supplier shall supply a shipping tag with material delivery. Supplier's shipping tag shall set forth the items delivered, the date of delivery, the Job name, the tract number, the release number and lot numbers.

17. Supplier shall be responsible for all risk of loss for materials until Signature's written acceptance of the shipping tag described in Section 16 above.

18. This Sub-Contract shall be governed and construed under the laws of the State of California. Whenever Signature is not the ultimate consumer of the materials, all rights, benefits, and remedies conferred upon Signature hereunder shall accrue and be available to and are for the express benefit of any successor in interest to the materials, including the ultimate consumer of the materials. The materials means the supplies, drawings, data and other property and all services, including design, delivery, installation, inspection, and testing specified or required to furnish the materials or services ordered.

19. Subcontractor agrees to indemnify, defend and hold harmless Signature, its officers, directors, and employees, Signature's affiliates and subsidiaries, licensees of the aforementioned and its officers, directors and employees from and against any claims, damages, liabilities, losses, costs, and expenses (including but not limited to all costs of litigation, attorney fees, and expert witness fees) arising out of or claimed to have arisen out of death, injuries or damages to any and all persons (including claims by employees of Subcontractor and its sub-subcontractors), and damage to any and all property, in any way caused by any or failures to act in connection with the performance of this contract by Subcontractor, sub-subcontractor, materialmen or other persons provided or allowed on the job by one or more of the aforementioned. This indemnity shall apply in the event that Signature is partially at fault but shall not apply if Signature is solely at fault. If there are any such injuries to persons or properties unsettled for when the work herein provided for is finished, final settlement between Signature and Supplier shall be deferred until such claims are adjusted or suitable indemnity acceptable to the Signature is provided by the Subcontractor.

SPECIAL CONDITIONS

Signature agrees as follows:

1. To pay Supplier for the full, faithful and prompt performance of this contract agreement, subject to all terms and conditions hereof, the sum of _____ SEE ATTACHED EXHIBIT "C" _____ Dollars ($ _____ SEE ATTACHED EXHIBIT "C" _____ ), payment to be made as follows:

Payment shall be made upon receipt of bills, including withholding tax receipts, acknowledging payment and/or releases from all material suppliers and labor, satisfactory to Signature.

In the event any such liens have been filed, any payment not made before the filing of such lien shall not be due and payable until such lien has been adjudicated, satisfied and released.

2. It is mutually agreed that Supplier shall receive each progress payment in trust as allaction for all materials to be furnished, equipment rented and work to be performed pertaining to such payment and no part thereof shall vest in Supplier until it has first paid in full for all such materials furnished, equipment rented or labor performed.

3. That if notification of any claims against the Supplier arising out of materials furnished the project covered by this agreement has been made to Signature, it may, at its discretion, withhold sufficient funds from the final or other payments to cover the costs of any such claims, pending their legal settlement.

IN WITNESS WHEREOF, Signature and Supplier have hereunto set their hands in duplicate the day and year first above written.

INSIGHT GLASS INC.
SUPPLIER

_Peter Henderlite_ CR
SUPPLIER'S SIGNATURE AND TITLE

Peter Henderlite
PRINT NAME

3150 BAYSHORE ROAD
BENICIA, CA 94510
ADDRESS

(707) 746-6571
BUSINESS PHONE

68-0128719
TAX ID #

599566
CONTRACTORS LICENSE NUMBER

SIGNATURE PROPERTIES, INC.
OWNER/CONTRACTOR

PATRICK SHARKEY, CONTRACTS MANAGER

#487-435
CONTRACTORS LICENSE NUMBER

06/18/02

## EXHIBIT "C"

### ABELLA TERRACE
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

PRICES INCLUDE ALL TAXES, APPLICABLE FEES AND MATERIALS FOR A
COMPLETE JOB PER PLANS AND SPECIFICATIONS AND ARE GUARANTEED FOR
THE COMPLETION OF THE MODELS, 4 UNITS, LOTS 16-19 (TRACT 8575).

| UNIT | TOTAL PRICE |
|------|-------------|
| 4-PLEX | $7,480.00 |

### OCIP INSURANCE PREMIUM DEDUCTION
TO BE NEGOTIATED WITH OCIP CONSULTANT

### PROGRESS PAYMENT SCHEDULE

"A" DRAW – 90% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF
WINDOWS   95%

"B" DRAW – 10% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL
BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.

BY: _____             BY: _____
ITS: _____            PATRICK SHARKEY,
                                  CONTRACTS MANAGER
DATE: 6/26/02                     DATE: _____

*3-3*

## ABELLA TERRACE

### Exhibit "D"
### Insurance Requirements

All Subcontractors, consultants (including architects and engineers) and suppliers delivering materials or performing work on a Signature Properties, Inc. project *must have insurance*. All insurance must meet Signature Properties, Inc. requirements. Any deviations from the standard requirement must be approved by Signature Properties, Inc. All insurance documentation must be submitted to Signature Properties, Inc. upon execution of contract.

1.  **Workers Compensation:**

    a)   Employer's Liability with policy limits of $ 1,000,000.00.
    b)   Waiver of Subrogation.

2.  **Comprehensive General Liability Insurance as provided in the Project Wrap Up Policy:**

    a)   The parties agree to the terms and provisions of Exhibit D-1, attached hereto and incorporated by this reference.

3.  **Automobile Liability, Bodily Injury, Property Damage:**

    a)   Each Occurrence/aggregate:   $ 1,000,000.00.
    b)   Any Automobile (includes owned, non-owned and hired.)

4.  **Job description to read "Abella, San Pablo, California."**

5.  **Policy Cancellation Requirement/Notices:**

    a)   The words "But failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" should be *lined out* or a thirty (30) day endorsement must be attached to the Certificate of Insurance.

6.  **Insurance Company Rating:**

    a)   Insurance Company must have A.M. Best Rating of A or A-/VI or better.

7.  **Additional Insured Endorsement:** Please note that an Additional Insured Endorsement is only required if Subcontractor has decided to maintain additional general liability insurance in excess of that provided by the Project Wrap Up Policy:

    a)   (Form CG20 10 ~~11 85~~) covering Signature at Abella, LLC and Signature Properties, Inc.
    b)   Endorsement to include the following provision:

    i)   Claims, losses or liability from "on premises" operations:

    *Please note: Since Insight is a supplier, the "wrap-up" program is not applicable*

    "~~The Project Wrap Up Policy shall be primary insurance as respects to any~~ claims, losses or liability ~~arising directly or indirectly from the Subcontractor's~~ on premises operations ~~and other insurance maintained by Subcontractor shall be non-contributory with the insurance provided thereunder.~~"

    Claims, losses or liability from "off premises" operations:

    "Subcontractor's insurance shall be primary insurance as respects to ~~any claims,~~ losses or liability ~~arising directly or indirectly from the Subcontractor's off~~ premises operations ~~and other insurance maintained by Signature at Abella,~~ LLC and Signature ~~Properties, Inc. shall be non-contributory with the insurance provided thereunder.~~"

Subcontractor's failure to provide and maintain such insurance shall be deemed as a material breach of this Sub-Contract. Owner is hereby granted the right to withhold, without interest, any payment due Subcontractor during any time that Owner does not have in its possession a validly issued, unexpired certificate of insurance, acceptable to Owner, complying with the above-described conditions.

_____          _____
SUBCONTRACTOR                    SIGNATURE PROPERTIES, INC.

Not applicable
for Insight

## Exhibit D-1
### General Liability Insurance Wrap-Up Program
### (Subcontractor)

Signature at Abells, LLC ("Owner") is the owner of the Project and has obtained a third party General Liability Insurance Policy (the "Policy") which is intended to cover the costs of all the claims related to the design and construction of the improvements of the Project that occur on the Project premises, subject to those exclusions set forth in the Policy. The Policy is intended to provide general liability insurance coverage for Owner, Client, Subcontractor and all other subcontractors and contractors who are enrolled in the Insurance Wrap-Up Program for the Project (the "Program"). The Policy currently has a Three Million Dollar ($3,000,000) limit, which amount may be adjusted upward, and provides coverage for claims on an occurrence basis.

In addition to Policy exclusions mentioned above, the Policy will not cover:

1. General liability claims arising from claims occurring off the Project premises, including claims arising from the manufacture of materials and fixtures that will ultimately be incorporated into the Project;

2. Any workers' compensation or employer's liability claims;

3. Auto liability and physical damages claims;

4. Any claims for loss of or damage to business personal property, including Subcontractor's equipment used on the Premises ("Scheduled Equipment"); and

5. First party professional liability claims.

**PLEASE NOTE:** The summary set forth above is not intended to, and shall not, modify the terms and provisions of the Policy. Subcontractor is responsible for reviewing and obtaining any necessary counsel regarding the Program and the Policy and expressly acknowledges the lack of any reliance upon any representations made by Owner, Client or their representatives regarding the nature and quality of the insurance provided by the Policy.

A. Policy Premium. Client shall be responsible for paying the premium associated with the Policy. Subcontractor shall contribute its "fair share" of the Policy premium, which amount shall be equal to the premium Subcontractor would have paid to its current insurer to obtain general liability insurance coverage for Subcontractor's work on the Project ("Subcontractor's Contribution"). Subcontractor shall provide Client with the following documents and/or information: (i) the Insurance Allocation Worksheet; (ii) the Declarations Page from Subcontractor's current general liability policy; (iii) the Ratings Page from Subcontractor's current general liability policy; and (iv) current payroll or gross receipts information needed in order to generate the premium allocation within ten (10) business days after receipt of written request from Client. Should Subcontractor fail to supply Client with this information within ten (10) business days, Client shall deduct two percent (2%) of the contract amount as Subcontractor's Contribution as satisfaction of Subcontractor's obligation under this Section A.

A.1. Premium Based on Payroll. In the event that Subcontractor's Contribution is based on payroll for the Project, Subcontractor shall supply Client with an estimated payroll amount for the portion of the Project awarded to Subcontractor. Should Client decide, in its sole discretion, to audit Subcontractor's payroll, Subcontractor agrees to supply Client with certified payroll records for the Project within five (5) business days of receipt of Client's written request.

A.2. Minimum and Deposit Premium. In the event that Subcontractor is in a minimum and deposit premium payment situation with respect to its general liability insurance, Subcontractor shall have the right to present proof to Client at the end of the policy year that the total amount of Subcontractor's work conducted within the policy year has not caused Subcontractor to exceed the minimum premium threshold. In such an event, Client shall reimburse Subcontractor for the amount of the Subcontractor's Contribution.

n:\projects\abells\Const\Const\Exhibit D-1 (sub) abells 4.2.02.doc

1

B. <u>Errors and Omissions</u>. The Policy will cover third party claims for errors and omissions in design work for the Project that result in bodily injury or property damage, but the Policy will not cover (a) third party claims for errors and omissions in design work for the Project that only result in economic loss or (b) first party claims for errors and omissions in design work for the Project. Therefore, Subcontractor must obtain Errors and Omissions Insurance to cover any first party claims associated with the Project.

C. <u>Self Insured Retention</u>. Client shall be responsible for paying the self insured retention for each claim/occurrence covered by the Policy ("Covered Claim"). In the event that Subcontractor is determined to be a cause of a Covered Claim, Client shall be entitled to a credit in an amount equal to the deductible or self insured retention provided for in the Subcontractor's existing general liability or errors and omissions policy, as applicable (the "SIR Credit") against any amounts currently due or due in the future under this Agreement for Subcontractor's work (collectively, the "Available Funds"). In the event the Available Funds are insufficient to pay the full amount of the SIR Credit, Subcontractor agrees to pay the amount of the shortfall to Client within thirty (30) days after the date of Client's written request.

D. <u>Excess General Liability and Errors and Omissions Insurance</u>. Owner has elected to procure insurance in the limits set forth in the Insurance Manual. Owner/Client makes no representation to Subcontractor that the limits are adequate for insurance coverage on the Project. Subcontractor may, at its own discretion, decide to procure additional insurance to the limits provided by the Policy. Client requires that should Subcontractor purchase insurance for this purpose, Subcontractor shall provide notice to Client of the existence of said insurance as well as proof that such insurance has adequate provisions to make it excess to the Policy and not co-insurance with the Policy.

E. <u>Duty to Enroll Sub-Subcontractors</u>. Subcontractor acknowledges that it is aware of the provisions contained in the Insurance Manual which require the enrollment of subtiered contractors into the Program. Subcontractor shall take all steps to cooperate with Owner/Client to enroll all lower tiered subcontractors into the Program and shall notify Client before lower tier Subcontractors commence work on the project.

F. <u>Waiver of Subrogation</u>. Client and Subcontractor hereby waive their respective rights of subrogation as to each other and any other party participating in the Program; provided, however, that the foregoing waiver of subrogation applies only to the extent that defense and coverage is actually provided by the Policy covering the entirety of the costs and value of the claim.

CLIENT:                                SUBCONTRACTOR:

Signature Properties, Inc.,
a California Corporation,

By: _____           By: _____

Its: _____          Its: _____

CA State Contractor's License No.:

    487435                            _____

2

**3-6**

## Exhibit "E"

### Invoicing Procedures and Payment Processing Guidelines

1. All invoices must include Project name, Tract number, Lot number, Date of work, Explanation of work performed, Individual requesting the work, and must reference a Purchase Order or Customer Change Order number where applicable.

2. Invoice by Project (do not include multiple projects, or more than one contract on a single invoice).

3. Original invoices and Lien Releases are required to process payments (copies or faxes are accepted *only* upon request from Signature Properties management or authorized personnel).

4. 7-10 days prior to progress payment being made, all release forms must be submitted. You must include a new "Lien Release Form" (Forms Enclosed), for each progress payment or invoice submitted. Each release must be signed by an officer of the company and *Notarized. No payment will be made without this release form*. Progress Payments will be issued not sooner than five (5) working days after receipt of all applicable labor and material release forms.

5. When billing for "Extra Work" over and above this contract, a Purchase Order number must be referenced on the invoice or it will be returned to your office. This, too, must have a release form.

6. Invoices must be submitted within 90 days of completion of work. This includes extras, customer changes and contractual work. Inquires relating to payment processing and/or non-payment of invoices or progress payments are limited to 120 days after completion of work. Invoices or inquires received after the allotted time period will not be accepted.

7. FAILURE TO COMPLY WITH THE ABOVE WILL RESULT IN TIMELY DELAYS IN PAYMENT.

8. Invoicing for Models and Retention are no longer required. Retention will be added as a final draw to the progress payment schedule and paid upon approval.

9. Exhibit "P" will no longer be an Exhibit in the contract. It is available upon request from our project accountant.

10. Signature Properties, Inc. reserves the right to issue joint checks. Signature Properties, Inc. will NOT sign third party agreements. All Sub-Contractors should be made aware of these facts.

All invoices or requests for payment must be mailed to the Signature Properties main office and date stamped. Mail to: 4670 Willow Road, Suite 200, Pleasanton, CA 94588-2710. Invoices that meet the above requirements will be paid within thirty (30) days upon receipt of the invoice, unless otherwise stipulated in the contract.

Reasons for returning Invoices:

1. Invoice does not meet the requirements listed above.
2. Invoice received prior to work being completed and accepted.

_____          _____
          SUBCONTRACTOR                    SIGNATURE PROPERTIES, INC.

ABELLA TERRACE

EXHIBIT "F"

INSIGHT GLASS INC.

SUPPLIER'S LIST

| | SUPPLIER NAME | PRODUCT SUPPLIED |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |

IF NO SUPPLIERS ARE LISTED ABOVE
PLEASE CIRCLE ONE

N/A

PREPAID STOCK

_____
SUBCONTRACTOR

_____
SIGNATURE PROPERTIES, INC.

**3-8**

## EXHIBIT "W"

### WARRANTY GUARANTEE

1. Unless otherwise specified in the original contract, the Subcontractor guarantees his work against all defects of materials and workmanship for a period of one year from the date of close of escrow of the original buyer. This warranty shall be in addition to all other rights and privileges which the Contractor/owner may have under any other law. Neither the final payment nor any other provision in the contract documents shall relieve the Subcontractor of responsibility for faulty materials or workmanship.

2. The Subcontractor shall remedy at its sole cost and expense, during the one year warranty period, any defects due to its faulty materials or workmanship. The Subcontractor shall pay for any damage to other work or materials resulting therefrom, within 5 working days after being notified by the Contractor. Failure to comply with the above may result in the Contractor hiring another Subcontractor to complete the work, and backcharging the Subcontractor for any and all costs incurred to complete the work. The Subcontractor is responsible for contacting the owner/s as directed by the Contractors Warranty Representative.

3. The Subcontractor further agrees to arrive on time for any appointments and/or notify the owner/s and the Contractors Warranty Representative of any delays or changes regarding the appointment.

4. Subcontractor shall identify his/her self and the company name prior to entry into the owner/s home. The Subcontractor shall treat the owner/s property as his/her own and shall not park in the owner's driveway. In order to minimize owner/s inconvenience the Subcontractor is to have all necessary tools, equipment, and material, necessary to complete the job as scheduled. The Subcontractor will take care to protect all wall and floor coverings, furniture, etc. from dirt and damage. He/she shall not eat, drink or smoke on or in the owner/s property. He/she will clean up any and all dirt and debris caused by their work and remove same from the site. The Subcontractor shall not use any of the facilities within the home without the owner's permission. It is the Subcontractors responsibility to leave notification with the owner/s each time work is performed prior to leaving the property.

5. The Subcontractor further agrees to not become argumentative with the owner/s and must report any disagreements to the Contractor Warranty Department. Any other work required noted by the Subcontractor and not included in his/her warranty shall be immediately reported to the Contractor and not to the owner/s.

6. The Subcontractor is to obtain owner/s signature of completion of work on the warranty repair tag (when possible) and forward said document to the Contractors Warranty Department within 5 days after the completion of the work. Any follow up visits required to complete the work must be scheduled immediately and such time must be forwarded to the Contractors warranty representative.

7. All heating, electrical, plumbing and fire sprinkler Subcontractors must respond to service requests within 24 hours upon notification. Said same Subcontractors are to maintain a current and accurate 24 hour emergency phone number available to the Contractor in order to comply with the above. All other Subcontractors must respond within 5 days of notification.

_____
SUBCONTRACTOR

_____
SIGNATURE PROPERTIES, INC.

## SPECIFIC SCOPE OF WORK
## WINDOWS: 2033

SUBCONTRACTOR agrees to furnish the necessary labor, materials, tools, implements, equipment and appliances required to perform and complete in a substantial workmanlike manner and free from any and all liens and claims of artisans, materialmen, other subcontractors, equipment suppliers and laborers therein, all WINDOWS/WINDOW INSTALATION by others.

### A. GENERAL

2033.001 SUBCONTRACTOR is responsible for all materials until ~~final installation and acceptance~~ by CONTRACTOR. Any loss due to theft or breakage prior to acceptance by CONTRACTOR shall be replaced by SUBCONTRACTOR at no additional cost to CONTRACTOR.

2033.002 SUBCONTRACTOR agrees herein that any labor, materials, and/or workmanship that does not comply to the CONTRACTOR'S standards shall be removed and replaced to conform to the CONTRACTOR'S standards.

2033.003 SUBCONTRACTOR further agrees that the quality of his workmanship and his materials shall be in strict accordance with the plans and these specifications.

2033.004 SUBCONTRACTOR shall strictly comply with all applicable City, County, State, FHA, and VA codes.

2033.005 SUBCONTRACTOR shall warranty all window work for two years from acceptance of work by CONTRACTOR.

2033.006 SUBCONTRACTOR shall fully coordinate work and cooperate with the framing, stucco, drywall, and painting subcontractors. CONTRACTOR shall not accept any backcharges or extra costs due to conflicts or disputes between any subcontractors.

2033.007 SUBCONTRACTOR shall perform all duties herein so as not to impede the progress of any other subcontractors.

2033.008 ~~SUBCONTRACTOR~~ Installation by others. shall inspect framing and other related work ~~before installing windows and immediately notify~~ CONTRACTOR Project Superintendent of any ~~unacceptable work. Commencement of SUBCONTRACTOR'S work shall represent acceptance of previous trades work.~~ Insight not responsible for the work of others.

2033.009 SUBCONTRACTOR shall ensure that all sliding doors meet local security requirements, to positively prevent sliding panel from being lifted out of track when closed.

2033.010 SUBCONTRACTOR guarantees all glass shall be free of objectionable bubbles, defects or excessive waves.

2033.011 SUBCONTRACTOR shall provide tempered glass as indicated on plans, unless otherwise required by code.

2033.012 SUBCONTRACTOR shall purchase a business license if required by the City or the County.

2033.013 SUBCONTRACTOR agrees herein that it is his sole responsibility to personally verify that he has the latest approved plans for construction.

2033.014 **SUBCONTRACTOR** shall adhere to all requirements of the General Construction Activity Storm Water Permit and be responsible for its enforcement by their employees and anyone working under their control.

2033.015 **SUBCONTRACTOR** agrees herein that this scope supersedes all bid, proposal, quote or addendum restrictions submitted by SUBCONTRACTOR.

2033.016 **SUBCONTRACTOR** shall supply one qualified employee, independent of production crew, to handle all customer service and/or warranty claims through duration of project.

### B. WORKMANSHIP

2033.017 **SUBCONTRACTOR** shall deliver all windows in "house packs" securely bound together and legibly tagged with lot numbers.

2033.018 **SUBCONTRACTOR** to deliver, unload and spread all windows and sliding glass doors in locations specified by CONTRACTOR Project Superintendent.

2033.019 **SUBCONTRACTOR** shall inspect all windows and doors immediately after unloading to identify any missing or damaged items. Damaged items shall be immediately replaced. Missing items shall be agreed upon by window company's delivery person and CONTRACTORS Representative, and thereafter, window company shall be notified immediately.

2033.020 ~~SUBCONTRACTOR shall have a knowledgeable representative at the job site to perform installation of windows.~~ *Installation by others. A*

2033.021 **SUBCONTRACTOR** shall install ~~window frames with glass, sliding glass door frames, sliding doors, and all window and door~~ screens. A

2033.022 **SUBCONTRACTOR** shall coordinate all his material deliveries, in such a manner as to prevent any delays in the progress of the project. SUBCONTRACTOR is responsible for scheduling of deliveries, receiving, inventorying, and handling of said materials. Material staging on site shall be approved by CONTRACTOR Project Superintendent.

2033.023 **SUBCONTRACTOR** shall perform miscellaneous window adjustments and ensure proper operation of windows at time of screen installation.

2033.024 **SUBCONTRACTOR** shall supply CONTRACTOR with touch-up paint for window frames.

### C. CLEAN-UP

2033.025 **SUBCONTRACTOR** shall clean up and place in location designated by CONTRACTOR Project Superintendent any debris generated during his work.

2033.026 **SUBCONTRACTOR** shall clean up and remove all debris relating to his work. Should SUBCONTRACTOR fail to perform this function in a timely manner, in conjunction with his work sequence through the project, CONTRACTOR reserves the right to have this work performed by others and backcharge SUBCONTRACTOR accordingly.

### D. PROJECT SPECIFICS

2033.027 **SUBCONTRACTOR** agrees all windows shall contain dual insulated glazing.

2033.028 **SUBCONTRACTOR** agrees all frames shall be white.

2033.029 **SUBCONTRACTOR** agrees all windows and doors, where so indicated on plans, shall have divided lights by "trap" munitions between the glazing panels. Munitions shall be white.

2033.030 **SUBCONTRACTOR** agrees all window and door screens shall be fiberglass mesh with aluminum frames to match windows and door frame finish (white).

**THE REST OF THIS PAGE IS BLANK**



RECEIVED
JUN 2 8 2002

1.  SIGN BOTH COPIES OF THE MATERIAL SUPPLY SUB-CONTRACT (INITIAL AS REQUESTED), EXHIBIT "C", EXHIBIT "D", EXHIBIT "D-1", EXHIBIT "E", EXHIBIT "F", EXHIBIT "G", AND SCOPE OF WORK.

    *ALTERATIONS TO THESE DOCUMENTS ARE UNACCEPTABLE!*

2.  RETURN **ALL** COPIES OF THE ABOVE TO:

    SIGNATURE PROPERTIES, INC.
    4670 WILLOW ROAD, SUITE 200
    PLEASANTON, CA 94588-2710
    ATTN: PATRICK SHARKEY

3.  PRIOR TO PERFORMING ANY WORK ON THE JOBSITE, OBTAIN A <u>CITY BUSINESS PERMIT</u> AND FORWARD TO THIS OFFICE A COPY OF THAT PERMIT.

    ENCLOSURES:        *BUILDING MATERIAL SUPPLY SUB-CONTRACT
                       *EXHIBIT "C"
                       *EXHIBIT "D"
                       *EXHIBIT "D-1"
                       *EXHIBIT "E"
                       *EXHIBIT "F"
                       *EXHIBIT "W"
                       *SCOPE OF WORK
                       SEQUENCE SHEET
                       MECHANICS & MATERIALMAN'S LIEN RELEASE FORMS
                       TRACT MAP

*MUST BE SIGNED AND/OR INITIALED AND RETURNED TO THIS OFFICE PRIOR TO PERFORMING ANY WORK ON THE JOBSITE.*

INITIAL/ PATRICK SHARKEY

10/22/02

## ADDENDUM #1 TO CONTRACT DATED 6/18/02

### ABELLA TERRACE
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510



**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 1ST RELEASE OF 14 UNITS (LOTS 24-30 & 49-55), TRACT 8575.
2. EFFECTIVE WITH THE MODELS RELEASE TO INCORPORATE TO CONTRACT A CHANGE IN PAYMENT SCHEDULE.

| | UNIT 4-PLEX | TOTAL PRICE $7,480.00 |
|---|---|---|
| lots 24-30 | 7- Plex | ~~12,045.00~~ $11,321.00 |
| lots 49-55 | 7- Plex | $12,295.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

### PROGRESS PAYMENT SCHEDULE

"A" DRAW – 90% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 10% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _Peter M._
ITS: __CEO__
DATE: __10/28/02__

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: __11/1/02__

**3-14**

REV 11/1/02

## ADDENDUM #1 TO CONTRACT DATED 6/18/02

**ABELLA TERRACE**
**WINDOWS (2033)**

RECEIVED
NOV 13 2002

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**

1. INCORPORATE TO CONTRACT THE 1ST RELEASE OF 14 UNITS (LOTS 24-30 & 49-55), TRACT 8575.
2. EFFECTIVE WITH THE MODELS RELEASE TO INCORPORATE TO CONTRACT A CHANGE IN PAYMENT SCHEDULE.

| UNIT | LOTS | TOTAL PRICE |
|------|------|-------------|
| 7-PLEX | 24-30 | $11,321.00 |
| 7-PLEX | 49-55 | $12,295.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 90% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 10% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THIS MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: _____
DATE: 11/4/02

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 11/13/02

**3-15**

1/7/03

### ADDENDUM #2 TO CONTRACT DATED 6/18/02

**ABELLA TERRACE**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 2ND RELEASE OF 18 UNITS (LOTS 31-48), TRACT 8575.

| UNIT | LOTS | TOTAL PRICE |
|------|------|-------------|
| 7-PLEX | ~~24-30~~ 31-37 | $11,321.00 |
| 7-PLEX | ~~49-55~~ 42-48 | $12,295.00 |
| 4-Plex | 38-41 | $ 8,131.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**RECEIVED**
**JAN 10 2003**

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – ~~90%~~ 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – ~~10%~~ 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: CEO
DATE: 1/8/03

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 1/10/03

3/20/03

## ADDENDUM #3 TO CONTRACT DATED 6/18/02

**ABELLA TERRACE**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 3RD RELEASE OF 14 UNITS (LOTS 106-119), TRACT 8623.

| UNIT | LOTS | TOTAL PRICE | |
|------|------|-------------|---|
| 2-PLEX | ~~37-37~~ 106-113 | ~~$41,321.00~~ | $12,927.00 |
| 6-PLEX | ~~42-48~~ 114-119 | ~~$13,295.00~~ | 10,162.00 |
| ~~4-PLEX~~ | ~~38-41~~ | ~~$8131.00~~ | |

<u>**OCIP INSURANCE PREMIUM DEDUCTION**</u>
TO BE NEGOTIATED WITH OCIP CONSULTANT

<u>**PROGRESS PAYMENT SCHEDULE**</u>

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: _____
DATE: 3/20/03

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 4/8/03

**3-17**

4/7/03

## ADDENDUM #4 TO CONTRACT DATED 6/18/02

### ABELLA TERRACE
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**
EFFECTIVE WITH THE MODELS RELEASE TO REVISE ADDENDUM TO INCLUDE ALL
BUILDING TYPES IN RESPECT TO STC RATINGS. EFFECTIVE WITH LOTS 16-55, TRACT 8575,
LOTS 106-127, TRACT 8623 AND LOTS 128-169, TRACT 8645.

| RELEASE | BUILDING | LOTS | TOTAL PRICE |
|---|---|---|---|
| MODELS | 4-PLEX | 16-19 | $7,480.00 |
| 1 | 7-PLEX | 24-30 | $11,321.00 |
| 1 | 7-PLEX | 49-55 | $12,295.00 |
| 2 | 7-PLEX | 31-37 | $11,321.00 |
| 2 | 7-PLEX | 42-48 | $12,295.00 |
| 2 | 4-PLEX | 38-41 | $8,131.00 |
| 3 | 8-PLEX | 106-113 | $12,927.00 |
| 3 | 6-PLEX | 114-119 | $10,162.00 |
| 4 | 8-PLEX | 120-127 | $12,697.00 |
| 5 | 8-PLEX | 128-135 | $12,927.00 |
| 6 | 7-PLEX | 136-142 | $12,295.00 |
| 6 | 7-PLEX | 163-169 | $11,321.00 |
| 7 | 7-PLEX | 143-149 | $12,295.00 |
| 7 | 7-PLEX | 156-162 | $11,321.00 |
| 7 | 6-PLEX | 150-155 | $9,580.00 |
| MODEL BUILD OUT | 4-PLEX | 20-23 | $7,711.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE
BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT.
NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD
ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE
SUBCONTRACTOR AGREEMENT.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.


BY:                                BY:
ITS:                               PATRICK SHARKEY, CONTRACTS MANAGER
DATE:   5/8/03                     DATE:   6/10/03

*3-18*

*Insight Glass*
*Abella Courts*

02/18/04

### ADDENDUM #9 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 9TH RELEASE OF 7 UNITS, LOTS 77-83 (TRACT 8623).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: _____
DATE: _____

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: _____3/23/04_____

**3-19**

02/18/04

## ADDENDUM #9 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**

1. INCORPORATE TO CONTRACT THE 9TH RELEASE OF 7 UNITS, LOTS 77-83 (TRACT 8623).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.


BY: _____               BY: _____
ITS: _____              PATRICK SHARKEY, CONTRACTS MANAGER
DATE: _____             DATE: _____

12/5/03

### ADDENDUM #8 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 8TH RELEASE OF 11 UNITS, LOTS 184-194 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED**

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.


BY: _____            BY: _____
ITS: _____           PATRICK SHARKEY, CONTRACTS MANAGER
DATE: _____            DATE: _____

*3-21*

9/23/03

## ADDENDUM #7 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 7TH RELEASE OF 9 UNITS, LOTS 175-183 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

<u>OCIP INSURANCE PREMIUM DEDUCTION</u>
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

<u>PROGRESS PAYMENT SCHEDULE</u>

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: o/o
DATE: 9/26/03

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 10/3/0

6/24/03

## ADDENDUM #6 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 6TH RELEASE OF 10 UNITS, LOTS 56-60 (TRACT 8623) &
170-174 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED**

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE
BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT.
NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD
ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE
SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: _____
DATE: 7/1/03

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 7/8/03

5/28/03

## ADDENDUM #5 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 5TH RELEASE OF 10 UNITS, LOTS 61-65, 101-105 (TRACT 8623).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:                           ACCEPTED:
INSIGHT GLASS                       SIGNATURE PROPERTIES, INC.


BY: _____             BY: _____
ITS: _CEO_____            PATRICK SHARKEY, CONTRACTS MANAGER
DATE: _5/30/03_____             DATE: _6/2/03_____

*3-24*

5/6/03

## ADDENDUM #4 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 4TH RELEASE OF 10 UNITS (LOTS 66-70, 96-100), TRACT 8623.

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

**NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED**

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW -- 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW -- 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: _____
DATE: 6/1/03

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 6/12/03

**3-25**

2/13/03

## ADDENDUM #3 TO CONTRACT DATED 6/21/02

**ABELLA COURT
WINDOWS (2033)**

RECEIVED
MAR 2 1 2003

**INSIGHT GLASS
3150 BAYSHORE ROAD
BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 3RD RELEASE OF 10 UNITS (LOTS 71-75, 91-95), TRACT 8623.

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: CFO
DATE: 9/25/05

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 3/26/03

**3-26**

1/3/03

## ADDENDUM #2 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 2ND RELEASE OF 8 UNITS (LOTS 76, 84-90), TRACT 8623.

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**RECEIVED**
**JAN 1 8 2003**

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD RE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.


BY: _____            BY: _____
ITS: _____           PATRICK SHARKEY, CONTRACTS MANAGER
DATE: __1/8/03_____             DATE: ___1/10/03_____

**3-27**

10/22/02

### ADDENDUM #1 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**



**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 1ST RELEASE OF 10 UNITS (LOTS 6-15), TRACT 8575.
2. EFFECTIVE WITH THE MODELS RELEASE INCORPORATE TO CONTRACT A CHANGE TO PAYMENT SCHEDULE.

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: CEO
DATE: 11/28/02

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 11/1/02



1. SIGN BOTH COPIES OF THE MATERIAL SUPPLY SUB-CONTRACT (INITIAL AS REQUESTED), EXHIBIT "C", EXHIBIT "D", EXHIBIT "D-1", EXHIBIT "E", EXHIBIT "F", EXHIBIT "G", AND SCOPE OF WORK.

   *ALTERATIONS TO THESE DOCUMENTS ARE UNACCEPTABLE!*

2. RETURN <u>ALL</u> COPIES OF THE ABOVE TO:

   SIGNATURE PROPERTIES, INC.
   4670 WILLOW ROAD, SUITE 200
   PLEASANTON, CA 94588-2710
   ATTN: PATRICK SHARKEY

3. PRIOR TO PERFORMING ANY WORK ON THE JOBSITE, OBTAIN A <u>CITY BUSINESS PERMIT</u> AND FORWARD TO THIS OFFICE A COPY OF THAT PERMIT.

   ENCLOSURES:         *BUILDING MATERIAL SUPPLY SUB-CONTRACT
                       *EXHIBIT "C"
                       *EXHIBIT "D"
                       *EXHIBIT "D-1"
                       *EXHIBIT "E"
                       *EXHIBIT "F"
                       *EXHIBIT "W"
                       *SCOPE OF WORK
                       SEQUENCE SHEET
                       MECHANICS & MATERIALMAN'S LIEN RELEASE FORMS
                       TRACT MAP

*MUST BE SIGNED AND/OR INITIALED AND RETURNED TO THIS OFFICE PRIOR TO PERFORMING ANY WORK ON THE JOBSITE.*

INITIAL/ PATRICK SHARKEY

SIGNATURE PROPERTIES, INC.
4670 Willow Road, Suite 200
Pleasanton, CA  94588-2710

**Material Supply
Sub-Contract**

TRACT NAME: ABELLA COURT          TRACT NO: 8575          COST CODE: 2033

THIS AGREEMENT, made and entered into this _21ST_ day of _____ JUNE _____, 2002, by and between _INSIGHT GLASS INC._ hereinafter called the Supplier, and Signature Properties, Inc., hereinafter called Signature.

Supplier agrees as follows:

1. To supply necessary materials as they apply to the plans and specifications furnished by Signature and to secure all field measurements necessary, required by the Scope of Work or at the Tract Superintendent's request.

THE ATTACHED EXHIBITS ARE MADE A PART OF THIS CONTRACT BY THIS REFERENCE.

2. The above materials are to be delivered to Tract No. _8575_, City of _____ SAN PABLO _____ County of _____ CONTRA COSTA _____ (the "Project") in accordance with the attached Sequence Sheet and to such additional lots as may be designated by Signature, with the specific understanding that all other deliveries to the Project authorized in writing shall be subject to and become a part of this Sub-Contract.

3. To pay for all materials, skill, labor, tools and equipment used in, or in connection with, the performance of this contract, when and bills or claims therefore become due. To ensure that no claims or mechanic's liens are filed against the premises or Signature on account of Subcontractor's performance of this contract, and to provide satisfactory evidence to Signature, when and if required, that Supplier has complied with the above-mentioned changes set forth in this section. By making this promise, Supplier in no way waives its right to enforce a lien against the Property due to Subcontractor's non-payment of obligations whether or not such non-payment is justified.

4. To deliver materials on the date set forth by tract superintendent or within _____ TWO (2) _____ calendar days after being notified in writing by Signature to do so.

5. That no extension of time of performance of this Sub-Contract shall be valid without Signature's written consent.

6. Not to assign this contract or to sublet the same, or any part of this contract covering materials delivered to the Project, without first obtaining Signature's written consent.

7. To employ no person on the job site or who makes deliveries to the job site whose employment on or in connection with this Sub-Contract may be reasonably objectionable to Signature and to discharge any such person when reasonably objected to by Signature.

8. During the term of this Sub-Contract, Signature may increase or decrease the quantities ordered, make changes to the specifications or drawings, change the time of delivery or terminate this Sub-Contract by written notice to Supplier. Any adjustment to the contract price made pursuant to the above-mentioned changes shall be made on the per unit cost of the material as set forth in Supplier's bid, or if no such bid exists, adjustments to the contract price shall be made on a reasonable per unit cost. Supplier shall be entitled to any price adjustment based on quantity as set forth in Supplier's bid. Signature shall be obligated to pay for all materials delivered prior to Supplier's receipt of the change order or notice of termination. Signature shall not be liable for lost profits, consequential damages or other claims that Supplier could otherwise assert as a result of the termination.

9. Signature shall have the right to inspect and test the materials at Supplier's plant anytime prior to shipment and to conduct additional inspections at any time after the materials are delivered to the job site. If the materials are rejected due to (a) any variation from the specifications or (b) Supplier's failure to meet the delivery date, the Supplier agrees to remove the rejected materials from the job site within 48 hours of receiving notification of such rejection. During that time, the materials will be held subject to and in accordance with Sections 2602 and 2711 of the California Commercial Code. The making or failure to make any inspection, acceptance of, or payment for, the materials shall not impair Signature's right to later reject nonconforming materials, or to avail itself of any other remedy to which Signature may be entitled, including but not limited to those remedies set forth in Section 2711 et seq. of the California Commercial Code. Supplier shall be liable for all inspection, reshipment, and return costs on nonconforming materials. Supplier shall replace any returned materials as directed by Signature.

10. If Supplier fails to cure a nonconforming or defective delivery of materials furnished under this Sub-Contract, or fails to complete the delivery within the time herein provided for, or breaches any provision or condition of this Sub-Contract, Signature upon twenty-four (24) hours written notice to Supplier shall have the right to order a substitute delivery from an alternate supplier and to charge any costs over and above the original contract price to Supplier.

11. Supplier warrants to Signature that it has reviewed the specifications, drawings, samples or other descriptions related to the above-mentioned Project. Supplier warrants that the materials shall be free from all defects and shall be fit for the purposes intended. Supplier warrants that the materials shall conform to the specifications, performance standards, drawings, samples, or other descriptions contained in the plans and specifications. Supplier warrants that the materials will be complete in all respects necessary to make the material fully functional. All warranties, including any express manufacturer's warranties, implied by law or usage of trade are incorporated into this Sub-contract and shall apply to all materials ordered. All warranties and guarantees given by the Supplier hereunder shall remain in effect until the termination of any liability Signature may have to any purchaser of the improvements of which the materials are a part, or any successor owner or purchaser thereof. This materials are ordered by Signature in reliance on each and all of the warranties, guarantees, and indemnities specified herein and implied by law or usage of trade. Signature's remedies pursuant to this paragraph are in addition to, and not a limitation on, all other remedies allowed by law.

12. Supplier shall strictly conform with all applicable Federal, State and Local laws, codes and regulations and all municipal ordinances and regulations effective where the work is to be performed under this contract, including but not limited to, all Federal, State and Local non-discrimination in employment provisions and Signature's own internal safety program. Supplier shall execute and deliver all documents as may be required to effect or evidence such compliance. Without limiting the foregoing Supplier shall comply with all requirements, regulations, orders, and directives promulgated under the Federal Occupational Safety & Health Act, the California Occupational Safety & Health Act, and the California Safe Drinking Water and Toxic Enforcement Act of 1986, including but not limited to the supply, maintenance and dissemination as required of Material Safety Data Sheets and all other required notices for hazardous materials or chemicals supplied or sold under this Sub-Contract. Supplier shall pay all fees, taxes, including sales and use taxes, and expenses connected with compliance and also to pay all taxes imposed by any State or Federal Law for any employment insurances, pension, old age retirement funds or any similar purpose.

13. Supplier shall pay all royalties and licensing fees arising in connection with the sale or use of materials hereunder. Supplier further undertakes and agrees to indemnify, hold harmless and defend Signature, at Supplier's expense, from and against all suits, actions or proceedings in which Signature, its successors, assigns, customers, or users of its customer's products are made defendants for actual or alleged infringement under this Subcontract.

14. That Supplier's acceptance of the last payment, as set forth in Exhibit "C," shall operate as, and shall be a release to Signature from all claims and liability to Supplier from anything done, or furnished for, or relative to, the materials delivered, or for any act or neglect, of Signature relating to or affecting the delivery.

_____        _____
SUBCONTRACTOR                         SIGNATURE PROPERTIES, INC.

**3-30**

15. Should one or more other contra  now or hereafter exist between the parties hereto or with any affiliated company of Signature, concerning this or any construction project, then a breach by Supplier of any contract may at the option of Signature be considered a breach of all contracts. In such event, Signature may terminate any or all of the contracts so breached, or withhold monies due or to become due any of such contracts and apply the sums toward payment of any damage suffered on that or any other of such contract.

16. The price herein specified shall include all terms and duties of any kind levied by federal, state, municipal, or other governmental authorities, which either party is required to pay with respect to the production, sale, use, or shipment of the materials covered by the this Sub-Contract, and all charges for packing, loading, unloading and shipping. If transportation costs are designated as part of the cost to Signature, only actual transportation costs shall be included. Supplier shall supply a shipping tag with material delivery. Supplier's shipping tag shall set forth the items delivered, the date of delivery, the Job name, the tract number, the release number and lot numbers.

17. Supplier shall be responsible for all risk of loss for materials until Signature's written acceptance of the shipping tag described in Section 16 above.

18. This Sub-Contract shall be governed and construed under the laws of the State of California. Whenever Signature is not the ultimate consumer of the materials, all rights, benefits, and remedies conferred upon Signature hereunder shall accrue and be available to and are for the express benefit of any successor in interest to the materials, including the ultimate consumer of the materials. The materials means the supplies, drawings, data and other property and all services, including design, delivery, installation, inspection, and testing specified or required to furnish the materials or services ordered.

19. Subcontractor agrees to indemnify, defend and hold harmless Signature, its officers, directors, and employees, Signature's affiliates and subsidiaries, licensees of the aforementioned and its officers, directors and employees from and against any claims, damages, liabilities, losses, costs, and expenses (including but not limited to all costs of litigation, attorney fees, and expert witness fees) arising out of or claimed to have arisen out of death, injuries or damages to any and all persons (including claims by employees of Subcontractor and its sub-subcontractors), and damage to any and all property, in any way caused by acts or failures to act in connection with the performance of this contract by Subcontractor, sub-subcontractor, materialmen or other persons provided or allowed on the job by one or more of the aforementioned. This indemnity shall apply in the event that Signature is partially at fault but shall not apply if Signature is solely at fault. If there are any such injuries to persons or properties asserted for when the work herein provided for is finished, final settlement between Signature and Supplier shall be deferred until such claims are adjusted or suitable indemnity acceptable to the Signature is provided by the Subcontractor.

SPECIAL CONDITIONS

Signature agrees as follows:

1. To pay Supplier for the full, faithful and prompt performance of this contract agreement, subject to all terms and conditions hereof, the sum of _____SEE ATTACHED EXHIBIT "C"_____ Dollars ($___SEE ATTACHED EXHIBIT "C"___), payment to be made as follows:

_____

_____

Payment shall be made upon receipt of bills, including withholding tax receipts, acknowledging payment and/or release from all material suppliers and labor, satisfactory to Signature.

In the event any such liens have been filed, any payment not made before the filing of such lien shall not be due and payable until such lien has been adjudicated, satisfied and released.

2. It is mutually agreed that Supplier shall receive such progress payment in trust as atbailee for all materials to be furnished, equipment rented and work to be performed pertaining to such payment and no part thereof shall vest in Supplier until it has first paid in full for all such materials furnished, equipment rented or labor performed.

3. That if notification of any claims against the Supplier arising out of materials furnished the project covered by this agreement has been made to Signature, it may, at its discretion, withhold sufficient funds from the final or other payments to cover the costs of any such claims, pending their legal settlement.

IN WITNESS WHEREOF, Signature and Supplier have hereunto set their hands in duplicate the day and year first above written.

INSIGHT GLASS INC.
SUPPLIER

_Peter HL, CFO_
SUPPLIER'S SIGNATURE AND TITLE

_Peter Henderlite_
PRINT NAME

3150 BAYSHORE ROAD
BENICIA, CA 94510
ADDRESS

(707) 746-6571
BUSINESS PHONE

68-0128719
TAX ID #

599566
CONTRACTORS LICENSE NUMBER

SIGNATURE PROPERTIES, INC.
OWNER/CONTRACTOR

PATRICK BARKEY, CONTRACTS MANAGER

#487-435
CONTRACTORS LICENSE NUMBER

06/21/02

## EXHIBIT "C"

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

PRICES INCLUDE ALL TAXES, APPLICABLE FEES AND MATERIALS FOR A
COMPLETE JOB PER PLANS AND SPECIFICATIONS AND ARE GUARANTEED FOR
THE COMPLETION OF THE MODELS, 5 UNITS, LOTS 1-5 (TRACT 8575).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

### OCIP INSURANCE PREMIUM DEDUCTION
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

### PROGRESS PAYMENT SCHEDULE

"A" DRAW – 90% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF
WINDOWS  95%.

"B" DRAW – 10% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.  5%.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL
BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ACCEPTED:                           ACCEPTED:
INSIGHT GLASS                       SIGNATURE PROPERTIES, INC.


BY: _____               BY: _____
ITS: _____                PATRICK SHARKEY,
                                    CONTRACTS MANAGER
DATE: _6/26/02_____                DATE: _1/5/02____

## ABELLA COURT

### Exhibit "D"
#### Insurance Requirements

All Subcontractors, consultants (including architects and engineers) and suppliers delivering materials or performing work on a Signature Properties, Inc. project *must have Insurance*. All insurance must meet Signature Properties, Inc. requirements. Any deviations from the standard requirement must be approved by Signature Properties, Inc. All insurance documentation must be submitted to Signature Properties, Inc. upon execution of contract.

1.    **Workers Compensation:**

    a)    Employer's Liability with policy limits of $ 1,000,000.00.
    b)    Waiver of Subrogation.

2.    **Comprehensive General Liability Insurance as provided in the Project Wrap Up Policy:**

    a)    The parties agree to the terms and provisions of Exhibit D-1, attached hereto and incorporated by this reference.

3.    **Automobile Liability, Bodily Injury, Property Damage:**

    a)    Each Occurrence/aggregate:  $ 1,000,000.00.
    b)    Any Automobile (includes owned, non-owned and hired.)

4.    **Job description to read "Abella, San Pablo, California."**

5.    **Policy Cancellation Requirement/Notices:**

    a)    The words "But failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" should be *lined out* or a thirty (30) day endorsement must be attached to the Certificate of Insurance.

6.    **Insurance Company Rating:**

    a)    Insurance Company must have A.M. Best Rating of A or A-/VI or better.

7.    **Additional Insured Endorsement:** Please note that an Additional Insured Endorsement is only required if Subcontractor has decided to maintain additional general liability insurance in excess of that provided by the Project Wrap Up Policy:

    a)    (Form CG20 10 ~~11-85~~ *10 01*) covering Signature at Abella, LLC and Signature Properties, Inc.
    b)    Endorsement to include the following provision:

        i)    Claims, losses or liability from "on premises" operations:

        "~~The~~ Project Wrap Up Policy shall be primary insurance as respects to ~~any claims, losses or liability arising directly or indirectly from the Subcontractor's on premises operations and other insurance maintained by Subcontractor shall be non-contributory with the insurance provided thereunder.~~"

*[handwritten margin note: Please note: Since Insight is a supplier the "wrap-up" program is not applicable]*

        ii)    Claims, losses or liability from "off premises" operations:

        "Subcontractor's insurance shall be primary insurance as respects to any ~~claims, losses or liability arising directly or indirectly from the Subcontractor's off premises operations and other insurance maintained by~~ Signature at Abella, LLC and Signature Properties, Inc. shall be non-contributory with the insurance ~~provided thereunder.~~"

Subcontractor's failure to provide and maintain such insurance shall be deemed as a material breach of this Sub-Contract. Owner is hereby granted the right to withhold, without interest, any payment due Subcontractor during any time that Owner does not have in its possession a validly issued, unexpired certificate of insurance, acceptable to Owner, complying with the above-described conditions.

          _____        _____
              SUBCONTRACTOR           SIGNATURE PROPERTIES, INC.

Not applicable
for Insight

**Exhibit D-1**
**General Liability Insurance Wrap-Up Program**
**(Subcontractor)**

Signature at Abella, LLC ("Owner") is the owner of the Project and has obtained a third party General Liability Insurance Policy (the "Policy") which is intended to cover the costs of all the claims related to the design and construction of the improvements of the Project that occur on the Project premises, subject to those exclusions set forth in the Policy. The Policy is intended to provide general liability insurance coverage for Owner, Client, Subcontractor and all other subcontractors and contractors who are enrolled in the Insurance Wrap-Up Program for the Project (the "Program"). The Policy currently has a Three Million Dollar ($3,000,000) limit, which amount may be adjusted upward, and provides coverage for claims on an occurrence basis.

In addition to Policy exclusions mentioned above, the Policy will not cover:

1. General liability claims arising from claims occurring off the Project premises, including claims arising from the manufacture of materials and fixtures that will ultimately be incorporated into the Project;

2. Any workers' compensation or employer's liability claims;

3. Auto liability and physical damages claims;

4. Any claims for loss of or damage to business personal property, including Subcontractor's equipment used on the Premises ("Scheduled Equipment"); and

5. First party professional liability claims.

PLEASE NOTE: The summary set forth above is not intended to, and shall not, modify the terms and provisions of the Policy. Subcontractor is responsible for reviewing and obtaining any necessary counsel regarding the Program and the Policy and expressly acknowledges the lack of any reliance upon any representations made by Owner, Client or their representatives regarding the nature and quality of the insurance provided by the Policy.

A. Policy Premium. Client shall be responsible for paying the premium associated with the Policy. Subcontractor shall contribute its "fair share" of the Policy premium, which amount shall be equal to the premium Subcontractor would have paid to its current insurer to obtain general liability insurance coverage for Subcontractor's work on the Project ("Subcontractor's Contribution"). Subcontractor shall provide Client with the following documents and/or information: (i) the Insurance Allocation Worksheet; (ii) the Declarations Page from Subcontractor's current general liability policy; (iii) the Ratings Page from Subcontractor's current general liability policy; and (iv) current payroll or gross receipts information needed in order to generate the premium allocation within ten (10) business days after receipt of written request from Client. Should Subcontractor fail to supply Client with this information within ten (10) business days, Client shall deduct two percent (2%) of the contract amount as Subcontractor's Contribution as satisfaction of Subcontractor's obligation under this Section A.

A.1. Premium Based on Payroll. In the event that Subcontractor's Contribution is based on payroll for the Project, Subcontractor shall supply Client with an estimated payroll amount for the portion of the Project awarded to Subcontractor. Should Client decide, in its sole discretion, to audit Subcontractor's payroll, Subcontractor agrees to supply Client with certified payroll records for the Project within five (5) business days of receipt of Client's written request.

A.2. Minimum and Deposit Premium. In the event that Subcontractor is in a minimum and deposit premium payment situation with respect to its general liability insurance, Subcontractor shall have the right to present proof to Client at the end of the policy year that the total amount of Subcontractor's work conducted within the policy year has not caused Subcontractor to exceed the minimum premium threshold. In such an event, Client shall reimburse Subcontractor for the amount of the Subcontractor's Contribution.

1

**3-34**

B. <u>Errors and Omissions</u>. The Policy will cover third party claims for errors and omissions in design work for the Project that result in bodily injury or property damage, but the Policy will not cover (a) third party claims for errors and omissions in design work for the Project that only result in economic loss or (b) first party claims for errors and omissions in design work for the Project. Therefore, Subcontractor must obtain Errors and Omissions Insurance to cover any first party claims associated with the Project.

C. <u>Self Insured Retention</u>. Client shall be responsible for paying the self insured retention for each claim/occurrence covered by the Policy ("Covered Claim"). In the event that Subcontractor is determined to be a cause of a Covered Claim, Client shall be entitled to a credit in an amount equal to the deductible or self insured retention provided for in the Subcontractor's existing general liability or errors and omissions policy, as applicable (the "SIR Credit") against any amounts currently due or due in the future under this Agreement for Subcontractor's work (collectively, the "Available Funds"). In the event the Available Funds are insufficient to pay the full amount of the SIR Credit, Subcontractor agrees to pay the amount of the shortfall to Client within thirty (30) days after the date of Client's written request.

D. <u>Excess General Liability and Errors and Omissions Insurance</u>. Owner has elected to procure insurance in the limits set forth in the Insurance Manual. Owner/Client makes no representation to Subcontractor that the limits are adequate for insurance coverage on the Project. Subcontractor may, at its own discretion, decide to procure additional insurance to the limits provided by the Policy. Client requires that should Subcontractor purchase insurance for this purpose, Subcontractor shall provide notice to Client of the existence of said insurance as well as proof that such insurance has adequate provisions to make it excess to the Policy and not co-insurance with the Policy.

E. <u>Duty to Enroll Sub-Subcontractors</u>. Subcontractor acknowledges that it is aware of the provisions contained in the Insurance Manual which require the enrollment of subtiered contractors into the Program. Subcontractor shall take all steps to cooperate with Owner/Client to enroll all lower tiered subcontractors into the Program and shall notify Client before lower tier Subcontractors commence work on the project.

F. <u>Waiver of Subrogation</u>. Client and Subcontractor hereby waive their respective rights of subrogation as to each other and any other party participating in the Program; provided, however, that the foregoing waiver of subrogation applies only to the extent that defense and coverage is actually provided by the Policy covering the entirety of the costs and value of the claim.

CLIENT:                                    SUBCONTRACTOR:

Signature Properties, Inc.,
a California Corporation,

By: _____             By: _____

Its: _____            Its: _____

CA State Contractor's License No.:

887435                                    _____

## Exhibit "E"

### Invoicing Procedures and Payment Processing Guidelines

1. All invoices must include Project name, Tract number, Lot number, Date of work, Explanation of work performed, Individual requesting the work, and must reference a Purchase Order or Customer Change Order number where applicable.

2. Invoice by Project (do not include multiple projects, or more than one contract on a single invoice).

3. Original invoices and Lien Releases are required to process payments (copies or faxes are accepted *only* upon request from Signature Properties management or authorized personnel).

4. 7-10 days prior to progress payment being made, all release forms must be submitted. You must include a new "Lien Release Form" (Forms Enclosed), for each progress payment or invoice submitted. Each release must be signed by an officer of the company and *Notarized*. *No payment will be made without this release form*. Progress Payments will be issued <u>not sooner</u> than five (5) working days after receipt of <u>all</u> applicable labor and material release forms.

5. When billing for "Extra Work" over and above this contract, a Purchase Order number **must** be referenced on the invoice or it will be returned to your office. This, too, must have a release form.

6. Invoices must be submitted within 90 days of completion of work. This includes extras, customer changes and contractual work. Inquires relating to payment processing and/or non-payment of invoices or progress payments are limited to 120 days after completion of work. Invoices or inquires received after the allotted time period will not be accepted.

7. FAILURE TO COMPLY WITH THE ABOVE WILL RESULT IN TIMELY DELAYS IN PAYMENT.

8. Invoicing for <u>Models</u> and <u>Retention</u> are no longer required. Retention will be added as a **final draw to the progress payment schedule and paid upon approval.**

9. **Exhibit "P" will no longer be an Exhibit in the contract. It is available upon request from our project accountant.**

10. Signature Properties, Inc. reserves the right to issue joint checks. Signature Properties, Inc. will NOT sign third party agreements. All Sub-Contractors should be made aware of these facts.

All invoices or requests for payment must be mailed to the Signature Properties main office and date stamped. Mail to: 4670 Willow Road, Suite 200, Pleasanton, CA 94588-2710. Invoices that meet the above requirements will be paid within thirty (30) days upon receipt of the invoice, unless otherwise stipulated in the contract.

Reasons for returning Invoices:

    1. Invoice does not meet the requirements listed above.

    2. Invoice received prior to work being completed and accepted.

_____    _____
  SUBCONTRACTOR       SIGNATURE PROPERTIES, INC.

**EXHIBIT "W"**

**WARRANTY GUARANTEE**

1. Unless otherwise specified in the original contract, the Subcontractor guarantees his work against all defects of materials and workmanship for a period of one year from the date of close of escrow of the original buyer. This warranty shall be in addition to all other rights and privileges which the Contractor/owner may have under any other law. Neither the final payment nor any other provision in the contract documents shall relieve the Subcontractor of responsibility for faulty materials or workmanship.

2. The Subcontractor shall remedy at its sole cost and expense, during the one year warranty period, any defects due to its faulty materials or workmanship. The Subcontractor shall pay for any damage to other work or materials resulting therefrom, within 5 working days after being notified by the Contractor. Failure to comply with the above may result in the Contractor hiring another Subcontractor to complete the work, and backcharging the Subcontractor for any and all costs incurred to complete the work. The Subcontractor is responsible for contacting the owner/s as directed by the Contractors Warranty Representative.

3. The Subcontractor further agrees to arrive on time for any appointments and/or notify the owner/s and the Contractors Warranty Representative of any delays or changes regarding the appointment.

4. Subcontractor shall identify his/her self and the company name prior to entry into the owner's home. The Subcontractor shall treat the owner's property as his/her own and shall not park in the owner's driveway. In order to minimize owner/s inconvenience the Subcontractor is to have all necessary tools, equipment, and material, necessary to complete the job as scheduled. The Subcontractor will take care to protect all wall and floor coverings, furniture, etc. from dirt and damage. He/she shall not eat, drink or smoke on or in the owner/s property. He/she will clean up any and all dirt and debris caused by their work and remove same from the site. The Subcontractor shall not use any of the facilities within the home without the owner's permission. It is the Subcontractors responsibility to leave notification with the owner/s each time work is performed prior to leaving the property.

5. The Subcontractor further agrees to not become argumentative with the owner/s and must report any disagreements to the Contractor Warranty Department. Any other work required noted by the Subcontractor and not included in his/her warranty shall be immediately reported to the Contractor and not to the owner/s.

6. The Subcontractor is to obtain owner/s signature of completion of work on the warranty repair tag (when possible) and forward said document to the Contractors Warranty Department within 5 days after the completion of the work. Any follow up visits required to complete the work must be scheduled immediately and such time must be forwarded to the Contractors warranty representative.

7. All heating, electrical, plumbing and fire sprinkler Subcontractors must respond to service requests within 24 hours upon notification. Said same Subcontractors are to maintain a current and accurate 24 hour emergency phone number available to the Contractor in order to comply with the above. All other Subcontractors must respond within 5 days of notification.

_____          _____
SUBCONTRACTOR                          SIGNATURE PROPERTIES, INC.

**SPECIFIC SCOPE OF WORK**
**ABELLA COURT**
**WINDOWS: 2033**

SUBCONTRACTOR agrees to furnish the necessary labor, materials, tools, implements, equipment and appliances required to perform and complete in a substantial workmanlike manner and free from any and all liens and claims of artisans, materialmen, other subcontractors, equipment suppliers and laborers therein, all WINDOWS.

**A. GENERAL**

2033.001    SUBCONTRACTOR is responsible for all materials until final installation and acceptance by CONTRACTOR. Any loss due to theft or breakage prior to acceptance by CONTRACTOR shall be replaced by SUBCONTRACTOR at no additional cost to CONTRACTOR.

2033.002    SUBCONTRACTOR agrees herein that any labor, materials, and/or workmanship that does not comply to the CONTRACTOR'S standards shall be removed and replaced to conform to the CONTRACTOR'S standards.

2033.003    SUBCONTRACTOR further agrees that the quality of his workmanship and his materials shall be in strict accordance with the plans and these specifications.

2033.004    SUBCONTRACTOR shall strictly comply with all applicable City, County, State, FHA, and VA codes.

2033.005    SUBCONTRACTOR shall warranty all window work for two years from acceptance of work by CONTRACTOR.

2033.006    SUBCONTRACTOR shall fully coordinate work and cooperate with the framing, stucco, drywall, and painting subcontractors.    CONTRACTOR shall not accept any backcharges or extra costs due to conflicts or disputes between any subcontractors.

2033.007    SUBCONTRACTOR shall perform all duties herein so as not to impede the progress of any other subcontractors.

2033.008    SUBCONTRACTOR shall ensure that all sliding doors meet local security requirements, to positively prevent sliding panel from being lifted out of track when closed.

2033.009    SUBCONTRACTOR guarantees all glass shall be free of objectionable bubbles, defects or excessive waves.

2033.010    SUBCONTRACTOR shall provide tempered glass as indicated on plans, unless otherwise required by code.

2033.011    SUBCONTRACTOR shall purchase a business license if required by the City or the County.

2033.012    SUBCONTRACTOR agrees herein that it is his sole responsibility to personally verify that he has the latest approved plans for construction.

2033.013    SUBCONTRACTOR shall adhere to all requirements of the General Construction Activity Storm Water Permit and be responsible for its enforcement by their employees and anyone working under their control.

2033.014    SUBCONTRACTOR agrees herein that this scope supersedes all bid, proposal, quote or addendum restrictions submitted by

SUBCONTRACTOR.

2033.015 **SUBCONTRACTOR** shall supply one qualified employee, independent of production crew, to handle all customer service and/or warranty claims through duration of project.

## B. WORKMANSHIP

2033.016 **SUBCONTRACTOR** shall deliver all windows in "house packs" securely bound together and legibly tagged with lot numbers.

2033.017 **SUBCONTRACTOR** to deliver, unload and spread all windows and sliding glass doors in locations specified by CONTRACTOR Project Superintendent.

2033.018 **SUBCONTRACTOR** shall inspect all windows and doors immediately after unloading to identify any missing or damaged items. Damaged items shall be immediately replaced. Missing items shall be agreed upon by window company's delivery person and CONTRACTORS Representative, and thereafter, window company shall be notified immediately.

2033.019 **SUBCONTRACTOR** shall coordinate all his material deliveries, in such a manner as to prevent any delays in the progress of the project. SUBCONTRACTOR is responsible for scheduling of deliveries, receiving, inventorying, and handling of said materials. Material staging on site shall be approved by CONTRACTOR Project Superintendent.

2033.020 **SUBCONTRACTOR** shall supply CONTRACTOR with touch-up paint for window frames.

## C. CLEAN-UP

2033.021 **SUBCONTRACTOR** shall clean up and place in location designated by CONTRACTOR Project Superintendent any debris generated during his work.

2033.022 **SUBCONTRACTOR** shall clean up and remove all debris relating to his work. Should SUBCONTRACTOR fail to perform this function in a timely manner, in conjunction with his work sequence through the project, CONTRACTOR reserves the right to have this work performed by others and backcharge SUBCONTRACTOR accordingly.

## D. PROJECT SPECIFICS

2033.023 **SUBCONTRACTOR** agrees all windows shall contain dual insulated glazing.

2033.024 **SUBCONTRACTOR** agrees all frames shall be white.

2033.025 **SUBCONTRACTOR** agrees all windows and doors, where so indicated on plans, shall have divided lights by "trap" munitions between the glazing panels. Munitions shall be white.

2033.026 **SUBCONTRACTOR** agrees all window and door screens shall be fiberglass mesh with aluminum frames to match windows and door frame finish (white).

*Insight Glass*
*Abella Courts*

02/18/04

### ADDENDUM #9 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 9TH RELEASE OF 7 UNITS, LOTS 77-83 (TRACT 8623).

| PLAN | TOTAL PRICE |
|---|---|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

*NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED*

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:                                    ACCEPTED:
INSIGHT GLASS                                SIGNATURE PROPERTIES, INC.

BY: _____                        BY: _____
ITS: _____                       PATRICK SHARKEY, CONTRACTS MANAGER
DATE: __2/25/04__                            DATE: __3/25/04__

02/18/04

### ADDENDUM #9 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
1. INCORPORATE TO CONTRACT THE 9TH RELEASE OF 7 UNITS, LOTS 77-83 (TRACT 8623).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS.

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: _____
DATE: _____

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: _____

*3-41*

12/5/03

## ADDENDUM #8 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**

1. INCORPORATE TO CONTRACT THE 8TH RELEASE OF 11 UNITS, LOTS 184-194 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
ITS: CFO
DATE: 12/8/03

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 12-23-03

3-42

9/23/03

## ADDENDUM #7 TO CONTRACT DATED 6/21/02

### ABELLA COURT
### WINDOWS (2033)

### INSIGHT GLASS
### 3150 BAYSHORE ROAD
### BENICIA, CA 94510

**REASON FOR ADDENDUM:**

1. INCORPORATE TO CONTRACT THE 7TH RELEASE OF 9 UNITS, LOTS 175-183 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT. NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE SUBCONTRACTOR AGREEMENT.

ACCEPTED:
INSIGHT GLASS

BY: _____
ITS: _____
DATE: 9/25/03

ACCEPTED:
SIGNATURE PROPERTIES, INC.

BY: _____
PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 10/3/6

*3-43*

6/24/03

ADDENDUM #6 TO CONTRACT DATED 6/21/02

**ABELLA COURT**
**WINDOWS (2033)**

**INSIGHT GLASS**
**3150 BAYSHORE ROAD**
**BENICIA, CA 94510**

**REASON FOR ADDENDUM:**
INCORPORATE TO CONTRACT THE 6TH RELEASE OF 10 UNITS, LOTS 56-60 (TRACT 8623) &
170-174 (TRACT 8645).

| PLAN | TOTAL PRICE |
|------|-------------|
| 1 | $2,819.00 |
| 2 | $2,545.00 |
| 3 | $3,308.00 |
| 4 | $4,171.00 |
| 5 | $4,070.00 |

**OCIP INSURANCE PREMIUM DEDUCTION**
TO BE NEGOTIATED WITH OCIP CONSULTANT

NOTE: PAYMENT MAY BE HELD UNTIL OCIP PREMIUM IS NEGOTIATED

**PROGRESS PAYMENT SCHEDULE**

"A" DRAW – 95% PAYABLE UPON DELIVERY, INSPECTION AND ACCEPTANCE OF WINDOWS

"B" DRAW – 5% RETENTION PAYABLE UPON COMPLETION AND APPROVAL OF WORK.

PROGRESS PAYMENTS FOR ALL WORK COMPLETED BY THE 25TH OF THE MONTH WILL BE MADE
BY THE 10TH OF THE FOLLOWING MONTH.

ALL OTHER TERMS AND CONDITIONS TO REMAIN THE SAME PER THE ORIGINAL CONTRACT.
NOTHING IN THIS ADDENDUM SHOULD BE READ TO LIMIT CONTRACTORS RIGHT TO ADD
ADDITIONAL LOTS AT FUTURE DATES AS SET FORTH IN PARAGRAPH ONE (1) OF THE
SUBCONTRACTOR AGREEMENT.

ACCEPTED:                          ACCEPTED:
INSIGHT GLASS                      SIGNATURE PROPERTIES, INC.

BY: _____                BY: _____
ITS: _____                PATRICK SHARKEY, CONTRACTS MANAGER
DATE: 7/1/03                       DATE: 7/8/03

*3-44*